United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

MARVIN PETE WALKER,

             Petitioner,

     v.

ROBERT L. AYERS, Acting Warden of
California State Prison at San Quentin,

           Respondent.

NO. C 94-1997 SBA

ORDER RE SUMMARY
 JUDGMENT

**<u>DEATH PENALTY CASE</u>**

**Introduction**

    Petitioner was convicted and sentenced to death for murder, assault, robbery and other

crimes in August 1980.  The California Supreme Court affirmed petitioner's conviction and death

sentence on December 27, 1988.  *People v. Walker*, 47 Cal. 3d 605 (1988).  Petitioner's state

petition for writ of habeas corpus was denied in September 1992; his petition for writ of certiorari

was denied in March 1993.  *Walker v. California*, 507 U.S. 979 (1993).

    Petitioner filed his first federal Petition for Writ of Habeas Corpus on May 20, 1997.  This

court found the petition to be unexhausted in part in April 1998, and petitioner filed a second state

1   petition for writ of habeas corpus on June 5, 1998.  The California Supreme Court denied the

2   petition on December 22, 2004, both on the merits and on various procedural grounds.

3         Petitioner filed his Second Amended Petition for Writ of Habeas Corpus in this court on

4   January 12, 2005.  Per an order dated October 15, 2005, this court granted respondent's motion to

5   dismiss Claims 9, 16, 19B(e), 19B(f), 19B(aa), 19B(cc) and 21 as procedurally defaulted.  The

6   parties now bring cross-motions for summary judgment.  Respondent has moved for summary

7   judgment on the majority of petitioner's remaining claims.  Petitioner opposes respondent's motion

8   and has cross-moved for summary judgment on numerous claims.  Pursuant to Civil Local Rules 7-

9   1(b) and 7-6, the court finds that the cross-motions are appropriate for submission on the papers

10  without oral argument.  For the following reasons, summary judgment in favor of respondent is

11  GRANTED as to Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19B(c),

12  19B(d), 19B(e), 19B(g), 19B(h), 19B(bb), 19B(dd) and 19B(ee).   Petitioner's motion for summary

13  judgment with respect to the same claims is DENIED.  A decision as to Claims 2 and 22 is

14  DEFERRED.

15                                        **Factual Background**

16        The following recitation of the factual background of this case is based, in relevant part, on

17  the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Walker*,

18  47 Cal. 3d 605 (1988).  The state court's factual findings are presumed to be correct pursuant to 28

19  U.S.C. § 2254.

20        In 1980, a jury in the Superior Court of Santa Clara County sentenced petitioner to death

21  following a conviction of first degree murder and other crimes stemming from two separate

22  incidents joined for purposes of trial.  Evidence at trial established that, in the first incident, which

23  occurred on August 7, 1979, petitioner and an accomplice robbed a liquor store called Dan's Bottle

24  Shop and shot three people.  One of the shooting victims, 15 year old Joseph Vasquez, died from the

25  gunshot wounds.  In connection with this incident, petitioner was convicted of first degree murder,

26  two counts of assault with intent to commit murder, and robbery.  The jury also found that petitioner

27  personally used a firearm in the commission of each crime, and found true the special circumstance

28

United States District Court
For the Northern District of California

2

United States District Court

For the Northern District of California

1    that defendant committed the murder while engaged in the commission or attempted commission of

2    a robbery.

3           Evidence at trial also established that, in the second incident, which occurred on September

4    5, 1979, petitioner entered a medical building, where he then proceeded to rob, sexually molest, beat

5    and shoot a young woman twice in the head.  The woman, Rose Olveda, survived and identified

6    petitioner as her assailant.  In connection with this incident, petitioner was convicted of assault with

7    intent to commit murder, robbery, and personal use of a firearm in the commission of each offense.

8    He was also convicted of theft of Olveda's vehicle.

9           Petitioner's defense at the guilt phase was primarily one of mistaken identity.  Petitioner

10   testified on his own behalf.  Petitioner's testimony on the witness stand was impeached by earlier

11   statements he had made.

12          At the penalty phase, the prosecution and defense stipulated that the evidence from the guilt

13   phase could be considered by the jury in the penalty phase.  In addition, the prosecution presented

14   testimony from two police officers that petitioner had made threats against a police officer and a

15   deputy district attorney.   The defense presented witnesses from petitioner's family, including his

16   sisters, who testified that petitioner had helped them financially and emotionally and that they

17   wanted him to live.  Petitioner's mother testified that petitioner had grown up in a poor family with

18   seven brothers and sisters.  Again, petitioner testified, claiming that he was innocent of the crimes

19   and testifying that he did not make threats to the officer and deputy district attorney.

**Discussion**

20

21   **I.      Legal Framework**

22          Summary judgment is appropriate where the moving party demonstrates "that there is no

23   genuine issue as to any material fact and that the party is entitled to judgment as a matter of law."

24   Fed. R. Civ. Pro. 56(c); *see Anderson Liberty v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

25   The motion should not be granted, however, if a reasonable jury, viewing the evidence in the light

26   most favorable to the non-moving party, could resolve a material issue in the nonmoving party's

27   favor.  *See id.* at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

28

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).[1]  A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d) have separate and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is "contrary to" clearly established United States Supreme Court law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id.* at 413-14.  A decision is an "unreasonable application" of United States Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 414.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of deference to the state courts." *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA.  *See Williams*, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision

---

[1] The parties agree that AEDPA applies to this matter.

1  is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are

2  binding on the state courts and only those holdings need be reasonably applied.  *See Clark*, 331 F.3d

3  at 1070.

4  When a federal court is presented with a state court decision that is unaccompanied by a

5  rationale for its conclusions, the court has no basis other than the record "for knowing whether the

6  state court correctly identified the governing legal principle or was extending the principle into a

7  new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  In such situations, federal

8  courts must conduct an independent review of the record to determine whether the state court

9  decision is objectively unreasonable.  *Id.*  While federal courts "'are not required to defer to a state

10 court's decision when that court gives [them] nothing to defer to, [they] must still focus primarily on

11 Supreme Court cases in deciding whether the state court's resolution of the case constituted an

12 unreasonable application of clearly established federal law.'"  *Greene v. Lambert*, 288 F.3d 1081,

13 1089 (9th Cir. 2002) (quoting *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001)).  Furthermore,

14 independent review of the record is not de novo review of the constitutional issue, but rather the only

15 way a federal court can determine whether a silent state court decision is objectively unreasonable.

16 *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, if the state court did not reach the

17 merits of a claim, federal review of the claim is de novo.  *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th.

18 Cir 2003).

19 Even if a petitioner meets the requirements of § 2254(d), habeas relief is warranted only if

20 the constitutional error at issue had a substantial and injurious effect or influence in determining the

21 jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Under this standard, petitioners

22 "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief

23 based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht*, 507 U.S.

24 at 637, citing *United States v. Lane*, 474 U.S. 438, 439 (1986).

25 **II.     Analysis**

26 **A.     Claim 2**

27 In Claim 2, which contains numerous subclaims, petitioner maintains that his Fifth, Sixth,

28 Eighth and Fourteenth Amendment rights were violated due to his counsel's ineffective assistance

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    during the guilt and penalty phases of his trial.  The California Supreme Court dismissed all of these

2    claims in an unreasoned, summary opinion on the merits.   Respondent moves for summary

3    judgment on Claim 2; petitioner cross-moves for summary adjudication on the issue of whether the

4    California Supreme Court was objectively unreasonable in its ruling that petitioner had not stated a

5    *prima facie* claim.

6        To establish a right to habeas relief due to a violation of the Sixth Amendment right to

7    effective assistance of counsel, the petitioner first must show that counsel's performance was

8    deficient.  *Strickland v. Washington*, 466 U.S. 668 (1984).  This requires showing that counsel made

9    errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth

10    Amendment.  *See id.* at 687.  The petitioner must show that counsel's representation fell below an

11    objective standard of reasonableness.  *Id.* at 688.  The relevant inquiry is not what defense counsel

12    could have done, but rather whether the choices defense counsel made were reasonable.  *See Babbitt*

13    *v. Calderon*, 151 F. 3d 1170, 1173 (9th Cir. 1998), *cert. denied*, 525 U.S. 1159 (1999).  Judicial

14    scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong

15    presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

16    *Strickland*, 466 U.S. at 688; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

17        Second, the petitioner must show that counsel's errors were so serious as to deprive the

18    defendant of a fair trial, a trial whose result is reliable.  *See Strickland*, 466 U.S. at 688.  The test for

19    prejudice is not outcome-determinative; thus, the petitioner need not show that the deficient conduct

20    more likely than not altered the outcome of the case.  A simple showing that the defense was

21    impaired, however, is not sufficient.  *See id.* at 693.  The defendant must show that there is a

22    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23    would have been different.  A reasonable probability is a probability sufficient to undermine

24    confidence in the outcome.  *See id.* at 694.

25        Based on the record currently before the court, the court finds that a decision on the merits of

26    petitioner's claim 2 is premature.  Both the performance and the prejudice components of the

27    ineffectiveness inquiry are mixed questions of law and fact, and therefore, generally require a

28    thorough review of a well-developed record.  *See Strickland*, 466 U.S. at 698; *see also Earp v.*

1    *Ornoski*, 431 F. 3ʳᵈ 1158 (9ᵗʰ Cir. 2005).   This is particularly true where, as here, petitioner claims

2    that his defense counsel was deficient in investigating and presenting his case at the penalty phase.

3    *See, e.g.*, *Rompilla v. Beard*, 545 U.S. 374 (2005); *Boyde v. Brown*, 404 F. 3d 1159 (9ᵗʰ Cir. 2005);

4    *Correll v. Ryan*, 465 F. 3d 1006 (9ᵗʰ Cir. 2006).   Petitioner has indicated his intention to move for

5    discovery and an evidentiary hearing on this claim; given the intense factual nature of ineffective

6    assistance of counsel claims, and recent decisions from the Ninth Circuit and Supreme Court

7    regarding the factual development necessary to consider such claims, consideration of petitioner's

8    Claim 2 is deferred.

9         **B.    Claim 3**

10        In Claim 3, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

11   rights were violated by the government's alleged use of perjured testimony in procuring petitioner's

12   convictions and death sentence.  Specifically, petitioner alleges that the prosecution presented

13   perjured testimony of prosecution witness William Sisco, and did not seek to correct said testimony.

14   Petitioner also maintains that the perjured testimony was highly prejudicial.  Petitioner raised this

15   claim in his 1990 and 1998 state habeas petitions; the California Supreme Court denied it on the

16   merits in summary, one-line denials.  Respondent maintains that he is entitled to summary judgment

17   because an independent review of the record confirms that the state court's decision was not an

18   objectively unreasonable application of clearly established United States Supreme Court precedent;

19   petitioner opposes respondent's motion and argues that he is entitled to summary judgment on this

20   claim.

21        At petitioner's trial, William Sisco testified as follows.  He stated that he saw petitioner at a

22   party in late September or October 1979 and heard petitioner state that "they had robbed somebody"

23   and that "[s]ome punk got in the way and he took him out of the game."  Ex. 24 at 2024-27, 2035-

24   40, 2048-49, 2051, 2056, 2064-66.  Sisco heard these statements from about 10-15 feet away, and

25   testified that he understood the phrase "taking someone out of the game" to mean killing someone.

26   Ex. 24 at 2026-27.  Sisco also testified that petitioner was carrying what might have been a .45

27   caliber handgun in the waistband of his pants at the time of the party.  Ex. 24 at 2027-29, 2043,

28   2046, 2054, 2063-64.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Prior to testifying at petitioner's trial, Sisco had been in custody at the Alameda County jail

2    on a charge of felony auto theft.  He also had a prior conviction for forgery in Santa Clara County.

3    Ex. 24 at 2029-31, 2033, 2041, 2060-61.  Sisco later pled guilty to a misdemeanor in the auto theft

4    case and, despite his prior forgery conviction, received probation.

5    At petitioner's trial, Sisco also testified that he had spoken to Sergeant Demkoski of the San

6    Jose Police Department prior to testifying at petitioner's preliminary hearing.  He denied that he had

7    received a deal from Demkowski or anyone else because of his testimony against petitioner.  Ex. 24

8    at 2029-32, 2041-42, 2067-68.  Demkowski also testified at petitioner's trial.  He denied making any

9    promises to Sisco or deals on his behalf; he further testified that he did not speak to any Alameda

10   County authorities before Sisco pleaded guilty to the misdemeanor, nor did he contact any other law

11   enforcement on Sisco's behalf.  Ex. 24 at 2077, 2080.

12   According to petitioner, both Sisco and Demkowski perjured themselves at petitioner's trial.

13   Petitioner bases these allegations primarily on a 1997 declaration from Sisco, in which Sisco states

14   that while he heard the statement about "taking someone out of the game", he is not sure whether

15   petitioner or someone else made the statement.   Sisco Decl., (Ex. K to Amended Petition) at ¶ 4.

16   Sisco also declares that he told the police officers that he did not know who made the statement, but

17   that they (the police officers) threatened to involve him in the crime if Sisco did not assist them.

18   Sisco Decl. at ¶ 4.

19   Sisco also maintains that the State promised Sisco favorable treatment on the pending felony

20   auto theft charge.  Sisco Decl. at ¶¶  5, 6, 8.  Sisco claims that his sentence of probation, as opposed

21   to a jail sentence, was the favorable treatment he was promised as a result of testifying against

22   petitioner.  Sisco Decl. at ¶¶ 7-8.

23   Petitioner argues that the prosecution's conduct regarding Sisco's testimony constitutes both

24   a *Brady* violation (failure to disclose favorable evidence, in this case, evidence of an alleged

25   leniency deal) and a *Napue* violation (presentation of false evidence, in this case, Sisco's statement

26   that he overheard petitioner make an inculpatory comment).  His claim is based primarily on Sisco's

27   declaration.

28

United States District Court

For the Northern District of California

To prove a *Brady* violation, three elements must be shown. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citations omitted).

A *Napue* violation is a type of *Brady* violation. Under *Napue* it is unconstitutional for the State to knowingly use false or perjured testimony against a defendant to obtain a conviction. *Napue v. Illinois*, 360 U.S. 264 (1959). "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted). To demonstrate a *Napue* violation, petitioner must show: 1) the evidence in question was false; 2) the prosecution knew or should have known it was false; and 3) the false evidence was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005).

Respondent maintains that he is entitled to summary judgment because petitioner cannot demonstrate that the prosecution either withheld material evidence from the defense or that the prosecutor knowingly presented false testimony. Petitioner counters that Sisco's declaration shows violations of both *Napue* and *Brady*, and entitles him to summary judgment on this claim.

The court has conducted an independent review of the record and finds that the state court's summary dismissal of this claim was not objectively unreasonable. *See Delgado*, 233 F.3d at 982. To begin with, even accepting Sisco's declaration[2] as true, petitioner cannot show that the prosecutor knew that Sisco testified falsely. The court notes that Sisco's declaration does not clearly state that Sisco even committed perjury, let alone that the prosecutor suborned it. Sisco's declaration does not refute his trial testimony that he saw petitioner at the party and that he heard the statements about someone getting killed in a robbery. In fact, Sisco confirms that he heard someone in a group of four men admit to shooting someone at Dan's Bottle Shop during the robbery. Sisco Decl. at ¶ 4. He further states that petitioner was one of the men in the group. *Id*. Sisco also declares that he told

---

[2] Sisco's declaration, unlike his trial testimony, was not subject to cross-examination. Furthermore, as respondent correctly points out, recantations of this sort are to be viewed with suspicion under California law. *See, e.g.*, *In re Weber*, 11 Cal. 3d 703, 724 (1974); *People v. Pensinger*, 52 Cal. 3d 1210, 1274 (1991).

United States District Court

For the Northern District of California

1  "the police officers that I did not know who made the statement" but that does not demonstrate that

2  the prosecutor knew or should have known that Sisco was allegedly perjuring himself when he

3  testified that it was petitioner whom he overheard making the statement at the party in question.  In

4  such a situation, petitioner is not entitled to relief.  *See*, *e.g.*, *Murtishaw v, Woodford*, 255 F. 3d 926,

5  955 (9th Cir. 2001) (petitioner not entitled to relief on claim where there is no evidence that the

6  prosecution knew the testimony in question was false).[3]

7  Similarly, petitioner's claim that the prosecution committed a *Brady* violation by failing to

8  reveal the alleged existence of a leniency deal between Sisco and the state must fail.  Suppression of

9  a leniency deal may be grounds for a reversal on *Brady* grounds.  *See*, *e.g.*, *Horton v. Mayle*, 408

10  F.3d 570, 579-80 (9th Cir. 2005) (finding reversible error where evidence that a key prosecution

11  witness was promised immunity in exchange for his testimony had not been produced).  In this case,

12  however, Sisco's declaration, produced more than fifteen years after his trial testimony, does not

13  demonstrate that there was, in fact, a leniency deal in place.  Sisco's declaration, which relies

14  heavily on hearsay statements from the police and his public defender, claims he "believes" that his

15  testimony led to his probation in the auto theft case.  That is not, however, sufficient evidence of a

16  leniency deal.  *See*, *e.g. Murtishaw*, 255 F.3d at 958-59 (holding that an affidavit taken more than

17  ten years after trial and based largely on hearsay is not sufficient evidence to grant habeas relief

18  based on a *Brady* violation).  Sisco's declaration is the only evidence petitioner has proffered to

19  show that there was a suppressed leniency deal in place.   As such, it was not objectively

20  unreasonable for the California Supreme Court to deny petitioner's claim.

21  Even assuming petitioner had shown either that the prosecutor knowingly presented false

22  evidence or that the prosecutor failed to produce *Brady* material, petitioner would not be entitled to

23  habeas relief on Claim 3.   Habeas relief is warranted only if the constitutional error at issue had a

24  substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v.*

25  *Abrahamson*, 507 U.S. 619, 638 (1993).  In addition, to prove reversible *Brady* and *Napue* errors, a

[3] To the extent that petitioner is alleging that the prosecutor's unknowing use of perjured testimony entitles him to relief, that claim must also fail.  Such a claim would be based on a new rule in violation of *Teague v. Lane*, 489 U.S. 288 (1989), and petitioner has not established that any exceptions to the *Teague*-bar would apply in this case.

**United States District Court**
For the Northern District of California

1    petitioner must show that any violations resulted in prejudice to his defense.  As required by

2    AEDPA, the court has conducted an independent review of the record and concludes that it was not

3    objectively unreasonable for the California Supreme Court to determine that any error was not

4    prejudicial to petitioner.

5         Sisco's testimony, when reviewed in its entirety, was contradictory, not particularly

6    powerful, and subject to impeachment.  Sisco did state that he overheard petitioner make inculpatory

7    statements at a party, but he also stated that petitioner had not confirmed that he (petitioner) was

8    involved in the robbery.  Ex. 24 at 2050-53, 2059-60.  Moreover, Sisco admitted that he was angry

9    at petitioner at the time of the party and that he had been telling the truth at the preliminary hearing

10   when he had testified that he could not remember petitioner saying anything at the party in question.

11   Ex. 24 at 2040-2071.  Sisco was also characterized as having a reputation as a liar by both petitioner

12   himself and by another witness (Ex. 27 at 2649-51; Ex. 25 at 2178-79), and part of his testimony,

13   where he denied intending to kill petitioner, was impeached by Sergeant Demkowski.  Ex. 24.  As

14   such, even if petitioner had been able to demonstrate that the state knowingly withheld evidence or

15   suborned perjury, he would not be entitled to habeas relief because he cannot show that any error

16   resulted in prejudice.  *Brecht*, 507 U.S. at 637.

17        Petitioner has not demonstrated that the state court's decision denying this claim was

18   objectively unreasonable.  Thus, respondent is entitled to summary judgment on Claim 3.

19        **C.     Claim 4**

20        In Claim 4, petitioner alleges that his Fifth, Sixth, Eighth and Fourteenth Amendment rights

21   were violated because the jury considered invalid and unreliable aggravating circumstances in

22   determining his sentence.  There are three subclaims to this claim; each will be considered in turn.

23             **1.     Claim 4B[4]**

24        In this subclaim, petitioner maintains that his Fifth, Sixth and Fourteenth Amendment rights

25   to notice of the charges against him were violated because he was never informed of the statutory

26   basis of the criminal activity charged against him in the penalty phase, nor was he informed of the

27   ───────────────

28        [4]4A consists of background information in support of Claim 4 and is not a separate subclaim.

11

1  elements of the penal violations against which he had to defend.  Respondent and petitioner both

2  contend they are entitled to summary judgment on this claim.

3       During petitioner's penalty phase, two instances of aggravating criminal activity were

4  presented by the prosecution, pursuant to Cal. Penal Code § 190.3, factor (b).  Under factor (b), the

5  prosecution at a penalty phase capital case may introduce as evidence in aggravation any "criminal

6  activity by the defendant which involved the use of force or violence or the express or implied threat

7  to use force or violence."  The evidence "must be limited to conduct that demonstrates the

8  commission of an actual crime, specifically, the violation of a penal statute."  *People v. Phillips,* 41

9  Cal. 3d 29, 72 (1985).

10      The factor (b) criminal activity in petitioner's case was two threatening statements made by

11 petitioner.   One was an alleged threat against a deputy district attorney (the "D.A. threat") and one

12 was an alleged threat against a police officer (the "Danny threat").   Petitioner maintains that he was

13 not provided with the required notice of the prosecution's intent to offer the evidence of the "D.A.

14 threat" and the "Danny threat" in aggravation.[5]

15      The California Supreme Court addressed a variation of this claim in a reasoned opinion on

16 direct appeal.  The state court stated:

17          We are satisfied that there was substantial compliance with section 190.3.
            The record discloses that the prosecutor told defense counsel even before the case
18          arrived in superior court that defendant had threatened a deputy district attorney and a
            police officer.  In addition, a written notice of the intention to introduce such
19          evidence in aggravation was filed a full week before commencement of the penalty
            phase.  The trial judge conducted a hearing in chambers on the evidence to be
20          admitted at the penalty phase.  He personally recalled that from the time he was
            assigned the case the matter of the prior threats had been discussed in connection with
21          courtroom security concerns.  Moreover, defendant cannot be heard to complain that
            the notice of the October 30, 1979, courtroom threat against the deputy district
22          attorney was lacking in specificity; the record reflects defense counsel was
            representing defendant at the preliminary hearing and was himself present in the
23          courtroom when defendant uttered the threat.  Finally, the record reveals counsel was
            fully aware of his right to seek a continuance to investigate and respond to any
24          evidence of which he had not been afforded adequate notice. [citations omitted].  A
            continuance was never sought.

25

26
   _____

27      [5] Cal. Penal Code  § 190.3 provides in relevant part: ". . . no evidence may be presented by
   the prosecution in aggravation unless notice of the evidence to be introduced has been given to the
28 defendant within a reasonable period of time as determined by the court, prior to trial."

1

2

   The trial court was satisfied that defense counsel had been afforded adequate notice of the prosecutor's intent to introduce evidence of the threats.  We see no reason to reach a contrary conclusion.

3  *People v. Walker*, 47 Cal. 3d at 637.

4        Petitioner first argues that, because the state court's reasoned opinion was based on state law

5  and did not specifically discuss the federal constitution, it is not entitled to deference under AEDPA.

6  Petitioner is mistaken.  The Supreme Court has made clear that as long as the reasoning of the state

7  court does not contradict Supreme Court precedent, the AEDPA's deferential standard applies.  *See*

8  *Early v. Packer*, 537 U.S. 3, 8 (2002) (qualification for AEDPA deference requires neither citation

9  to United States Supreme Court cases nor awareness of them, as long as neither the reasoning nor

10  the result of the state court decision contradicts them).  Thus, 28 U.S.C. § 2254(d) applies to Claim

11  4B.

12        Petitioner also maintains that, even if the state court's reasoned opinion is entitled to

13  deference, the opinion is contrary to, or an unreasonable application of, clearly established United

14  States Supreme Court law.  Petitioner maintains that the notice he received did not satisfy due

15  process requirements because he was not sufficiently informed of the nature of the elements of the

16  crime and because he did not receive  notice of the factor(b) criminal activity prior to trial.

17        Petitioner's arguments are unpersuasive.  The cases he cites in support of his arguments

18  contain general pronouncements regarding the notice requirements of the Due Process Clause, and in

19  no way establish either that the state was required to inform him in more detail of the elements of the

20  crime or that the state was required to give him more notice of the criminal activity to be entered

21  into evidence prior to the commencement of trial.  *See*, *e.g.*, *Gardner v. Florida,* 430 U.S. 349, 358

22  (1977) (holding that a capital trial's sentencing phase must meet due process requirements); *Presnell*

23  *v. Georgia*, 439 U.S. 14.  Furthermore, petitioner can cite to no cases stating that the notice he was

24  given – six days before the commencement of the penalty phase trial – was constitutionally

25  inadequate.

26        Petitioner has failed to demonstrate that the state court's reasoned opinion was contrary to, or

27  an unreasonable application of, clearly established United States Supreme Court law or an

28

1   unreasonable determination of the facts.  Respondent is therefore entitled to summary judgment on

2   this claim.

3   **2.      Claim 4C**

4   In this subclaim, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

5   rights were violated when the alleged "D.A. threat" and the "Danny threat" were admitted and

6   considered as criminal activity even though they did not constitute criminal activity under the state

7   penal code.  According to petitioner, admission of these statements unconstitutionally expanded the

8   statutory list of aggravating factors.   Respondent and petitioner both contend they are entitled to

9   summary judgment on this claim.

10   **a.      The "Danny threat"**

11   On direct appeal, petitioner argued that, at a minimum, admission of the threats violated

12   California's *Phillips/Boyd* rule, which limits "other crimes" aggravation evidence to the violation of

13   a penal statute.  *People v. Phillips,* 41 Cal. 3d 29, 72 (1985) (holding that section 190.3 evidence

14   must be limited to "conduct that demonstrates the commission of an actual crime, specifically, the

15   violation of a penal statute"); *People v. Boyd,* 38 Cal. 3d 762, 776-78 (1985).   As to the "Danny

16   threat" the California Supreme Court addressed petitioner's contentions as follows:

17          [During the penalty phase trial], Officer Nichols testified for the prosecution
18   about a conversation he heard through electronic monitoring between defendant and
   his cousin Lawrence Martin at the police station on September 26, 1979.  During the
   conversation, defendant told Martin that he would have to get the gun from "Danny"
19   (Officer MacIvor), and that "Danny" would have to be "offed."

20   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

21          We agree with defendant that evidence of the *"Danny"* threat was
   inadmissible under the rule of *Phillips* and *Boyd*.  Respondent contends that
22   defendant's statement constitutes solicitation of his cousin Lawrence Martin to assist
   in a plan to murder Officer MacIvor, a violation of section 653f.  But Officer
23   Nichols's testimony concerning this threat does not bear out the claim; the words
   used by defendant are at best ambiguous and equally supportive of an inference that
24   he was merely relating to Martin how *he* (defendant) would have to get the gun back
   and "off" Danny. [footnote omitted]
25          We conclude, however that admission of evidence of the "Danny" threat was
   nonprejudicial.  [citations omitted].  This case was tried well before *Phillips* or *Boyd*
26   were decided.  The properly admitted aggravating evidence in this case – in particular
   the circumstances of the crime (§ 190.3, factor (a)) – was simply overwhelming.
27   From that evidence the jury found defendant guilty in one incident of murdering one
   person and assaulting two others in execution-style shootings of unarmed and
28   unresisting victims, two of whom were teenagers.  One month later defendant

14

viciously pistol-whipped a young woman and shot her twice in the head in order to facilitate his escape with her $11 and her car.

The evidence of defendant's threats was dwarfed in comparison to the seriousness and excessive violence of the charged offenses. Nor did the prosecutor place heavy emphasis on the threats in his closing argument. He maintained that they constituted examples of "other criminal activity" involving a threat of violence and should thus be considered in aggravation, but he also cautioned the jury on three separate occasions to ignore the evidence unless they first found beyond a reasonable doubt that the alleged criminal activity had actually occurred. He suggested the threats evidenced a callous and casual attitude toward the value of others' lives, but clearly communicated his belief that this attitude was established primarily by defendant's conduct in the charged offenses and his courtroom demeanor. Finally, the jury knew from the guilt phase that defendant twice met with undercover Officer MacIvor *after* communicating the "Danny" threat to his cousin and being released from custody. There was no evidence defendant ever attempted to make good on his threat. On these facts it would be sheer speculation for us to conclude that evidence of the threat affected the penalty verdict.

*People v. Walker*, 47 Cal. 3d at 635, 639-40.

Petitioner argues, once again, that because the state court's reasoned opinion was based on state law and did not specifically discuss the federal constitution, it is not entitled to deference under AEDPA. As before, petitioner is mistaken. The Supreme Court has made clear that as long as the reasoning of the state court does not contradict Supreme Court precedent, the AEDPA's deferential standard applies. *See Early*, 537 U.S. at 8 (qualification for AEDPA deference requires neither citation to United States Supreme Court cases nor awareness of them, as long as neither the reasoning nor the result of the state court decision contradicts them). Thus, 28 U.S.C. § 2254(d) applies to Claim 4C.

Petitioner also maintains that the state court's decision that the erroneous admission of the "Danny threat" was not prejudicial was contrary to or an unreasonable application of, clearly established United States Supreme Court law. Specifically, petitioner argues that the Supreme Court's decision in *Brown v. Sanders*, 546 U.S. 212, 126 S.Ct. 884 (2006), entitles him to relief.

In *Sanders*, the Court considered a case where the capital defendant had been sentenced to death after the jury found to be true four special circumstances. Two of those four special circumstances were later invalidated by the California Supreme Court, but the death sentence was upheld. *Sanders*, 126 S.Ct. at 888-89. The Court held that "[i]f the presence of the invalid sentencing factor allowed the sentencer to consider evidence that would not otherwise have been before it, due process would mandate reversal." *Id.* at 892. Nonetheless, it reinstated the death

15

sentence in the petitioner's case, finding that the jury's consideration of the invalid special circumstances was not reversible error because "all of the facts and circumstances admissible to establish the [invalidated special circumstances] were also properly adduced as aggravating facts bearing upon the "circumstances of the crime" sentencing factor. They were properly considered whether or not they bore upon the invalidated eligibility factor." *Id.* at 894.

According to petitioner, *Sanders* mandates reversal of his case because the inadmissible "Danny threat" evidence is the equivalent of an invalid sentencing factor under *Sanders*. Petitioner argues that, because the *Sanders* court held that reversal is mandated if an invalid sentencing factor allowed the jury to consider evidence it would not have otherwise heard, reversal is mandated in his case because the "Danny threat" was improperly admitted.

Petitioner's argument is specious. In petitioner's case, the sentencing factor itself has not been held to be invalid by any state or federal court. Rather, in petitioner's case, evidence in support of a valid sentencing factor was erroneously admitted. As such, *Sanders* is not applicable here.

Thus, petitioner has not demonstrated that the state court's reasoned opinion was contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). As respondent points out, admission or exclusion of evidence in state court is ordinarily not a matter for federal habeas review unless the admission or exclusion violates a particular constitutional guarantee or is so prejudicial that it results in a denial of due process. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998). Petitioner cannot show that the state court's decision that the error was not prejudicial was erroneous, nor can he demonstrate that the state court's factual findings were unreasonable. *See* 28 U.S.C. § 2254(d)(2). Furthermore, petitioner has failed to establish that any purported state court error had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 638. For the foregoing reasons, summary judgment on this subclaim is granted in favor of respondent.

**b.      The "D.A. threat"**

Petitioner also argues that the state court's admission of the alleged "D.A. threat" entitles him to habeas relief. The state court, in its reasoned opinion, addressed petitioner's contentions as follows:

> Officer MacIvor testified that at the conclusion of a preliminary hearing on October 30, 1979, defendant walked by him and the deputy district attorney conducting the hearing, turned toward the prosecutor and stated, "The hell with getting a cop, I'll get me a D.A." The record further suggests that there may have been some mention of the September 26 "Danny" threat in connection with a bail motion made at the conclusion of the preliminary hearing, perhaps thereby prompting defendant's "D.A." threat. The deputy district attorney testified that when defendant walked by, defendant glared at him and made a comment. All the district attorney could make out was "D.A."
>
> ...................................................................................................................................
>
> Defendant and amicus curiae contend that the courtroom threat, "the hell with getting a cop, I'll get me a D.A.," was not a crime in violation of a penal statute. Respondent asserts that it was a violation of sections 69 or 71 (threatening an executive or public officer with intent to deter performance of his duties). We conclude that evidence of the courtroom threat would support a finding of a violation of section 69. Although defendant voiced the threat in a low voice, he turned to face the deputy district attorney when he communicated it. The deputy had just completed conducting a preliminary hearing in which defendant was held to answer, had argued against his release on bail, and was able to hear at least a portion of the threat. Given the murder and assault charges which defendant faced, it could reasonably be perceived that he had the apparent ability to carry out the threat. The evidence thus supports an inference that defendant intended to thwart or deter further prosecution of his case by threatening the deputy district attorney, and each requisite element of a violation of section 69 was shown on these facts. (See *People v. Hopkins* (1983) 149 Cal.App. 3d 36, 40-44 [196 Cal. Rptr. 609].) Furthermore, the jury was instructed that the threats had to be proved beyond a reasonable doubt in order to qualify as factors in aggravation. [citations omitted].

*People v. Walker*, 47 Cal. 3d at 639.

As with the "Danny threat", petitioner cannot show that the state court's opinion regarding admission of the "D.A. threat" was contrary to, or an unreasonable application of, clearly established law, or an unreasonable determination of the facts. In fact, petitioner's claim here is even weaker than his claim regarding the "Danny threat", since the state court found that evidence regarding the "D.A. threat" was properly admitted. While petitioner may argue for a different interpretation of the facts, he fails to demonstrate that the state court's factual findings were unreasonable. *See* 28 U.S.C. § 2254(d)(2). Moreover, petitioner has failed to establish that any purported state court error had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 638.

United States District Court
For the Northern District of California

17

1    For the foregoing reasons, summary judgment on this subclaim is granted in favor of

2   respondent.

3              **3.      Claim 4D**

4    In Claim 4D, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

5   rights were violated because the trial court did not instruct the jury on the elements of the criminal

6   offenses that the "Danny threat" and the "D.A. threat" allegedly constituted.  This claim was rejected

7   by the California Supreme Court on petitioner's state habeas claim, but was not addressed in a

8   reasoned opinion.  Thus, this court must conduct an independent review of the record to determine

9   whether the state court opinion is objectively unreasonable, given clearly established United States

10   Supreme Court precedent.  *Delgado* 223 F.3d at 982.

11    Petitioner does not and cannot cite to any state or federal case requiring that a trial court

12   instruct the jury as to the elements of criminal activity introduced into evidence during the penalty

13   phase.  In fact, the California Supreme Court has held squarely to the contrary, stating that a "trial

14   court has no sua sponte duty to instruct the jury as to the elements of all of the other crimes that have

15   been introduced at the penalty phase."  *People v. Davenport*, 41 Cal. 3d 247, 281-82 (1985).  There

16   is no United States Supreme Court authority suggesting that such instruction is required at the

17   penalty phase, and in the absence of such authority, petitioner cannot demonstrate either that an error

18   occurred or that any alleged error had a substantial and injurious effect or influence in determining

19   the jury's verdict.  *See Brecht*, 507 U.S. at 638.[6]

20    There is no support for the claim that the trial court was required to instruct the jury on the

21   elements of the criminal offenses that the "Danny threat" and the "D.A. threat" allegedly constituted

22   and the court's independent review of the record confirms that the state court's denial of relief on

23   this claim was not objectively unreasonable.  As such, respondent is entitled to summary judgment

24   on this subclaim.

25

---

26   [6] Given the lack of precedent supporting his claim, petitioner is essentially asking this court
to establish a new rule entitling him to relief.  For this court to do so would violate the dictates of
*Teague v. Lane,* 489 U.S. 288, 310-16 (1989), which prevents a federal court from granting habeas
relief to a state prisoner based on a constitutional rule of criminal procedure announced after his
conviction and sentence became final.   As amended by AEDPA, 28 U.S.C. § 2254(d) codifies and
amends the non-retroactivity principle announced in *Teague.*

**D.     Claim 5**

In Claim 5, petitioner maintains that his Fifth, Eighth, and Fourteenth Amendment rights were violated by the state's alleged destruction of evidence.  The California Supreme Court denied this claim on the merits in its reasoned opinion disposing of petitioner's direct appeal.  *People v. Walker*, 47 Cal. 3d at 621-23.   Respondent and petitioner both contend that they are entitled to summary judgment on this claim.

Claim 5 is related to Claim 4 in that it concerns admission into evidence of the "Danny threat" at petitioner's penalty phase trial.  The prosecution disclosed that a tape had been made of the conversation containing the threat.  Specifically, Officer Nichols testified that he had made a copy of the tape and taken it to technicians to see if it could be enhanced, but enhancement was not possible.  RT 3183:12-26.  Nichols also testified that when he turned it over to homicide detectives, they informed him the tape was of no value because portions of the conversation were inaudible.  RT 3184:1-2.  Nichols stated that although he had kept the original tape for several months, he was unable to find it at the time of trial, leading him to believe that he had reused it.  RT 3184:5-17. Petitioner's counsel never received or heard the tape.

When addressing this claim on direct appeal, the California Supreme Court stated the following:

> Defendant contends that under *People v. Hitch* (1974) 12 Cal. 3d 641, 652-653 [117 Cal.Rptr. 9, 527 P.2d 361], the officers' negligent destruction of the tape should have precluded admission of evidence of the "Danny" threats at the penalty phase.  The United States Supreme Court has recently formulated its own duty-to-preserve-evidence test in *California v. Trombetta*[,][] 467 U.S. 479 [(1984)]. . . . Under *Trombetta*, the duty to preserve extends only to evidence which "both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  (467 U.S. at p. 489 . . . .) Here it appears that neither prong of the *Trombetta* test was met; defendant made no showing that the tape recording possessed any apparently exculpatory value, nor did he show why his opportunity to cross-examine Officer Nichols, who directly monitored the taped conversation, was inadequate to protect his rights.

*People v. Walker*, 47 Cal. 3d at 638 (footnote omitted).

Upon review of the applicable record, the court finds that the California Supreme Court reasonably considered and rejected this claim on the merits on direct appeal.   The court considered *Trombetta*, which petitioner now alleges entitles him to relief on this claim, and reasonably found

19

1   that petitioner had not made a proper showing under either prong of the *Trombetta* test.  In so doing,

2   the state court did not unreasonably apply the law, nor make an unreasonable determination of facts,

3   but rather properly analyzed the record.  Petitioner has shown nothing to the contrary.

4        This court thus concludes that the state court decision was correct, and was not contrary to,

5   and did not involve an unreasonable application of, clearly established federal law as established by

6   the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).  Accordingly, respondent is

7   entitled to summary judgment on this claim.

8        **E.     Claim 6**

9        In Claim 6, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

10  rights were violated due to the prosecutor's allegedly improper peremptory strikes of the only three

11  African-Americans in the jury venire.   Petitioner argues that the prosecutor's conduct was in

12  violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  The California Supreme Court denied this

13  claim on the merits in its reasoned opinion disposing of petitioner's direct appeal.  *People v. Walker*,

14  47 Cal. 3d at 625-26 & n. 5.  Respondent and petitioner both argue they are entitled to summary

15  judgment on this claim.

16       According to petitioner, the prosecutor exercised his peremptory challenges in a

17  discriminatory manner to strike all three prospective African-American jurors from the venire.  The

18  Supreme Court "consistently and repeatedly has reaffirmed that racial discrimination by the State in

19  jury selection offends the Equal Protection Clause."  *Miller-El v. Dretke*, 545 U.S. 231, 238 (2005)

20  (quoting *Georgia v. McCollum*, 505 U.S. 42, 44 (1992)).  In *Batson v. Kentucky*, 476 U.S. 79, 96-98

21  (1986), the Court established a three-part test for evaluating claims that the prosecution's

22  peremptory challenges were based on race.

23       The first step in a *Batson* challenge requires the defendant to make a prima facie showing of

24  discriminatory jury selection.  *Batson*, 476 U.S. at 94, 96.   A defendant may rely on "the totality of

25  the relevant facts" concerning the prosecutor's conduct during the defendant's trial.  *Id.*  If the

26  defendant successfully establishes a prima facie case, the burden shifts to the prosecution to come

27  forward with a race-neutral explanation for each contested challenge.  *Id.* at 97.  This second step

28  requires the prosecutor to provide "a clear and reasonably specific explanation of his legitimate

United States District Court
For the Northern District of California

20

United States District Court

For the Northern District of California

1    reasons for exercising the challeng[e]." *Id.* at 98.  In the final step, the trial court has "the duty to

2    determine if the defendant has established purposeful discrimination." *Id.* at 98.

3         When addressing this claim on direct appeal, the California Supreme Court held the

4    following:

> On rehearing, amicus curiae assigns as error the trial court's denial of
> defendant's motion for a mistrial pursuant to *People v. Wheeler*, *supra*, 22 Cal. 3d
> 258.  In *Wheeler*, we held that peremptory challenges may not be used to remove
> prospective jurors solely on the basis of presumed group bias.  (Accord, *Batson v.
> Kentucky* (1986) 476 U.S. 79) [parallel citations omitted].  We defined group bias as
> the presumpton that certain jurors are biased merely because they are members of an
> identifiable group distinguished on racial, religious, ethnic or similar grounds.  (22
> Cal. 3d at p. 276).
>
> Under *Wheeler*, a party who believes his opponent is improperly exercising
> peremptory challenges for a discriminatory purpose must raise a timely challenge and
> make a prima facie case of such discrimination.  Once a prima facie case has been
> shown, the burden shifts to the other party to come forward with an explanation that
> demonstrates other, valid bases for the challenges – i.e., reasons relevant to the
> particular case on trial (*People v. Wheeler*, *supra*, 22 Cal. 3d at ¶. 280-282), or as the
> United States Supreme Court has put it, "a neutral explanation related to the
> particular case to be tried." (*Batson v. Kentucky, supra*, 476 U.S. at p. 98.)
>
> It then becomes the duty of the trial court to make "a sincere and reasoned
> attempt to evaluate the prosecution's explanation in light of the circumstances of the
> case as then known, his knowledge of trial techniques, and his observations of the
> manner in which the prosecutor has examined members of the venire and has
> exercised challenges for cause or peremptorily, . . ." (*People v. Hall* (1983), 35 Cal.
> 3d 161, 167-168.)  We have explained that we will "rely on the good judgment of the
> trial courts to distinguish bona fide reasons for such peremptories from sham excuses,
> belatedly contrived to avoid admitting acts of group discrimination." (*People v.
> Wheeler*, *supra*, 22 Cal. 3d at p. 282.)
>
> In the present case, the court concluded that defendant had presented a prima
> facie case.  The prosecutor in turn gave a number of reasons for challenging each of
> the three Black prospective jurors.  He recalled that prospective juror Michael George
> had come to court in metal-studded leather motorcycle garb, and had related that he
> had been repeatedly stopped and harassed by San Jose police officers while riding his
> motorcycle because he fit what he called the "average black man syndrome."  Once
> when George was stopped for speeding, the officer held a gun to his head; George felt
> this was an excessive display of force, filed a complaint with the San Jose police
> internal affairs division, and seemed unsatisfied with its resolution.  The prosecutor
> also recalled that George had volunteered, without being asked, "that he was not
> comfortable at all with the fact that it was a death penalty situation."
>
> Prospective juror Dorothy King had expressed strong scruples against the
> death penalty.  She also displayed a general antiprosecution bias.  She related that the
> San Jose police had "harassed" her husband by stopping him without sufficient cause.
> She had served on a jury in a prior homicide case which resulted in the defendant's
> acquittal.  She related that she disliked sitting on a jury in a murder case.
>
> As for the third prospective Black juror, Dorothy Brown, the prosecutor
> recalled that she was barely able to suppress her apparent amusement when asked
> about her views on the credibility of police officers.  She had founded a group "to
> counterbalance the popular image of Black people in the media," and showed
> incredulity and disdain when the prosecutor asked follow-up questions about the
> group's functions.  She believed the San Jose Police Department had followed her

21

United States District Court

For the Northern District of California

1    husband home every night for a protracted period of time.  She stated she could not
     imagine herself siding with the prosecutor's side of the case.

2            We are satisfied that the trial court fulfilled its obligation to critically evaluate
     the prosecutor's explanations.  The record supports the court's conclusion that the
3    prosecutor properly exercised his peremptory challenges on grounds of individual
     bias.

4

5    FN 5. Amicus curiae contends further that under *People v. Trevino* (1985) 39 Cal. 3d
     667, the trial court erred in accepting the prosecutor's explanations to the extent they
     took into account the prospective jurors' attire, facial expressions and sneers, audible
6    laughter, snickering and the like.  We conclude that the record supports the court's
     finding of specific bias as to each prospective juror separate and apart from any such
7    factors.

8     *People v. Walker*, 47 Cal. 3d at 625-26 & n. 5.

9            Respondent moves for summary judgment on Claim 6 on the grounds that the California

10   Supreme Court reasonably considered and rejected petitioner's contentions on the merits, thus

11   foreclosing relief under 28 U.S.C. § 2254(d).  He also asserts that the state court's factual findings

12   are entitled to deference pursuant to 28 U.S.C. § 2254(e)(1).  Petitioner responds that 28 U.S.C. §

13   2254(d) does not prevent this court from granting relief on Claim 6 because the California Supreme

14   Court's decision was contrary to Supreme Court precedent, specifically *Batson v. Kentucky*, 476

15   U.S. 79 (1986) and *Miller-El v. Cockrell*, 537 U.S. 322 (2003), and because its factual findings were

16   unreasonable.  Petitioner argues that he was denied his equal protection rights during jury selection,

17   and maintains that clear and convincing evidence in the record establishes that the prosecutor's

18   proffered reasons for his peremptory challenges were pretextual.  *See* 28 U.S.C. § 2254(e)(1).

19           At petitioner's trial, the prosecutor exercised his peremptory challenges to strike all three

20   prospective African-American jurors in the venire.  Petitioner is black and therefore is a member of

21   a cognizable racial group.  During jury selection, the prosecutor exercised peremptory challenges to

22   strike potential jurors George, King and Brown, all of whom are black.  Neither party disputes the

23   trial court's ruling that petitioner made a prima facie showing of discrimination.

24           As required by the second step of the *Batson* analysis, the prosecutor provided the trial

25    court with various race-neutral explanations for striking the three African-American venire persons.

26   *See People v. Walker*, 47 Cal. 3d at 625-26.  The Supreme Court has held that "[u]nless a

27   discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed

28   race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).  The second step of the *Batson*

1   inquiry "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514

2   U.S. 765, 768 (1995).  The prosecutor's stated explanations for striking George, King and Brown

3   included the prospective jurors' dress, past negative experiences with law enforcement, and

4   misgivings about imposing the death penalty.  *See People v. Walker*, 47 Cal. 3d at 625-26.  Once

5   again, neither party contests the trial court's conclusion that the prosecutor's proffered explanations

6   for striking all three prospective African-American jurors were facially race-neutral.

7            Following the prosecutor's proffered reasons for striking the three African-American venire

8   persons, the trial court adhered to the final step of a *Batson* challenge and "critically evaluated" the

9   prosecutor's explanations.  At this stage, "the trial court determines whether the opponent of the

10  strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768.

11  Although the trial court is not required to agree with the prosecutor's stated race-neutral

12  explanations to accept them, the court must evaluate "the persuasiveness of the justification." *See*

13  *id.*  The California Supreme Court and the trial court accepted the prosecutor's reasons and ruled

14  that he had not engaged in purposeful discrimination by striking George, King, and Brown. *See*

15  *People v. Walker*, 47 Cal. 3d at 626 .

16          Petitioner argues that this case is analogous to *Miller-El* in that the prosecutor's proffered

17  explanations were little more than pretext for racial discrimination.  "A *Batson* challenge does not

18  call for an exercise in thinking up any rational basis.  If the stated reason does not hold up, its

19  pretextual significance does not fade because a trial judge, or an appeals court can imagine a reason

20  that might not have been shown up as false." *Miller-El*, 545 U.S. at 252.  Petitioner maintains that

21  the state court unreasonably accepted the prosecutor's race-neutral explanations for challenging all

22  three African-Americans on the venire.

23          In *Miller-El*, the Supreme Court held that the Texas state court's conclusion that the

24  prosecution had not discriminatorily exercised peremptory challenges to strike African-American

25  jurors from the venire was unreasonable. *Id.* at 266.  During jury selection in an African-American

26  defendant's capital murder trial, the prosecution struck 10 of 11 qualified black venire persons. *Id.*

27  at 265.  The Court ruled that "[t]he prosecutors' chosen race-neutral reasons for the strikes do not

28  hold up and are so far at odds with the evidence that pretext is the fair conclusion indicating the very

23

discrimination the explanations were meant to deny." *Id.*  The Court also underscored the importance of other evidence of prosecutorial racial discrimination, which included two "jury shuffles" intended to alter the racial composition of the panel, using disparate lines of questioning depending on the race of prospective jurors, and a well-known policy by the Dallas County District Attorney's Office to exclude black venire members from juries at the time of Miller-El's jury selection.  *Id.* at 265-66.  Such overwhelming objective indicia buttressed Miller-El's claims of racial discrimination during jury selection and caused the Court to hold that the prosecutors' race-neutral explanations were pretext for discrimination.  *Id.* at 265.

Walker's jury selection, however, is distinguishable from *Miller-El*.  Although the prosecutor in Walker's trial exercised peremptory challenges to strike 100% of the African-American jurors as compared to 91% in Miller-El's trial, the statistical significance is far more profound in *Miller-El* given the larger pool of eligible jurors.  In the instant case, there were only three eligible African-American jurors, which carries minimal statistical weight, especially when compared to the 11 of 12 black jurors excluded in *Miller-El*.  Perhaps most importantly, the overwhelming objective indicia of discriminatory purpose that existed in *Miller-El* – such as the "jury shuffle," the different lines of questioning based on race, and the stated prosecutorial policy to strike African-American jurors – are not present in this case.

Petitioner asserts that, as in *Miller-El*, the prosecutor mischaracterized testimony of the excluded black prospective jurors to explain his peremptory challenges.  Petitioner argues that these mischaracterizations further support an inference of pretext.  While the record does raise questions concerning the prosecutor's characterization of the prospective African-American jurors' testimony during voir dire, AEDPA requires this court to presume that the state court's factual findings are correct.  *See* 28 U.S.C § 2254(e)(1).  Furthermore, the court has reviewed the applicable record and petitioner is unable to demonstrate that the state court's factual findings were unreasonable.

Petitioner further argues that the California Supreme Court failed to engage in a comparative analysis of the excluded African-American venire persons and other non-black venire members.  "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful

1  discrimination to be considered at *Batson's* third step." *Miller-El*, 545 U.S. 241.  In this case, any

2  potential discrepancies are not comparable to the disparity demonstrated in *Miller-El*.  The record

3  fails to provide clear and convincing evidence of disparate treatment of similarly-situated venire

4  persons based on their race.  *See* 28 U.S.C. § 2254(e)(1).  Thus, AEDPA requires this court to defer

5  to the state court's factual findings.

6        Under AEDPA, this court must defer to the state court's findings unless the state court

7  decision "contradicts the governing law set forth" in the Supreme Court's cases "or confronts facts

8  that are materially indistinguishable from a Court decision and nevertheless arrives at a different

9  result." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 406

10  (2000)).  Petitioner cannot demonstrate that the California Supreme Court's reasoned decision was

11  contrary to, or involved an unreasonable application of, clearly established United States Supreme

12  Court law.  Nor can he demonstrate that the state court's factual findings were unreasonable.

13  Accordingly, respondent is entitled to summary judgment on this claim.

14        **F.      Claim 7**

15        In Claim 7, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

16  rights were violated due to alleged juror misconduct.  Specifically, petitioner maintains that the jury

17  foreman improperly informed the other jurors that a sentence of life without parole could actually

18  mean that a defendant so sentenced might be released from prison.  According to petitioner, the

19  jurors improperly factored this extraneous information into their deliberations, such that the penalty

20  determination was prejudicial.  This claim was raised by petitioner in his 1990 state habeas petition

21  and rejected on the merits by the California Supreme Court.  Both petitioner and respondent

22  maintain that they are entitled to summary judgment on this claim.

23        Respondent argues that he is entitled to summary judgment because petitioner's claim is not

24  cognizable and that, therefore, he is entitled to judgment as a matter of law.  In support of his

25  argument, petitioner cites to *Belmontes v. Woodford*, 350 F.3d 861 (9th Cir. 2003).  In *Belmontes*, the

26  capital defendant argued that the district court had improperly denied him an evidentiary hearing on

27  his juror misconduct claims.  Like petitioner in this case, Belmontes argued that the jurors based

28  their death sentence in part on the belief that life without parole did not guarantee that he might not

1  be released from prison in the future.  The Ninth Circuit rejected Belmontes' argument, holding that

2  he was not entitled to relief because his claim concerned "intrinsic jury processes."  *Id.* at 891.  Such

3  processes "will not be examined on appeal and cannot support reversal."  *Id.* (citations and internal

4  quotations omitted).

5       Despite the clear holding of *Belmontes*, petitioner argues that it should not be read as a

6  "broad holding that extrinsic information brought into the jury room cannot be the subject of a

7  constitutional claim."  Petitioner's Motion at 118-19.  Petitioner ignores the fact, however, that

8  *Belmontes* is squarely on point, and involves the exact same allegations as those made by petitioner,

9  specifically that the jurors' death sentence was influenced by views that a LWOP sentence did not

10 necessarily mean that petitioner would spend the rest of his life in prison.  The Ninth Circuit's clear

11 holding is that such claims "will not be examined on appeal and cannot support reversal."

12 *Belmontes*, 350 F.3d at 891.  Because petitioner's claim is not cognizable on appeal and cannot be a

13 ground for reversal by this court, respondent is entitled to summary judgment on this claim.

14      **G.     Claim 8**

15      In Claim 8, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

16 rights were violated by the prosecutor's use of his peremptory challenges to strike jurors who

17 expressed reservations about the death penalty.  The California Supreme Court denied this claim on

18 the merits in its reasoned opinion disposing of petitioner's direct appeal.  *People v. Walker*, 47 Cal.

19 3d at 624-25.   Respondent and petitioner both contend that they are entitled to summary judgment

20 on this claim.

21      In considering this claim, the California Supreme Court held the following:

22           Defendant contends that the prosecutor's exercise of peremptory challenges
             against death penalty skeptics, i.e., prospective jurors who, although not excusable for
23           cause under *Witherspoon v. Illinois, supra*, 391 U.S. 510, nevertheless expressed
             reservations about the death penalty – violated *People v. Wheeler*[,][] 22 Cal. 3rd 258.
24           . . . We have repeatedly rejected this argument; there is "no constitutional infirmity in
             permitting peremptory challenges by both sides on the bases of specific juror attitudes
25           on the death penalty."  (*People v. Turner*, [] 37 Cal. 3d [302], 315 [208 Cal. Rptr.
             196, 690 P.2d 669] [(1984)].)
26
   *People v. Walker*, 47 Cal. 3d at 624-25.
27

28

26

1    Respondent moves for summary judgment on Claim 8 on the grounds that, as detailed above,

2  the California Supreme Court reasonably considered and rejected petitioner's contentions on the

3  merits, thus foreclosing relief under 28 U.S.C. § 2254(d).  He also asserts that the state court's

4  findings of facts are entitled to deference pursuant to 28 U.S.C. § 2254(e)(1).  Petitioner responds

5  that 28 U.S.C. § 2254(d) does not prevent this court from granting relief on these claims because the

6  California Supreme Court's decision was contrary to Supreme Court precedent, specifically

7  *Witherspoon v. Illinois,* 391 U.S. 510 (1968) and *Wainwright v. Witt*, 469 U.S. 412 (1985).

8    In *Witherspoon*, as the California Supreme Court noted, the High Court held that jurors who

9  express reservations about the death penalty yet assure the court that they will follow the law may

10  not be excused for cause.  391 U.S. at 521-522.   The Court re-confirmed and clarified this rule in

11  *Witt*, holding that a juror may be automatically disqualified only when his views about the death

12  penalty would "'prevent or substantially impair the performance of his duties as a juror in

13  accordance with his instructions and his oath.'"  469 U.S. at 424-35 (quoting *Adams v. Texas*, 448

14  U.S. 38, 45 (1980)).

15    Neither *Witherspoon* nor *Witt*, however, deal with peremptory challenges, which are at issue

16  here.  Similarly, *Adams v. Texas*, 448 U.S. 38 (1980), upon which petitioner also relies, does not

17  address peremptory challenges, but rather the exclusion of jurors who refused to take a statutory oath

18  that a mandatory penalty of death or life imprisonment would not impact their deliberations on

19  issues of fact.  In fact, none of the cases cited by petitioner deal with peremptory challenges, and the

20  court is unaware of any clearly established Supreme Court law holding that peremptory challenges –

21  as opposed to challenges for cause –  may not be used to exclude jurors who express reservations

22  about capital punishment.   *See generally, Swain v. Alabama*, 380 U.S. 202, 220 (1965) (stating that

23  peremptory challenges are "often exercised upon the sudden impressions and unaccountable

24  prejudices we are apt to conceive upon the bare looks and gestures of another, upon a juror's habits

25  and associations, or upon the feeling that the bare questioning [of a juror's] indifference may

26  sometimes provoke resentment." (citations and internal quotations omitted)).

27

28

27

United States District Court

For the Northern District of California

1    As such, the court concludes that the state court decision was correct.  The state court

2 decision was not contrary to, and did not involve an unreasonable application of, clearly established

3 federal law as established by the Supreme Court of the United States.  Furthermore, the state court's

4 factual findings are presumed to be correct.  28 U.S.C. § 2254(e)(1).  Accordingly, respondent is

5 entitled to summary judgment on this claim.

6

7    **H.    Claim 10**

8    In Claim 10, petitioner maintains that his Fifth, Sixth and Fourteenth Amendment rights were

9 violated by the trial court's denial of his request to sever the Bottle Shop charges from the Olveda

10 charges.  The California Supreme Court denied this claim on the merits in its reasoned opinion

11 disposing of petitioner's direct appeal.  *People v. Walker*, 47 Cal. 3d at 621-23.   Respondent and

12 petitioner both contend that they are entitled to summary judgment on this claim.

13    While misjoinder alone does not violate the Constitution, it may rise to the level of a

14 constitutional violation where "it results in prejudice so great as to deny a defendant his . . . right to a

15 fair trial."   *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986).  The Ninth Circuit has held that

16 there are three possible ways prejudice may result from misjoinder:

17      First, the jury may confuse and cumulate the evidence.  Second, the defendant may be
       prejudicially confounded in presenting his defenses.  Third, the jury may erroneously
18      conclude that the defendant is guilty of one offense and, therefore, convict him on the
       others because of his criminal disposition.

19 *United States v. Brashier,* 548 F.2d 1315, 1323 n. 21 (9th Cir. 1976) (internal citations omitted).

20 Petitioner maintains that he suffered undue prejudice of the first type, in that the jury was urged to

21 cumulate the evidence from the two charges, making a guilty verdict on both charges substantially

22 more likely than it would have been had they not been charged together.  Specifically, petitioner

23 argues that, contrary to the finding of the California Supreme Court, the Bottle Shop and the Olveda

24 charges were not cross-admissible, *i.e.*, the evidence of one charge would not have been

25 independently admissible in the other charge.  According to petitioner, the cross-admission of the

26 evidence was unduly prejudicial. *See Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1988).

27

28

In addressing this claim on direct appeal, the California Supreme Court held that evidence of petitioner's robbery, assault, attempted murder and murder at Dan's Bottle Shop would have been admissible in a separate trial on the medical building crimes against Rose Olveda.  *Walker*, 47 Cal. 3d at 622-23.  Specifically, the court found that each set of crimes was similar enough to be probative on the issue of identity, because:

> both incidents were committed in San Jose one month apart; both were armed robberies leading to unprovoked deadly assaults; and in both instances defendant entered business premises shortly after 10 p.m., demanded that a safe be opened, marched his victims to a back room, and began his attack with a vicious beating to the victim's head.  Then, using the same gun in each instance, he shot the victim in the head while he or she was lying on the floor.

*Walker*, 47 Cal. 3d at 622.

Petitioner maintains that this court need not defer to the California Supreme Court's decision upholding the trial court's denial of petitioner's motion to sever because it was contrary to or an unreasonable application of clearly established United States Supreme Court law.  Petitioner argues that the commonalities described by the California Supreme Court are too "general" to show commonality of circumstances such that the evidence of both crimes would be probative on the issue of identity.

Upon review of the applicable record, the court finds that the California Supreme Court reasonably considered and rejected this claim on the merits on direct appeal.  Petitioner has not demonstrated that it was unreasonable for the court to conclude that the facts described above constituted a distinctive enough modus operandi to be cross-admissible at separate trials.  Although the crimes at issue had some differences, as the California Supreme Court detailed, there were significant similarities as well.  This court thus concludes that the state court decision was correct, and was not contrary to, and did not involve an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).  Furthermore, petitioner has not demonstrated that the joinder of the Bottle Shop charges and the Olveda charges had a substantial and injurious effect in determining the jury's verdict.  *See Brecht*, 507 U.S. at 638.  Accordingly, respondent is entitled to summary judgment on this claim.

I.      **Claim 11**

United States District Court

For the Northern District of California

1    In Claim 11, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

2    rights were violated by the trial court's exclusion of the testimony of Dr. Craig Haney, petitioner's

3    proposed expert witness on the validity of eyewitness identifications.  The California Supreme Court

4    denied this claim on the merits in its reasoned opinion disposing of petitioner's direct appeal.

5    *People v. Walker*, 47 Cal. 3d at 628.  The state court also rejected this claim on the merits in

6    petitioner's first and second state habeas corpus petitions.  Both respondent and petitioner argue they

7    are entitled to summary judgment on this claim.

8    While recognizing that there is no law requiring that expert testimony be allowed, (*see, e.g.*,

9    *Jordan v. DuCharme*, 983 F.2d 933, 938-39 (9th Cir. 1993)),  petitioner nonetheless maintains that

10   exclusion of his expert witness was so egregious that it violated his due process rights.  Specifically,

11   petitioner argues that because his main defense was mistaken identity, expert testimony on the

12   validity of eyewitness identifications was of primary importance.

13   Respondent moves for summary judgment on the grounds that the California Supreme Court

14   reasonably considered and rejected petitioner's contentions on the merits, thus foreclosing relief

15   under 28 U.S.C. § 2254(d).  He asserts that the state court's findings of facts are entitled to deference

16   pursuant to 28 U.S.C. § 2254(e)(1).

17   In its reasoned opinion, the California Supreme Court held that:

18   > The present case is one in which the trial court had discretion to admit or exclude the
     > expert testimony.  Although Dr. Haney offered to identify factors that might suggest
19   > the witnesses misidentified the defendant, ample circumstantial evidence linked
     > defendant to the crimes and gave the identifications an independent source of
20   > reliability.  As we noted earlier, defendant admitted possession of the gun that was
     > used in both incidents; his car was identified as the possible getaway vehicle from the
21   > liquor store; Olveda's stolen vehicle was found parked less than a block from where
     > defendant's sister lived; and defendant made numerous incriminating statements
22   > both to friends and police.  Although the trial court, under these circumstances, had
     > discretion to admit Dr. Haney's testimony, we find no abuse of discretion, and clearly
23   > no prejudicial error, in its decision to exclude that evidence.

24   *People v. Walker*, 47 Cal. 3d at 628.

25   Once more, petitioner maintains that, because the state court's reasoned opinion was based

26   on state law and did not specifically discuss the federal constitution, it is not entitled to deference

27   under AEDPA.  Petitioner is again mistaken.  The Supreme Court has made clear that as long as the

28   reasoning of the state court does not contradict Supreme Court precedent, the AEDPA's deferential

1    standard applies.  *See Early*, 537 U.S. at 8 (qualification for AEDPA deference requires neither

2    citation to United States Supreme Court cases nor awareness of them, as long as neither the

3    reasoning nor the result of the state court decision contradicts them).  Thus, 28 U.S.C. § 2254(d)

4    applies to Claim 11.

5            The court concludes that the state court decision was correct.  Petitioner has pointed to no

6    Supreme Court precedent tending to show that the state court's decision was contrary to, or involved

7    an unreasonable application of, clearly established federal law.  There is no indication that exclusion

8    of Dr. Haney's testimony resulted in the denial of petitioner's right to present his defense of

9    mistaken identify, specifically in light of the fact that, *inter alia*, the eyewitnesses were cross-

10   examined regarding the reliability of their identifications and the fact that the jurors were read an

11   instruction requiring them to determine the credibility of any witness in part on "the extent of his

12   ability to perceive, to recollect or to communicate any matter about which he testifies."  Ex. 28 at

13   3027 (CALJIC No. 2.20).   Furthermore, the state court's factual findings are presumed to be correct,

14   28 U.S.C. § 2254(e)(1).  Finally,  petitioner has failed to establish that any purported state court

15   error had a substantial and injurious effect or influence in determining the jury's verdict.  *See Brecht*,

16   507 U.S. at 638.  Accordingly, respondent is entitled to summary judgment on this claim.

17        **J.    Claim 12**

18          In Claim 12, petitioner claims that his Eighth Amendment rights were violated because it was

19   not proven at trial that he killed or intended to kill.  Specifically, petitioner maintains that imposition

20   of the death penalty in his case would be unconstitutional because the jury may have convicted him

21   of the murder of Joe Vasquez on an accomplice or felony-murder theory, without a finding from the

22   jury that he intended to kill.  The California Supreme Court denied this claim in its reasoned opinion

23   on direct appeal.  *People v. Walker*, 47 Cal. 3d at 632-33. Respondent and petitioner both argue they

24   are entitled to summary judgment on this claim.

25          In California, the felony murder statute provides that the unlawful killing of a human being

26   during the commission or attempted commission of an inherently dangerous felony like robbery, is

27   murder of the first degree when the perpetrator had the specific intent to commit the underlying

28   felony.  Cal. Penal Code § 189; CALJIC No. 8.21.  The felony murder rule has been upheld as valid

United States District Court

For the Northern District of California

by the California Supreme Court.  *See*, *e.g.*, *People v. Dillon*, 34 Cal. 3d 441, 472-76 (1983).

Furthermore, the United States Supreme Court has held that a capital sentence may be appropriately

imposed for felony murder, even without a specific intent to kill, so long as there is a finding that

there was major participation by the perpetrator in the underlying felony, coupled with reckless

indifference to human life.  *Tison v. Arizona*, 481 U.S. 137, 158 (1987).[7]

In this case, the prosecution charged petitioner with the robbery-murder special circumstance

in Cal. Penal Code § 190.2 (a)(17)(A), which states that: "[t]he murder was committed while the

defendant was engaged in or was an accomplice in the commission of, attempted commission of, or

the immediate flight after committing or attempting to commit the following felonies: (A) Robbery

in violation of section 211."  While an intent to kill instruction is not required with respect to the

actual killer, an intent to kill instruction *is* required when the evidence is such that the jury could

find that the defendant was an accomplice as opposed to the actual killer.  *See People v. Anderson*,

43 Cal. 3d 1104, 1138-39 (1987).   Although the trial court in petitioner's case gave the jury

accomplice liability instructions, it did not give instructions that under the accomplice liability

theory, the felony murder special circumstance would require proof of petitioner's intent to kill.

According to petitioner, this error on the part of the trial court entitles him to reversal of the special

circumstances finding and the death verdict.

The California Supreme Court addressed this error of the trial court in its reasoned opinion as

follows:

> Defendant correctly argues that the court erred in failing to instruct that a
> finding of intent to kill is required for a felony-murder special circumstance as to an
> accomplice who is not the actual killer.  Defendant handed the gun to his accomplice
> before hitting Romero over the head with the bottles of wine; thereafter neither
> Romero nor Zamora directly observed defendant shoot Vasquez.  Notwithstanding
> the overwhelming evidence that defendant was the gunman, because accomplice
> liability instructions were given here, defendant was entitled to an instruction that,
> under such theory of liability, the felony-murder special circumstance would require
> proof of his intent to kill.

---

[7] *Tison* refined the holding of *Enmund v. Florida*, where the Court held that the Eighth
Amendment prevented the execution of a defendant convicted of first degree murder pursuant to a
felony murder theory unless there was a finding that the defendant did kill, attempted to kill or
intended to kill.  458 U.S. 782, 797 (1982).  The Court further addressed this issue in *Cabana v.
Bullock*, where it found that the requisite finding under *Enmund* need not be made by a jury, but
rather could be made by a state court.  474 U.S. 376 (1986).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

> The error, however, was harmless . . . Absolutely no evidence was presented suggesting defendant did not share the triggerman's purpose to kill all the witnesses to the robbery.

> Moreover, the guilty verdicts necessarily reflect that the jury found defendant's intent to kill Vasquez. Three persons were shot – Vasquez, Romero and Zamora. Only Vasquez died. Defendant was charged with two counts of assault with intent to commit murder for the shootings of Romero and Zamora. The jury was instructed that this crime requires express malice. . . . Express malice, in this context, necessarily includes an intent to kill. (See *People v. Murtishaw*, [] 29 Cal. 3d 733, 764-765 [175 Cal. Rptr. 738, 631 P. 2d 446 (1981)].) The jury verdicts finding defendant guilty on both counts thus determined that he intended to kill Romero and Zamora. The evidence manifestly shows a single intent as to all three victims in the liquor store shootings; it is inconceivable the jury would find that defendant intended to kill only the victims who survived, but not the one who died.

> It is virtually impossible to conclude on this record that anyone other than defendant was the actual killer. In any event, the record established beyond doubt that defendant acted with intent to kill in this case. Hence, the finding required by *Enmund v. Florida*, (1982) 458 U.S. 782 . . . , is satisfied. (*Cabana v. Bullock* (1986) 474 U.S. 376 [].)

> *People v. Walker*, 47 Cal. 3d at 633-34.

In addition to its detailed analysis and finding that the error of the trial court was harmless, the state court also rejected petitioner's current claim that the jury might have found that he was an accomplice to the murder of Joe Vasquez, as opposed to the actual killer. The California Supreme Court stated:

> It is undisputed that defendant was armed with the handgun upon initiating the robbery of the liquor store. After defendant personally removed the money from the cash register his accomplice stated, "Come on. We got the money. Let's get out." Defendant replied, "*No. We're not going to leave any witnesses.*" (Italics added.) Defendant marched the victims back into the rear of the store at gunpoint. He handed the gun to his partner, then twice struck Romero across the head with two full bottles of wine. When Romero pretended to be dead, defendant removed Romero's wallet from his back pocket, felt his back and said, "*We don't have to worry about this guy any more.*" (Italics added.)

> Neither of the surviving victims directly observed defendant regain possession of the gun or fire the ensuing volley of shots. However, Romero testified that defendant's companion, who "had a very boyish look to his face," remained passive throughout the incident and at no time exhibited any threatening or violent behavior. Romero observed *defendant walk over to Zamora and Vasquez* and order the boys to their knees. As the victims pleaded for their lives three shots were fired off in rapid succession; *Vasquez and Zamora were each shot through the front of the head.* The execution-style shooting clearly evinces an intent to kill. The nature and location of the wounds, together with Romero's testimony, strongly supports an inference that defendant momentarily handed the gun to his companion so he could hit Romero over the head with the wine bottles, then took his gun back, stood in front of his victims and fired the shots.

1

2

3

4

5

6

7

8

Defendant used the same handgun several weeks later to rob and twice shoot victim Rose Olveda in the head; the jury concluded from such evidence that he had assaulted her with intent to commit murder.  Subsequent to the commission of these offenses defendant remained in possession of the handgun, admitted ownership of it when he sold it to undercover Officer MacIvor, and told the officer it "had done a murder."  The jury found that defendant had personally used the gun in connection with the murder of Vasquez, the robbery of Olveda, and assaults with intent to commit murder upon Romero, Zamora and Olveda.

In short, the undisputed evidence overwhelmingly establishes that defendant personally shot all of his victims and intended to murder each of them, succeeding in one case.  The verdicts and personal gun-use enhancements found true under each count establish that the jury so found; no contrary evidence whatsoever was presented.

9   *People v. Walker*, 47 Cal. 3d at 632-33.

10   Despite the state court's detailed analysis, petitioner maintains that he is entitled to summary

11   judgment on this claim.  He argues that the state court decision was based on an unreasonable

12   determination of the facts in light of the evidence presented in state court, *see* 28 U.S.C. §

13   2254(d)(2), and maintains that, under the facts, the jury may have concluded that petitioner was an

14   accomplice to the Vasquez murder.  Petitioner, however, has pointed to nothing in the record that

15   would tend to undermine the state court's findings.  Contrary to petitioner's assertions, the state

16   court decision is firmly supported by the record.  Under AEDPA, this court must defer to the state

17   court findings; in addition, this court has independently reviewed the record and finds that the only

18   reasonable inference from the facts is that petitioner was the shooter and had the intent to kill all of

19   the victims.

20   Petitioner also argues that the state court erred in finding that the trial court's failure to read

21   the required instruction regarding intent and accomplice liability was harmless, and maintains that

22   such a finding was contrary to, or an unreasonable application of clearly established United States

23   Supreme Court law.  Here, again, petitioner's argument fails.  The state court's decision took note of

24   *Enmund* and *Cabana*, and correctly found that, under the applicable Supreme Court precedent, the

25   trial court's instructional error was harmless.  Based on the state court's legal conclusions and its

26   reasonable factual findings, petitioner cannot demonstrate that any error had a substantial and

27   injurious effect or influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637 (finding that

28   petitioners are not entitled to habeas relief based on trial error unless they can establish that any error

1  resulted in actual prejudice).  Accordingly, summary judgment on this claim is granted in favor of

2  respondent.

3      **K.      Claim 13**

4      In Claim 13, petitioner claims that his Fifth and Eighth Amendment rights were violated by

5  the use of an unconstitutional presumption in applying Cal. Penal Code § 69.  Specifically, petitioner

6  points to admission of the "D.A. threat" aggravation evidence as a violation of section 69 at the

7  penalty phase, and argues that violation of that statute includes proof of an intent to deter an

8  executive officer from performing a duty imposed by law.  Petitioner argues that "no evidence was

9  offered at trial to show the intent with which this statement was made or whether, if made, it was

10  intended to influence the conduct of an executive officer, or what duty on the part of such officer it

11  was supposed to deter."   Amended Petition at ¶ 337.  Thus, according to petitioner, admission of

12  this evidence was based on an unconstitutional presumption that relieved the prosecution of proving

13  all elements of the crime beyond a reasonable doubt.  *See*, *e.g.*, *County Court of Ulster County v.*

14  *Allen*, 442 U.S. 140, 156 (1979).  Respondent and petitioner both argue they are entitled to summary

15  judgment on this claim.

16      Petitioner raised this particular claim, which is related to Claim 4, in his 1990 state habeas

17  petition, and the California Supreme Court rejected it in a summary opinion on the merits.  Thus, in

18  order to prevail on this claim, petitioner must establish that an independent review of the record

19  demonstrates that the state court's decision was objectively unreasonable under clearly established

20  United States Supreme Court law.

21      As discussed *supra*, the California Supreme Court held in its reasoned opinion on direct

22  appeal that admission of the "D.A. threat" did not constitute reversible error.   *People v. Walker*, 47

23  Cal. 3d at 639.   This court found, in its analysis of petitioner's Claim 4 concerning the "D.A.

24  Threat", that the state court's opinion was neither contrary to, or an unreasonable application of

25  clearly established United States Supreme Court law, nor was it an unreasonable determination of

26  the facts.

27      The gravamen of Claim 13 is that the California Supreme Court, in analyzing admission of

28  the "D.A. threat", unconstitutionally presumed that petitioner had the required intent to deter a

1   public officer from his duties.  Essentially, petitioner is arguing that there was insufficient evidence

2   from which to find an intent to deter under Penal Code section 69, and thus that "the California

3   Supreme Court could only reach the conclusion it did by *presuming* that Walker had the required

4   intent."  Petitioner's Motion at 160.

5          Petitioner's argument must fail.  In its reasoned opinion concerning the "D.A. threat", the

6   California Supreme Court specifically held that "[g]iven the murder and assault charges which

7   defendant faced, . . . [t]he evidence . . . supports an inference that defendant intended to thwart or

8   deter further prosecution of his case by threatening the deputy district attorney, and each requisite

9   element of a violation of section 69 was shown on these facts."  *People v. Walker*, 47 Cal. 3d at 639.

10  Petitioner may disagree with the state court's analysis of the facts but, as discussed in detail *supra*,

11  he has not shown that the state court's factual determinations were unreasonable.

12         Given the analysis of the California Supreme Court in its reasoned opinion regarding a

13  related claim on direct appeal, which this court has already found to be entitled to deference under

14  AEDPA, petitioner cannot show that the California Supreme Court's summary decision denying this

15  particular claim in petitioner's 1990 state habeas petition is objectively unreasonable.  This court's

16  independent review of the record confirms that it was reasonable for the California Supreme Court to

17  conclude that there was sufficient evidence of intent.  *See* 28 U.S.C. § 2254 (d)(1)(2).  Moreover,

18  petitioner has not shown that any alleged constitutional error at issue had a substantial and injurious

19  effect or influence in determining the jury's verdict.  *Brecht,* 507 U.S. at 638.  Respondent is

20  therefore entitled to summary judgment on this claim.

21         **L.      Claim 14**

22         In Claim 14, petitioner claims that his Fifth, Sixth, Eighth and Fourteenth Amendment rights

23  were violated by California's death penalty statutory scheme.  Specifically, petitioner maintains that

24  the state's death penalty law is unconstitutional because it does not require that the trial judge

25  instruct the jury that it must find both that the aggravating circumstances outweigh the mitigating

26  circumstances, and that death is the appropriate penalty, unanimously and beyond a reasonable

27  doubt.

28

The California Supreme Court has consistently held that the above feature of the state's death penalty law is constitutional. *See, e.g.*, *People v. Stanley,* 10 Cal. 4th 764, 842 (1995), *People v. Webb*, 6 Cal. 4th 494, 536 (1993). Petitioner's argument to the contrary was raised and rejected on direct appeal (*People v. Walker*, 47 Cal. 3d at 636), and in his 1998 state habeas corpus petition.

Respondent maintains that he is entitled to summary judgment because the California Supreme Court's rejection of Claim 14 was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent. Petitioner counters that he is entitled to summary judgment because the California statutory scheme is contrary to and an unreasonable application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny.

The *Apprendi* Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Following *Apprendi*, the Court found in *Ring v. Arizona*, 536 U.S. 584 (2002), that Arizona's capital punishment scheme was unconstitutional because it allowed the trial judge, as opposed to the jury, to determine the presence or absence of aggravating factors required by Arizona law for imposition of the death penalty.

Petitioner, however, cannot rely on either *Apprendi* or *Ring* in support of his claim because both cases were decided well after his conviction became final in March 1993, and this court may not apply them retroactively. As amended by AEDPA, 28 U.S.C. 2254(d) codifies and amends the non-retroactivity principle announced in *Teague v. Lane*, 489 U.S. 288 (1989). *See Williams v. Taylor*, 529 U.S. 362, 379–80, 412 (2000). This principle prevents a federal court from granting habeas relief to a state prisoner based on a constitutional rule of criminal procedure announced after his conviction and sentence became final. *See Teague*, 489 U.S. at 310–16; *see also Penry v. Lynaugh*, 492 U.S. 302, 313–14 (1989) (the non-retroactivity principle is applicable in a capital sentencing context). Furthermore, it prohibits federal courts from either creating or applying new rules on collateral review. *See Butler v. McKellar*, 494 U.S. 407, 412 (1990).

In pertinent part, Section 2254(d) provides that no habeas relief may be granted as to any claim that was adjudicated on the merits in state court unless the prior decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United

United States District Court

For the Northern District of California

States Supreme Court.  28 U.S.C. 2254(d)(1).  *Teague*'s prohibition against reliance on new rules is the functional equivalent of Section 2254(d)'s requirement of reliance on "clearly established law." *Williams*, 529 U.S. at 379, 412.  AEDPA has also added the requirement that the "clearly established law" be limited to that "determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  This extends the *Teague* principle "by limiting the source of doctrine on which a federal court may rely in addressing the application for a writ."  *Williams*, 529 U.S. at 381–82.  Thus, AEDPA codifies *Teague* to the extent that *Teague* requires federal courts to deny relief contingent upon a rule of law that was not clearly established at the time that the state conviction became final. *Id*. at 380.

Teague instructs that "[a] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."  489 U.S. at 301.  A decision sets forth a new rule when it "breaks new ground or imposes a new obligation on the States or the Federal Government."  *Butler*, 494 U.S. at 412.

Here, petitioner's conviction became final when the United States Supreme Court denied certiorari in March 1993.  Both *Apprendi* and *Ring* were decided well after that date.  While there are exceptions to the *Teague* bar, in the matter of *Apprendi* and *Ring*, controlling authority has confirmed that neither case may be applied retroactively.  Although the Ninth Circuit subsequently held that the holding in *Ring* was retroactive and thus applicable to federal habeas review, *Summerlin v. Stewart*, 341 F. 3d 1082, 1121 (9th Cir. 2003) (*en banc*), the Supreme Court has since reversed *Summerlin* and concluded that *Ring* established a new rule that was not retroactive.  *Shriro v. Summerlin*, 542 U.S. 348, 352-54 (2004).  In *United States v. Sanchez-Cervantes*, 282 F.3d 664, 668-671 (9th Cir. 2002), the Ninth Circuit held that *Apprendi* was not retroactive.

Thus, as claim 14 is based on *Apprendi* and *Ring*, it is barred by *Teague* and no exceptions apply.  Furthermore, the court finds that the state court decision was correct and not contrary to clearly established United States Supreme Court law.  As such, respondent is entitled to summary judgment on this claim.

**M.     Claim 15**

38

United States District Court

For the Northern District of California

In Claim 15, petitioner claims that his Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated by the alleged unconstitutional application of certain statutory sentencing factors. Specifically, petitioner addresses the application of Cal. Penal Code § 190.3, which provides in pertinent part:

> In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:
>
> (a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1
>
> (b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.
>
> (c) The presence or absence of any prior felony conviction.
>
> (d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.
>
> (e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.
>
> (f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.
>
> (g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.
>
> (h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the affects of intoxication.
>
> (i) The age of the defendant at the time of the crime.
>
> (j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.
>
> (k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.[8]

There are three subclaims concerning the above factors in Claim 15; the court will examine each subclaim in turn.

---

[8] Pursuant to California law, these factors are not specifically labeled "aggravating" or "mitigating."

### 1.     Claim 15A

In Claim 15A, petitioner maintains that his constitutional rights were violated by the trial court's instructions to the jury regarding factors that he claims were irrelevant.  Specifically, petitioner alleges that it was reversible error for the court to instruct on factors d, e, f, g, h and j.  According to petitioner, by instructing the jury on mitigating factors that were not at issue in his case, the trial court permitted the jury to believe that all of the factors might be considered, and that absence of such factors might be considered aggravating.  Petitioner also maintains that the prosecutor impermissibly did the same in his closing argument.  Under state law, jurors are not permitted to consider the absence of mitigating factors as aggravating factors.  *See People v. Davenport*, 41 Cal. 3d 247 (1985).  The California Supreme Court denied this subclaim on the merits in its reasoned opinion disposing of petitioner's direct appeal.  *People v. Walker*, 47 Cal. 3d at 649.  Both respondent and petitioner argue they are entitled to summary judgment on this claim.

As to petitioner's claim of instructional error, the state supreme court addressed petitioner's claim as follows:

> Defendant and amicus curiae contend that the trial court erred in failing to delete the nonapplicable or irrelevant statutory mitigating factors (§ 190.3).  We have previously rejected this argument. [citations omitted].  "[A]s is apparent from the statutory language, it is for the jury to determine which of the listed factors are applicable or 'relevant' to the particular case. (§ 190.3, par. 6.)" (*Miranda*, *supra*, 44 Cal. 3d at p. 105).

*People v. Walker*, 47 Cal. 3d at 649.

As to petitioner's claim of prosecutorial misconduct regarding the prosecutor's closing argument, the court notes that it has already held that this claim, which is stated in more detail as Claim 19B(e) in the Amended Petition, is procedurally defaulted.  As such, this court need not address petitioner's merits argument here.  Nonetheless, in the interests of finality, the court will do so.

In its reasoned opinion, the state supreme court stated that petitioner's claim of prosecutorial misconduct regarding this issue was barred because of his failure to object at trial.  *Walker*, 47 Cal. 3d at 644.  The court also found that, because petitioner's case was tried four years before *Davenport*, petitioner could not rely on that case because "its rule is prospective only."  *Id.*

United States District Court

For the Northern District of California

The state supreme court also addressed this claim on the merits, stating:

> The prosecutor's argument constituted *"Davenport* error." (*People v. Davenport* (1985) 41 Cal. 3d 247 [221 Cal.Rptr. 794, 710 P.2d 861].)  In *Davenport* we held it improper for a prosecutor to argue that the mere absence of a statutory factor was itself an aggravating circumstance. . . . Although we stated in *Davenport* that such argument "should not in the future be permitted" (*ibid.*), we did not rely on the point in reversing the penalty judgment therein.
>
> Defendant and amicus curiae urge that the *Davenport* error requires reversal of the penalty verdict.  We do not agree. . . .
>
> Turning to the question of prejudice, our review of the evidence, instructions, and arguments as a whole convinces us that the prosecutor's reference to the absence of mitigating evidence under factors (f), (g), (h), and (j) as "aggravating circumstances" could not, in reasonable possibility, have affected the jury's verdict. (See *People v. Brown* (1988) 46 Cal. 3d 432, 456 [250 Cal. Rptr. 604, 758 P.2d 1135].)  In each instance the misnomer was directly preceded by argument in which the prosecutor urged the jury to find each of the four factors *inapplicable* to this case. Stated otherwise, he argued that defendant could not possibly claim "moral justification" for the shootings (factor (f)), did not act out of extreme duress or the domination of another (factor (g)), did not commit the crimes due to intoxication or mental illness (factor (h)), and had not played a "relatively minor role in the crimes" (factor (j)).  Given the guilt phase evidence and verdicts, it is not reasonably possible that the *"Davenport"* error misled the jury in their task of weighing the applicable aggravating and mitigating circumstances.  Furthermore, we view the prosecutor's statement – "[t]he mitigating factors are a possibility of two.  And the aggravating factors are all the rest" – as an exhortation that the evidence supported the conclusion that aggravating factors *overwhelmingly* outweighed the mitigating circumstances in this case.

*People v. Walker*, 47 Cal. 3d at 644.

Because the state supreme court disposed of these issues in a reasoned opinion, petitioner must demonstrate that the conclusion was either contrary to, or an unreasonable application of, clearly established United States Supreme Court law, or an unreasonable determination of the facts. In his attempt to do so, petitioner maintains that, while the California Supreme Court applied the correct standard – whether there was a reasonable possibility that the prosecutor's argument could have affected the jury – it reached an objectively unreasonable conclusion in holding that it did not.

Petitioner's argument is unconvincing.  He cannot cite to any opinion that demonstrates that the state court's decision was an unreasonable application of clearly established United States Supreme Court law.  Rather, petitioner cites to several federal cases that confirm generally that a capital defendant has a right to an individualized sentencing determination (*e.g. Woodson v. North Carolina*, 428 U.S. 280, 304 (1976); *Zant v. Stephens*, 462 U.S. 862, 879 (1983); *Johnson v. Mississippi*, 486 U.S. 578, 584-85 (1988)) but cannot cite to any specific case that demonstrates that

41

United States District Court

For the Northern District of California

1   the California Supreme Court's application of the relevant law was unreasonable.  Petitioner

2   disagrees with the state court's decision, but his disagreement is not enough under AEDPA.

3        As detailed above, the California Supreme Court considered petitioner's claims of

4   instructional error and prosecutorial misconduct in depth.  Petitioner has failed to demonstrate that

5   the state court decision with respect to this subclaim was contrary to, or involved an unreasonable

6   application of, clearly established law as determined by the United Stats Supreme Court.  *See* 28

7   U.S.C. 2254(d).  Moreover, petitioner has failed to establish that any purported instructional or

8   prosecutorial error had a substantial or injurious effect or influence in determining the jury's verdict.

9   *See Brecht*, 507 U.S. at 638.  Thus, summary judgment on Claims 15A and 19B(e) is granted in

10  favor of respondent.

11          **2.   Claim 15B**

12       In Claim 15B, petitioner maintains that his constitutional rights were violated because the

13  jury was not informed that certain factors could only be considered mitigating.  Specifically,

14  petitioner argues that while factor (i), age of defendant,[9] may only be applied as a mitigating factor,

15  the prosecutor argued that the age factor "might be" mitigating.  According to petitioner, the failure

16  to label violates California's statutory scheme.  Alternatively, petitioner argues that if the penalty

17  factors need not be labeled under California law, they are rendered too vague under the Eighth

18  Amendment.  Petitioner raised this argument in his 1998 state habeas petition; the California

19  Supreme Court rejected it on the merits in a summary opinion.  Both petitioner and respondent

20  maintain that they are entitled to summary judgment on this claim.

21       In order to succeed on this claim, petitioner must establish that an independent review of the

22  record by this court reveals that the state court's rejection of the claim was objectively unreasonable

23  in light of clearly established Unites States Supreme Court precedent.  Under this standard,

24  petitioner's second argument – that California's penalty factors are unconstitutionally vague – must

25  fail.  As respondent correctly points out, in *Tuilaepa v. California*, the Court examined factor (i), as

26  well and factors (a) and (b), and held that they were not unconstitutionally vague.  512 U.S. 967, 979

27  

28        [9] Petitioner was 19 years old at the time these crimes were committed.

United States District Court

For the Northern District of California

1    (1994) (finding that "[a] capital sentencer need not be instructed how to weigh any particular fact in

2    the capital sentencing decision.")  Given the precedent of *Tuilaepa,* the state court's rejection of

3    petitioner's vagueness claim was clearly reasonable.

4          Petitioner's first argument must also fail.  The court has made an independent review of the

5    record, and there is nothing that reveals that the state court's decision was objectively unreasonable.

6    Petitioner does not – and cannot – cite to any statutory or caselaw establishing that his trial court

7    was required to read the jury an instruction that factor (i) was unequivocally mitigating.  To the

8    contrary, California state law holds that the trial court is <u>not</u> required to address specific sentencing

9    factors because their aggravating or mitigating nature is evident.  *See, e.g.*, *People v. Frye*, 18 Cal.

10   4th 894, 1026 (1998); *People v. Ray*, 13 Cal. 4th 313, 359 (1996).  And as this court has already

11   noted, the United States Supreme Court has found that factor (i) is not unconstitutionally vague.

12   *Tuilaepa,* 512 U.S. at 979.

13         For the foregoing reasons, respondent is entitled to summary judgment on subclaim 15B.

14                    **3.    Claim 15C**

15         In Claim 15C, petitioner argues that his constitutional rights were violated due to the trial

16   court's and the prosecutor's approach to factor (k) of Cal. Penal Code § 190.3.  Petitioner maintains

17   that the prosecutor improperly argued that: 1) factor (k) was limited to circumstances relating to the

18   crime; and 2) the absence of mitigating factors was aggravating.  Petitioner also argues that it was

19   unconstitutional for the trial court to decline to offer any explanation beyond the statutory language

20   when the jury asked for further instruction on aggravating and mitigating factors.  The California

21   Supreme Court denied this claim on the merits in its reasoned opinion disposing of petitioner's

22   direct appeal.  *People v. Walker*, 47 Cal. 3d at 641-42.  Both petitioner and respondent maintain they

23   are entitled to summary judgment on this claim.

24         In considering this claim on direct appeal, the California Supreme Court made a lengthy and

25   detailed analysis:

26              Defendant and amicus curiae argue that the jury was misinstructed on the
            proper role of sympathy and general character and background evidence in the
27          penalty phase.  In reviewing such claim, we examine the instructions and arguments
            as a     whole to determine whether the jury was adequately informed of the
28              proper scope of mitigating evidence for its consideration.  (*California*

43

*v. Brown* (1987) 479 U.S. 538, 546 (conc. opn. of O'Connor, J.); see *Eddings v. Oklahoma* (1982) 455 U.S. 104, 113-115; *People v. Ghent, supra*, 43 Cal. 3d at p. 777; *People v. Brown* (1985) 40 Cal. 3d 512, 536-537, 544, fn. 17; *People v. Easley* (1983) 34 Cal.3d 858, 878, & fn. 10. [parallel citations omitted].

We have undertaken such a review here and conclude that the jury was not misled regarding its responsibility to consider all of the mitigating evidence in the case.

First, the jury was *not* instructed at the penalty phase with the "no-sympathy" language embodied in CALJIC No. 1.00. (Compare *People v. Brown, supra*, 40 Cal. 3d at 536-537, vacated *sub nom, California v. Brown*, 479 U.S. 538 [wherein the high court held that the giving of the California standard anti-sympathy instruction (CALJIC No. 1.00) at the penalty phase is *not* unconstitutional per se]). The jury was specifically instructed that: "[Y]ou were previously instructed you must not be influenced by pity for the defendant or swayed by sympathy for him. I instruct you that in this phase of the case, the penalty phase, pity and sympathy for the defendant would be proper considerations for you should you find them to be warranted in the circumstances."

Next, although the jury did receive an instruction in the literal terms of factor (k) in this pre-*Easley* case (*People v. Easley, supra*, 34 Cal. 3d 858), our review of the arguments as a whole reinforces our conclusion that, as instructed, the jury must have understood its obligation to consider and weigh all of defendant's mitigating evidence. After arguing to the jury that "the law is neutral" on what happens at the penalty phase, the prosecutor distinguished the penalty from the guilt phase of the trial thusly: "There's a difference, and that difference is that you previously have been told that pity or passion for a defendant, sympathy, that sort of thing, cannot enter into your deliberations . . . . This [the penalty phase] is the exception. . . . You still cannot look at sympathy or passion or prejudice for the victims in terms of how it would change facts. You can't do that, but you can consider passion or prejudice towards the defendant. [¶ ] [T]he instruction will say that . . . in this – the penalty phase, pity and sympathy for the defendant would be proper considerations if you should find them to be warranted in the circumstances. *If the defense raises anything in this case*, which you may or may not have heard, any real evidence of so far, that there is a reason for sympathy towards this particular defendant, *then of course that's something for you to weigh and something that you use in looking at the instructions on the case.*" (Italics added.)

Defense counsel told the jury they could "consider Marvin's family as well. They have indicated to you that they have loved Marvin. They wish him to live, albeit in confinement, life imprisonment without possibility of parole. They have indicated to you that Marvin has done some worthwhile acts while he has been on this earth. That he is a human being, that he has done things to help others, that he had been worthwhile in his activities, that he is a person of worth." Defense counsel explained: "The prosecutor indicated that the instruction provides as they do that you can consider passion and pity for the defendant if you find that to be appropriate." Finally, in his closing argument, the prosecutor again argued that defendant's proffered general character and background evidence was worthy of minimal mitigating weight: "Marvin's family felt that he should live. You heard the testimony. . . I would expect a family to say that. The evidence you heard the other day from the defense on Mr. Walker and his good deeds, the thing that stands out that mostly I think about is that there was almost nothing to say. . . . [¶] You're going to have instructions. You'll see how much value that is."

44

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        Defendant directs us to the prosecutor's closing remarks in which he stated:
"*The mitigating factors are a possibility of two.*  And the aggravating factors are all
the rest."  (Italics added.)  However, read in context, we believe the prosecutor was
simply arguing his view of the state of the evidence; namely that defendant's relative
youth and his lack of prior convictions were the only two factors *worthy of
assignment of any mitigating weight*.  Nor do we view the prosecutor's argument
under factor (k) as improperly suggesting to the jury that evidence thereunder related
solely to the crimes – or that factor (k) evidence could be aggravating.  (See *People v.
Boyd* (1985) 38 Cal. 3d 762, 776 [215 Cal.Rptr. 1, 700 P.2d 782].)  In his closing
argument, the prosecutor discussed the testimony of defendant's family members and
friends; including testimony that he had done some favors, loaned them money, done
odd jobs for some, and given others rides to work.  He never suggested that any
evidence, or lack of evidence, regarding defendant's general background and
character, was "aggravating."  Rather he simply urged the jury to accord little
mitigating weight to such evidence: "if that's all you can say about somebody, that is
very, very thin."

        Viewing the instructions and arguments as a whole, we conclude the jury here
was adequately informed of the full nature of its responsibility to consider
defendant's mitigating general character and background evidence.

*Walker*, 47 Cal. 3d at 641-43.

Because the state court issued a reasoned opinion, petitioner must demonstrate that the

decision was contrary to, or an unreasonable application of, clearly established United States

Supreme Court law, or an unreasonable determination of the facts.  The parties agree that the

controlling United States Supreme Court authority on this point is *Boyde v. California*, 494 U.S. 370

(1990).

        In *Boyde*, the Court upheld the version of factor (k) used in petitioner's case, finding that it

was unlikely that jurors would interpret instructions on factor (k) "to prevent consideration of

mitigating evidence of background and character."  494 U.S. at 381.  *Boyde* also confirmed that the

proper standard for determining whether an allegedly ambiguous instruction is unconstitutional is for

a court to analyze "whether there is a reasonable likelihood that the jury has applied the challenged

instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Id.* at

380.

        Despite the fact that *Boyde* confirms that the factor (k) instruction at issue here did not

compel jurors to not consider mitigating evidence of background and character, petitioner maintains

that the state court's decision in this matter was unreasonable.  Specifically, petitioner argues that in

his particular case, it was reasonably likely that the jury would have understood factor (k) as

1  precluding non-crime related evidence, and that the state court was objectively unreasonable in

2  ruling to the contrary.

3         Petitioner is wrong.  As the lengthy quotation from the state court's opinion demonstrates,

4  the state court examined petitioner's claim in great detail, and reasonably concluded that, viewing

5  the trial as a whole, "the jury here was adequately informed of the full nature of its responsibility to

6  consider defendant's mitigating general character and background evidence."  *Walker*, 47 Cal. 3d at

7  643.  Petitioner maintains that, nonetheless, his case is distinguishable from *Boyde* because the

8  amount of background and character evidence presented in his case was less than that presented in

9  *Boyde*.  That may be so, but as respondent correctly points out, the amount of the mitigating

10 evidence does not bear on how the jury might have understood the factor (k) instruction.  Moreover,

11 petitioner does not – and cannot – cite to any statutory or caselaw suggesting that evaluating the

12 amount of background and character evidence presented is the relevant standard for analyzing

13 claims such as these.

14        Petitioner also argues that the prosecutor's and the defense attorney's arguments and the trial

15 court's response to juror questioning would have led the jurors to believe that consideration of

16 background and character evidence was not proper.  Again, petitioner cannot demonstrate that the

17 state court's decision was unreasonable when it determined otherwise.  The court has reviewed the

18 record, and the applicable law, and finds that the state court's opinion was neither contrary to, nor an

19 unreasonable application of, clearly established United States Supreme Court law, nor was it an

20 unreasonable determination of the facts.  As the state court pointed out, the trial court specifically

21 informed the jury that "pity and sympathy for the defendant would be proper considerations" during

22 penalty phase deliberations.  *Walker*, 47 Cal. 3d at 641.  The state court also addressed the

23 arguments of the prosecutor and of defense counsel, and nothing in the state court's analysis is

24 unreasonable.  28 U.S.C. § 2254(d).

25        For the foregoing reasons, summary judgment on subclaim 15(C) is granted in favor of

26 respondent.

27              **4.      Claim 15D**

28

United States District Court

For the Northern District of California

46

United States District Court

For the Northern District of California

1    In Claim 15D, petitioner maintains that the allegedly misleading jury instructions and

2   prosecutorial argument on the statutory sentencing factors described in subclaims 15A-15C

3   constituted cumulative error.  This court has already held that those subclaims must be denied and

4   that respondent is entitled to summary judgment on all of them.  As such, petitioner cannot

5   demonstrate that there was cumulative error entitling him to relief.

6    **N.      Claim 17**

7    In Claim 17, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

8   rights were violated because, at the prosecutor's urging, the jury improperly considered his "non-

9   testimonial demeanor" as an aggravating factor.  The California Supreme Court rejected this claim

10   on the merits in a summary opinion when it denied his 1990 state habeas petition and also when it

11   denied his 1998 state habeas petition.  Both respondent and petitioner maintain that they are entitled

12   to summary judgment on this claim.

13    Because the state court addressed this claim in a summary opinion, this court must undertake

14   an independent review of the relevant record and determine whether the state court's decision was

15   objectively unreasonable.  Petitioner challenges the following language of the prosecutor:

16   ● You probably know there's a lot of difference between one person who kills
17     and another person who kills.  The things that you read generally are cases
     where maybe there was a family fight or some family violence or people are
18     drinking, or they kill somebody possibly by accident. . . . killing people is a
     lot less serious in some cases.  But there are cases, and this is certainly one of
     those cases, where it just becomes all that much more serious to take human
19     life.  There are even cases, I suppose, where the attitude of the person who
     kills changed over time.  That afterwards, he feels some remorse, some sort of
20     sadness for what he has done.  Then I suppose the next worst thing would be
     someone who felt some sadness afterwards, or even neutral afterwards.  Then
21     there's the case of the smirking defendant who seems to be proud of what he's
     done.  Ex. 29 at 3266-67.
22   ● Counsel said one thing that I believe is very true for Counsel and for me and
     for you and for most people.  That is, that we all grieve about what happened
23     to the victim in the case.  But unfortunately, one of the things that sticks most
     in this case, and it's most upsetting about it, is that it's not true for everybody,
24     because I don't think it's true for the defendant from what you have seen here
     in court.  Ex. 29 at 3300-01.
25   ● If it looked to you as if someone has cockily walked through the courtroom
     here, has told numerous lies and not taken this all very seriously, not looked
26     very sad about what happened, then that's your perception too.  Ex. 29 at
     3301.
27   ● This case, I think through the facts of it, through all of the facts of it, the thing
     that sticks out most in the case other that what happened here is the
28     defendant's attitude towards the whole thing. . . . This stuff just over and over

47

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

again without apparently either caring about it or being concerned with it or being bothered by that. Ex. 29 at 3301.

- But anyway, a person locked up, he might do these things. You would think that a person – and I don't know what you have seen here in terms of attitudes towards the witnesses, whether you have seen evil glares or whether you've seen something else, a person who felt bad about what happened. I can't imagine, if you weren't there, if you weren't in the state when it happened, that you would have a propensity as a normal person to glare at witnesses or glare at attorneys or glare at people and give them that kind of look if you weren't involved, much less if you did it yourself. It shows something, perhaps about what Mr. Walker is made of, and I don't know why he is that way. I haven't the slightest idea. I don't know. Ex. 29 at 3309-10.

In moving for summary judgment on this claim, respondent maintains that the remarks primarily concerned petitioner's character, and that a penalty phase jury is entitled to consider character during penalty phase deliberations. *See Zant v. Stephens*, 462 U.S. 862, 879 (1983) (stating that penalty phase jurors must make an individualized determination of the appropriate penalty based on "the character of the individual and circumstances of the crime.")   Respondent also points out that petitioner testified during his trial, and that there is no constitutional prohibition against referencing a defendant's testimonial demeanor.  Additionally, respondent argues that even if the prosecutor was referencing petitioner's non-testimonial demeanor, no United States Supreme Court case holds that a capital defendant's non-testimonial demeanor is not properly before the jury during the penalty phase, and that under AEDPA, petitioner must show that an independent review of the record reveals that the state court's opinion was objectively unreasonable under clearly established United States Supreme Court law.  Finally, respondent maintains that petitioner cannot show any prejudice from the remarks as required by *Brecht*.  According to respondent, due to the seriousness and violence of the charged offenses, petitioner would not have a received a sentence of life without parole even absent the prosecutor's remarks.

In cross-moving for summary judgment, and in opposing respondent's motion, petitioner maintains that the prosecutor's remarks violate *Taylor v. Kentucky's* admonition that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." 436 U.S. 478, 485 (1978).  Petitioner also cites to Ninth Circuit precedent holding that "in the absence of a curative instruction from the court, a

United States District Court

For the Northern District of California

1   prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of the due

2   process clause of the fifth amendment."  *United States v. Schuler*, 813 F.2d 978, 981 (9th Cir. 1987).

3   Additionally, petitioner maintains that the prosecutor was not referring to petitioner's testimonial

4   demeanor as he was not examining petitioner's demeanor as indicative of petitioner's credibility on

5   the stand or lack thereof.  Finally, in addition to arguing that the prosecutor's remarks were

6   prejudicial, petitioner argues that the remarks violated California's statutory death penalty scheme,

7   in that only certain factors are permitted to be considered in aggravation and a defendant's character

8   or courtroom conduct is not among them.

9       The court has conducted an independent review of the record and finds that the California

10  Supreme Court's summary decision denying relief on this claim was not objectively unreasonable.

11  As the Ninth Circuit has stated, this court must "focus primarily on Supreme Court cases in deciding

12  whether the state court's resolution of the case constituted an unreasonable application of clearly

13  established federal law."  *Greene*, 288 F.3d at 1089 (citations omitted).  Petitioner cannot cite to any

14  United States Supreme Court authority suggesting that reference to a capital defendant's non-

15  testimonial demeanor[10] during the penalty phase is unconstitutional.  Moreover, even the Ninth

16  Circuit case cited by petitioner is not squarely on point as *Schuler* is not a capital case and deals with

17  reference to non-testimonial behavior during a guilt/innocence trial as opposed to a penalty phase

18  trial.  As such, it is not persuasive on this issue.

19      Petitioner's argument that the remarks violated California's statutory death penalty scheme

20  must also fail.  The California Supreme Court has held that, where the defendant places his own

21  character at issue as a mitigating factor, it is "proper for the jury to draw inferences on that issue

22  from their observations of defendant in the courtroom and therefore proper for the prosecutor to base

23  a closing argument on such observations."  *People v. Heishman*, 45 Cal. 3d 147, 197 (1988).  Here,

24  the record reveals that petitioner's case in mitigation consisted in part of character evidence from his

25  family and friends, and thus he put his character at issue during the penalty phase.  As such, it was

26

27

28      [10] In addition, petitioner *did* testify, and at least some of the prosecutor's remarks can be
    reasonably read as referring to petitioner's testimonial demeanor.

United States District Court

For the Northern District of California

1   allowable under California law for the prosecutor to reference petitioner's character and courtroom

2   behavior.

3       Finally, petitioner has not demonstrated that, even if the prosecutor's comments did rise to

4   the level of a constitutional error, that they had a substantial and injurious effect or influence in

5   determining the jury's verdict.  *Brecht*, 507 U.S. at 638.   The state court's decision was not

6   objectively unreasonable, and respondent is entitled to summary judgment on this claim.

7       **O.     Claim 18**

8       In Claim 18, petitioner maintains that his Fifth, Sixth, Eighth and Fourteenth Amendment

9   rights were violated because petitioner's death sentence allegedly resulted from improper mandatory

10  weighing of mitigating and aggravating factors.  Specifically, petitioner alleges that Cal. Penal Code

11  § 190.3, which was part of the jury instructions used at his penalty phase trial, is unconstitutional.

12  The California Supreme Court denied this claim on the merits in its reasoned opinion disposing of

13  petitioner's direct appeal.  *People v. Walker*, 47 Cal. 3d at 645-49.   Both respondent and petitioner

14  argue they are entitled to summary judgment on this claim.

15      The trial court instructed the jury with former CALJIC No. 8.84.2, which incorporates the

16  language of section 190.3.  The court stated:

17              It is now your duty to determine which of the two penalties,
            death or confinement in State Prison for life without possibility of
18          parole, shall be imposed on the defendant.  After having heard all of
            the evidence and after having heard and considered the arguments of
19          Counsel, you shall consider, take into account and be guided by the
            applicable factors of aggravating and mitigating circumstances upon
20          which you have been instructed.  If you conclude that the aggravating
            circumstances outweigh the mitigating circumstances, you shall
21          impose a death sentence, or a sentence of death.

22              However, if you determine that the mitigating circumstances outweigh
            the aggravating circumstances, you shall impose a sentence of
23          confinement in State Prison for life without possibility of parole.

24  Ex. 29 at 3332.  Petitioner argues that the "shall impose a sentence of death" language is

25  unconstitutional because, *inter alia*, it allegedly limits the discretion of the jury to return a verdict of

26  less than death, limits the freedom of jurors to assign whatever weight to mitigating factors that they

27

28

50

United States District Court
For the Northern District of California

1  deem appropriate, and substitutes a statutory weighing process in lieu of the jurors' individual

2  consciences.

3      In its reasoned opinion, the California Supreme Court considered and rejected petitioner's

4  argument in a lengthy analysis that the court will not repeat in full here.  *See People v. Walker*, 47

5  Cal. 3d at 645-49.  Briefly, the state court re-affirmed the constitutionality of section 190.3 (a

6  statutory scheme the California Supreme Court had held constitutional in *People v. Brown*, 40 Cal.

7  3d 512, 538-44 (1985) (vacated on other grounds), and found that there was nothing in the

8  prosecutor's argument that would have confused the jury regarding the proper nature of the

9  weighing process.[11]  Furthermore, the state court found that the sentencing jury in petitioner's trial

10  understood the full scope of its sentencing discretion, based on supplemental instructions from the

11  court and arguments from counsel.  In sum, the California State Court concluded that "[v]iewing the

12  arguments and instructions as a whole, we are satisfied they did not mislead the jurors as to the full

13  nature of their sentencing discretion, and that the jurors realized the ultimate sentencing

14  responsibility rested with them, and them alone. (*People v. Hendricks*, *supra*, 44 Cal. 3d at p. 655.)"

15  *People v. Walker*, 47 Cal. 3d at 649.

16      Petitioner maintains that, notwithstanding the state court's reasoned opinion, he is entitled to

17  summary judgment on this claim pursuant to *Caldwell v. Mississippi*, 472 U.S. 320 (1985) and

18  *People v. Milner*, 45 Cal. 3d 227 (1988).  *Caldwell* prohibits arguments by prosecutors that lead a

19  sentencing jury to believe that "the responsibility for determining the appropriateness of the

20  defendant's death rests elsewhere."  472 U.S. at 329.  In *Milner*, the California Supreme Court found

21  *Caldwell* error based on the prosecutor's arguments to the jury.  45 Cal. 3d at 257.

22      The state court in petitioner's case, however, squarely addressed *Milner* and found it

23  distinguishable.

24      Defendant urges that the prosecutor's argument may have lessened the jurors' sense
      of responsibility to individually arrive at an appropriate penalty determination. (See,

25      e.g., *People v. Milner* (1988) 45 Cal. 3d 227, 255-256 [246 Cal. Rptr. 713, 753 P.2d
      669].)  Although such argument in isolation might raise a legitimate concern that the

26      jury was being misled, it could not have had such a misleading effect here.
      Throughout his argument the prosecutor sought to impart to the jury the gravity of

27

28      [11] For further discussion on this issue, see the court's analysis of Claim 19B(g), *infra*.

51

their tasks and sentencing responsibilities: "I think the toughest thing that you will ever do, if you vote for the death penalty in this case, is to follow that instruction and do what the instruction says to do.  To say that it's easy to vote for that [the death penalty] is a joke.  Although there's nothing funny about it, it's extremely difficult.  And we talked about that a great deal as this case started, and I don't think there is a person up there who thinks it's something easy . . . . [¶] No one in this jury answered the questions, led anyone to believe, counsel or myself, that you think it would be easy to vote for the death penalty.  It is tough.  It might be the toughest thing you ever do.  But it's called for here.  *It's called for by the law*."  (Italics added).

. . . .

"This is not the type of case in which the jury was 'left with the impression that its responsibility was merely to weigh aggravating and mitigating factors without regard to its view of the appropriateness of the alternative penalties, and that it was "required" to return a sentence of death "if aggravation outweighed mitigation" without, or even despite, each juror's *personal* conclusion from the evidence, about whether a sentence of death was appropriate under the circumstances for the offense and the offender." (*Allen, supra*, 42 Cal. 3d at p. 1278, italics in original.)" (*People v. Odle, supra*, 45 Cal. 3d at p. 420.)

Viewing the arguments and instructions as a whole, we are satisfied they did not mislead the jurors as to the full nature of their sentencing discretion, and that the jurors realized the ultimate sentencing responsibility rested with them, and them alone. (*People v. Hendricks, supra*, 44 Cal. 3d at p. 655.)

*People v. Walker*, 47 Cal. 3d at 645-49 (original emphasis, footnote omitted).

The court finds that nothing in the state court's reasoned opinion was contrary to, or an unreasonable application of, clearly established law.  Furthermore, the state court's opinion was not based on an unreasonable determination of the facts.  The state court considered the totality of the circumstances in petitioner's case, and concluded that there was no *Milner* (nor, by extension, *Caldwell*) error.  The instructions and argument, viewed in their entirety, did not mislead the jurors as to the full nature of their responsibility, nor did they instruct the jurors that "the responsibility for determining the appropriateness of the defendant's death rests elsewhere."  *Caldwell*, 472 U.S. at 329.  The state court correctly denied petitioner relief on this claim.  Accordingly, respondent is entitled to summary judgment on Claim 18.[12]

**P.     Claim 19**

---

[12] In his pleadings, petitioner confirms he is making an as applied challenge, as opposed to a facial challenge to section 190.3.  Petitioner acknowledges that *Boyde v. California*, 494 U.S. 370, 376-77 (1990) and *People v. Brown*, 40 Cal. 3d 512 (1985) preclude facial Eighth Amendment challenges to the constitutionality of section 190.3.

United States District Court

For the Northern District of California

1    In Claim 19, petitioner alleges that the trial prosecutor committed various acts of misconduct

2    which, either singly or cumulatively, violated petitioner's Fifth, Sixth, Eight and Fourteenth

3    Amendment rights.  The Supreme Court has held that when reviewing a habeas claim of

4    prosecutorial misconduct, the relevant inquiry is not whether "the prosecutor's remarks were

5    undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

6    (citations omitted).  Rather, the issue "is whether the prosecutors' comments 'so infected the trial

7    with unfairness as to make the resulting conviction a denial of due process.'"  *Id.* (citing *Donnellly v.*

8    *DeChristoforo*, 416 U.S. 637 (1974).  "Moreover, the appropriate standard of review for such a

9    claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of

10   supervisory power."  *Id.* (citations omitted).

11   The court will consider each subclaim of prosecutorial misconduct in turn.

12         **1.**    **Claim 19A**

13   In Claim 19A, petitioner maintains that the prosecutor impermissibly informed the jury

14   numerous times during voir dire that a prison sentence of life without parole would not necessarily

15   mean that petitioner would remain behind bars because his sentence could be commuted by the state

16   governor.  Amended Petition at 95 (citing Ex. 16 at 32, 38, 80, 123; Ex. 17 at 263; Ex. 19 at 789,

17   933; Ex. 20 at 1052-53, 1178).   Petitioner also alleges that the prosecutor made "oblique references"

18   to the governor's commutation power during penalty phase closing argument.   Respondent and

19   petitioner both contend that they are entitled to summary judgment on this claim.

20   The California Supreme Court reviewed and rejected petitioner's voir dire claim in a

21   reasoned opinion on direct appeal as follows:

22       Defendant also assigns as misconduct the prosecutor's questions put to several
         prospective jurors about whether they knew what life imprisonment without the

23       possibility of parole "really meant."  We reject defendant's claim that the questions
         constituted reversible *Ramos* error (*People v. Ramos*[,], 37 Cal. 3d 136 . . . ); no

24       "Briggs Instruction" concerning the Governor's commutation power was given in this
         case, nor was the jury otherwise affirmatively informed of such gubernatorial powers.

25       To the extent the questions invited improper speculation, any error was clearly
         harmless.  They arose at the earliest stages of trial, and the jury was thereafter

26       instructed not to assume the truth of any insinuations suggested by the attorneys'
         questions.

27   *People v. Walker*, 47 Cal. 3d at 627.

28

Petitioner cannot demonstrate that anything in the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law.  Nor can he show that the opinion was based on an unreasonable determination of the facts.  As the state court noted, and as this court's review of the record has confirmed, the jury was never affirmatively told of the governor's commutation power.  Moreover, any comments by the prosecutor during voir dire were brief and did not "manipulate or misstate the evidence, nor did [they] implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden*, 477 U.S. at 182.  In short, the comments did not come close to "so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (citations omitted)

The state court, although denying petitioner's prosecutorial misconduct claim in total, did not directly address in a reasoned opinion petitioner's claim that the prosecutor made "oblique references" to the governor's commutation power during closing argument.  The reference in question consists of the prosecutor asking the jury to "assume" that life without parole meant life without the possibility of parole.  RT 3308.  Petitioner suggests that the prosecutor's use of "assume" suggested that the defendant might not actually be incarcerated for life.

Petitioner's argument strains credibility.  The court has conducted an independent review of the record, and finds that the prosecutor's statement does not even obliquely reference the governor's commutation power and does not come close to rising to a due process violation under *Darden*.   As such, respondent is entitled to summary judgment on Claim 19A.

### 2.    Claim 19B(a)

In this claim, petitioner alleges that the prosecutor committed misconduct by excluding qualified jurors by peremptory challenge because of their views about the death penalty and because of their race.  Both petitioner and respondent claim that they are entitled to summary judgment on this claim.

This claim was raised in petitioner's 1990 state habeas corpus proceeding and was rejected by the California Supreme Court on the merits in a one-line denial.  It is related to Claims 6 and 8, where petitioner claims *Batson* error, and *Witherspoon-Witt* error, respectively.

United States District Court

For the Northern District of California

1    With regards to the claim regarding prosecutorial misconduct based on peremptory

2 challenges against jurors who were African-American, the court finds, after an independent review

3 of the record, that the state court ruling was not an unreasonable application of clearly established

4 United States Supreme Court law.  As the court has already discussed in detail in its analysis of

5 Claim 6, *supra*, the trial court committed no constitutional error in excusing the three African-

6 Americans on the venire.  Similarly, the prosecutor committed no misconduct in making his

7 peremptory challenges on this ground.  The peremptory challenges did not rise to a violation of

8 *Batson v. Kentucky*, 476 U.S. 79 (1986) nor did the prosecutor's conduct amount to a due process

9 violation under *Darden*, 477 U.S. at 181.

10    Similarly, with regards to the claim regarding prosecutorial misconduct based on peremptory

11 challenges against jurors who expressed reservations about the death penalty, the court finds, after

12 an independent review of the record, that the state court ruling was not an unreasonable application

13 of clearly established United States Supreme Court law.  As the court has already discussed in detail

14 in its analysis of Claim 8, *supra*, the trial court committed no constitutional error in excusing

15 potential jurors who expressed reservations about the death penalty when the prosecutor challenged

16 them peremptorily.  Similarly, the prosecutor committed no misconduct in making his peremptory

17 challenges on this ground.  Such peremptory challenges (as opposed to challenges for cause) do not

18 amount to *Witherspoon-Witt* error nor does the prosecutor's conduct come close to amounting to a

19 due process violation under *Darden*, 477 U.S. at 181.  Thus, respondent is entitled to summary

20 judgment on this subclaim.

21          **3.    Claim 19B(b)**

22    Here, petitioner again alleges that the prosecutor improperly discussed the governor's

23 commutation power with the jury.  This subclaim is a repeat of Claim 19A, which this court has

24 already found is meritless.  Summary judgment on this subclaim is thus granted to respondent.

25          **4.    Claim 19B(c)**

26    In Claim 19B(c), petitioner maintains the prosecutor committed reversible misconduct by

27 presenting allegedly perjured testimony from William Sisco.  This claim was presented to the

28

55

United States District Court

For the Northern District of California

1    California Supreme Court in petitioner's 1990 state habeas petition and was rejected on the merits in

2    a summary denial.

3         The court has already concluded, in its analysis of Claim 3 *supra*, that the California

4    Supreme Court's decision that the prosecutor had not knowingly presented perjured testimony from

5    Sisco was not objectively unreasonable, and thus that respondent was entitled to summary judgment

6    on that claim.  Because petitioner was not entitled to habeas relief on Claim 3, he is not entitled to

7    habeas relief on this related claim.  The court has conducted an independent review of the record,

8    and concludes that petitioner has failed to demonstrate any constitutional violation arising from the

9    prosecutor's actions regarding Sisco's testimony.   As such, pursuant to AEDPA, respondent is

10   entitled to summary judgment on this subclaim.  *See* 28 U.S.C. § 2254(d).

11            **5.       Claim 19B(d)**

12        In Claim 19B(d), petitioner maintains that the prosecutor committed reversible misconduct

13   by allegedly withholding the whereabouts of  Rupert Harper, the alleged triggerman and second

14   perpetrator at Dan's Bottle Shop.  This claim was presented to the California Supreme Court in

15   petitioner's 1998 state habeas petitioner and was rejected on the merits in a summary denial.

16   Respondent and petitioner both contend that they are entitled to summary judgment on this claim.

17        Because the state's rejection of this claim was summary, this court must conduct an

18   independent review of the record and determine whether the state court's decision was objectively

19   unreasonable under clearly established United States Supreme Court precedent.   Petitioner can

20   prevail on this claim only by demonstrating that the prosecutors' behavior "'so infected the trial with

21   unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181

22   (1986) (citing *Donnellly v. DeChristoforo*, 416 U.S. 637 (1974).

23        Petitioner has not presented anything to this court, either in his Amended Petition or in his

24   pleadings, that suggests that the prosecution withheld the whereabouts of Rubert Harper, the alleged

25   second perpetrator at Dan's Bottle Shop.  The court has also conducted an independent review of the

26   relevant record, and finds that the California's Supreme Court's denial of this claim was not

27   objectively unreasonable under clearly established United States Supreme Court precedent.  As such,

28

56

1   pursuant to AEDPA, respondent is entitled to summary judgment on this subclaim.  *See* 28 U.S.C. §

2   2254(d).

3   **6.      Claim 19B(g)**

4       In Claim 19B(g), petitioner maintains that the prosecutor impermissibly argued that the jury

5   should apply the weighing standard regarding mitigating and aggravating factors in a mechanical

6   and arithmetical manner.  Amended Petition at 97.  Respondent and petitioner both contend that they

7   are entitled to summary judgment on this claim.

8       The California Supreme Court addressed this claim on the merits, when it analyzed

9   petitioner's related claims that Cal. Penal Code § 190.3 and former CALJIC No. 8.84.2 are

10  unconstitutional.  The court stated, in relevant part:

11          Our review of counsel's arguments reveals nothing which would have
        confused the jury regarding the proper nature of the weighing process, . . . The
12      prosecutor did not suggest that the weighing process was merely a "mechanical" or
        "counting" process.  In explaining to the jurors their responsibility to weigh the
13      evidence under the statutory factors, he argued: "[The] reason that [the law] gives the
        jury the ultimate, or one of the ultimate steps in the job in this determination is
14      because all cases are different.  If they weren't, you could do something else.  You
        wouldn't have to subject twelve people to this.  You could add it up or figure it out,
15      compute it or something.  It would be easy.  But it's not.  There are different facts."
        The prosecutor then argues: "If the defense raises anything in this case . . . any real
16      evidence . . . that there is a reason for sympathy towards this particular defendant,
        then of course that's something for you to *weigh*. . ." (Italics added.)  He explained
17      that the procedure set forth in former CALJIC No. 8.84.2 was a weighing process:
        "The instruction says, look at the factors and see which *outweighs* the the other."
18      (Italics added.)

19          As previously noted, at one point in his argument the prosecutor states, "[the]
        mitigating factors are a possibility of two.  And the aggravating factors are all the
20      rest."  Read in the context of the prosecutor's entire argument, we conclude this one
        statement could not in and of itself have misled the jury into thinking the weighing
21      process was a mere mechanical counting of factors, with the death penalty to be
        imposed if the aggravating circumstances numerically outnumbered the mitigating
22      ones.  Again, the prosecutor was simply arguing his view of the case; i.e., that the
        only evidence worthy of any mitigating weight fit under factor (c) (the absence of
23      prior felony convictions) and factor (i) (defendant's relatively youthful age).

24  *People v. Walker*, 47 Cal. 3d at 646.

25      Although petitioner argues that the California Supreme Court misapplied California law,

26  petitioner has not met his burden of demonstrating that the California Supreme Court's reasoned

27  opinion on this claim was contrary to or an unreasonable application of clearly established United

28  States Supreme Court law.  Even the case petitioner primarily relies on, *People v. Milner*,  45 Cal.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    3d 227 (1988), does not assist him in this claim.  The California Supreme Court squarely addressed

2    *Milner*, stating that:

3         Defendant urges that the prosecutor's argument may have lessened  the juror's
         sense of responsibility to individually arrive at an appropriate penalty determination.
4         (See, e.g., *People v. Milner* (1988) 45 Cal. 3d 227, 255-256 [246 Cal. Rptr. 713, 753
         P.2d 669].)  Although such argument in isolation might raise a legitimate concern that
5         the jury was being misled, it could not have had such a misleading effect here.
         Throughout his argument the prosecutor sought to impart to the jury the gravity of
6         their tasks and sentencing responsibilities: "I think the toughest thing that you will
         ever do, if you vote for the death penalty in this case, is to follow that instruction and
7         do what the instruction says to do.  To say that it's easy to vote for that [the death
         penalty] is a joke.  Although there's nothing funny about it, it's extremely difficult.
8         And we talked about that a great deal as this case started, and I don't think there is a
         person up there who thinks it's something easy . . . . [¶] No one in this jury answered
9         the questions, led anyone to believe, counsel or myself, that you think it would be
         easy to vote for the death penalty.  It is tough.  It might be the toughest thing you ever
10        do.  But it's called for here.  *It's called for by the law*."  (Italics added).

11        . . . .

12        "This is not the type of case in which the jury was 'left with the impression
         that its responsibility was merely to weigh aggravating and mitigating factors without
13        regard to its view of the appropriateness of the alternative penalties, and that it was
         "required" to return a sentence of death "if aggravation outweighed mitigation"
14        without, or even despite, each juror's *personal* conclusion from the evidence, about
         whether a sentence of death was appropriate under the circumstances for the offense
15        and the offender." (*Allen, supra,* 42 Cal. 3d at p. 1278, italics in original.)" (*People v.
         Odle, supra,* 45 Cal. 3d at p. 420.)

16        Viewing the arguments and instructions as a whole, we are satisfied they did
17        not mislead the jurors as to the full nature of their sentencing discretion, and that the
         jurors realized the ultimate sentencing responsibility rested with them, and them
18        alone. (*People v. Hendricks, supra,* 44 Cal. 3d at p. 655.)

19
20   *People v. Walker,* 47 Cal. 3d at 645-49 (original emphasis, footnote omitted).

21        As the foregoing demonstrates, the California Supreme Court found that, taken as a whole,

22   the prosecutor's argument did not mislead the jurors regarding their discretion in sentencing

23   petitioner.  Petitioner has failed to demonstrate that the state court decision with respect to this

     subclaim was contrary to, or involved an unreasonable application of, clearly established law as
24
     determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d).  Nor has petitioner
25
     demonstrated that the state court decision relied on an unreasonable determination of the facts.
26
          For the reasons stated above, summary judgment on this subclaim is granted in favor of
27
     respondent.
28

                                                    58

### 7.   Claim 19B(h)

In subclaim 19B(h), petitioner maintains that the prosecutor committed misconduct during his penalty phase trial by urging consideration of petitioner's non-testimonial demeanor.  Because this is essentially a repeat of Claim 17, where the court ruled that respondent was entitled to summary judgment, respondent is entitled to summary judgment on this subclaim as well.

### 8.   Claim 19B(bb)

In subclaim 19B(bb), petitioner alleges that the prosecutor committed reversible misconduct by allegedly arguing that character evidence and petitioner's familial relationships had nothing to do with the case.  Amended Petition at ¶ 410.  This claim was presented to the California Supreme Court in petitioner's 1990 state habeas petition and was rejected on the merits in a summary denial. Because the state court's denial was not set forth in a reasoned opinion, this court must conduct an independent review of the record and determine whether the state court's decision was objectively unreasonable under clearly established United States Supreme Court precedent.

The court has conducted an independent review of the record cited by petitioner (Ex. 29 at 3273-80, 3304) and finds that the prosecutor did not argue that petitioner's character and familial relationships had "nothing to do" with the case.  The prosecutor *did* suggest that the character evidence presented by the defense was not particularly strong.  *Id.* at 3306-7.  As respondent correctly notes, however, there is no relevant precedent suggesting that a prosecutor may not argue his or her view of the evidence in summation.  Nothing in the portions of the prosecutor's argument cited by petitioner comes close to demonstrating that the prosecutor's "comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (1986) (citing *Donnellly v. DeChristoforo*, 416 U.S. 637 (1974)).   As such, petitioner cannot meet his burden under AEDPA and respondent is entitled to summary judgment on this subclaim. *See* 28 U.S.C. § 2254(d).

### 9.   Claim 19B(dd)

In this subclaim, petitioner maintains that the prosecutor committed reversible misconduct by telling the jury during the penalty phase that if they failed to make a decision, another jury would be required to do so.  Amended Petition at ¶ 410.  Petitioner raised this claim in his 1990 state habeas

corpus proceeding, where it was rejected by the California Supreme Court on the merits in a summary denial. Because the state court's denial was not set forth in a reasoned opinion, this court must conduct an independent review of the record and determine whether the state court's decision was objectively unreasonable under clearly established United States Supreme Court precedent.

Petitioner specifically challenges the following comments by the prosecutor:

> Counsel said – he mentioned that killing Marvin Walker business in the beginning because he meant to impress on you a sense of responsibility. I don't think I am convinced – you are more knowledgeable about this than I am, that this jury certainly has a sense of responsibility. It's not necessary for either one of us to put this personal sort of blame on you. You will have to make a decision, or you won't make a decision – whatever the case may be. Of course, if you don't reach a decision, then some other jury must make a decision somewhere down the line; will have to get it dumped on them, essentially. You've heard the evidence and no one will ever have more knowledge of the evidence here than this jury. You've spent five days going over – weeks going over here in court. You know the case as well as any people could possibly know it.

Ex. 29 at 3304-05.

Petitioner cannot demonstrate the above comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (1986) (citing *Donnellly v. DeChristoforo*, 416 U.S. 637 (1974)). Petitioner does not cite to any authority suggesting that comments such as the above in penalty phase summation amount to a due process violation and, as *Donnelly* cautions, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from a plethora of less damaging interpretations." 416 U.S. at 647.

The California Supreme Court's decision denying petitioner relief on this claim was not objectively unreasonable. As such, summary judgment is granted in favor of respondent.

### 10.    Claim 19B(ee)

In this subclaim, petitioner alleges that the prosecutor committed reversible misconduct when he made the following comments: "The next one, the presence or absence of any prior felony convictions. You have not had presented to you proof of prior felonies, and of course, you must assume that there is no prior felony for the defendant. That would, of course, be one in his favor."

United States District Court

For the Northern District of California

1   Ex. 29 at 3273.  According to petitioner, these comments by the prosecutor "slyly" suggested that

2   petitioner had some prior felony convictions, when in fact he did not.

3         Petitioner raised this claim in his 1990 state habeas petition, where it was denied on the

4   merits in a summary decision.  It was again rejected by the California Supreme Court in a summary

5   denial when petitioner raised it in his 1998 state habeas petition.

6         After an independent review of the record, the court finds that there is simply no support for

7   petitioner's claim.  There is no indication that the jury interpreted the prosecutor's remarks to

8   suggest that petitioner had prior felonies, when the prosecutor in fact reminded the jury that no proof

9   of prior felonies had been presented.  In addition, the prosecutor went on to tell the jury that

10  "[t]here's possibility that there are a couple of factors in his favor . . . . lack of proof of prior felony

11  convictions is a factor."  Ex. 29 at 3281.  Certainly, the prosecutor's comments did not come close to

12  a due process violation under *Darden* or *Donnelly*; as such, the state court's denial of petitioner's

13  claim was not objectively unreasonable in light of the applicable United States Supreme Court

14  precedent.  Summary judgment on this subclaim is granted in favor of respondent.

15        **Q.     Claim 22**

16        In this claim, petitioner incorporates by reference the allegations contained in all of the other

17  claims in his petition and contends that the cumulative effect of the constitutional violations alleged

18  in these claims deprived him of a fair trial and rendered his conviction and sentence inherently

19  unreliable.  Because the resolution of this claim depends on the merit of the remaining claims in the

20  petition, the court defers ruling on it until those claims are resolved.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

1

**Conclusion**

2      For the foregoing reasons, the court hereby DEFERS ruling on Claims 2 and 22.  Summary

3 judgment on Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19B(c),

4 19B(d), 19B(e), 19B(g),19B(h), 19B(bb), 19B(dd) and 19B(ee) is GRANTED in favor of

5 respondent.   Petitioner's motion for summary judgment with respect to the same claims is DENIED.

6

7      The court hereby directs the parties to meet and confer, and to submit to the court a joint

8 litigation schedule to address the remainder of petitioner's claims.  The litigation schedule should be

9 filed no later than November 14, 2007.

10

11 **IT IS SO ORDERED.**

12 DATED: September 28, 2007

_____
SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

WALKER,

        Plaintiff,

   v.

VASQUEZ,

        Defendant.
_____/

Case Number: CV94-01997 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 10, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

California Appellate Project
California Appellate Project
Federal Court Docketing
101 Second Street
Suite 600
San Francisco,  CA 94105

Habeas Corpus Resource Center
Habeas Corpus Resource Center
50 Fremont Street, Suite 1800
San Francisco,  CA 94105

Dated: October 10, 2007

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk