IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARVIN PETE WALKER,<br><br>    Petitioner,<br><br>    v.<br><br>ROBERT L. AYERS, JR., Warden of California State Prison at San Quentin,<br><br>    Respondent. | NO. C 94-1997 SBA<br><br>DISCOVERY ORDER<br><br>**DEATH PENALTY CASE** |

**Introduction**

Petitioner was convicted and sentenced to death for murder, assault, robbery and other crimes in August 1980. The California Supreme Court affirmed petitioner's conviction and death sentence on December 27, 1988. *People v. Walker*, 47 Cal. 3d 605 (1988). Petitioner's state petition for writ of habeas corpus was denied in September 1992; his petition for writ of certiorari was denied in March 1993. *Walker v. California*, 507 U.S. 979 (1993).

Petitioner filed his first federal Petition for Writ of Habeas Corpus on May 20, 1997. This court found the petition to be unexhausted in part in April 1998, and petitioner filed a second state petition for writ of habeas corpus on June 5, 1998. The California Supreme Court denied the petition on December 22, 2004, both on the merits and on various procedural grounds.

Petitioner filed his Second Amended Petition for Writ of Habeas Corpus in this court on January 12, 2005. Per an order dated October 15, 2005, this court granted respondent's motion to

dismiss Claims 9, 16, 19B(e), 19B(f), 19B(aa), 19B(cc) and 21 as procedurally defaulted. Per an order dated September 28, 2007, this court granted summary judgment in favor of respondent as to Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19B(c), 19B(d), 19B(e), 19B(g), 19B(h), 19B(bb), 19B(dd) and 19B(ee). A decision as to Claims 2 and 22 was deferred.

Petitioner now brings a motion for leave to conduct discovery. Respondent opposes petitioner's motion. Pursuant to Civil Local Rules 7-1(b) and 7-6, the court finds that the motion is appropriate for submission on the papers without oral argument. For the following reasons, petitioner's motion is GRANTED in part, DENIED in part and DENIED WITHOUT PREJUDICE in part.

**Factual Background**

The following recitation of the factual background of this case is based, in relevant part, on the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Walker*, 47 Cal. 3d 605 (1988). The state court's factual findings are presumed to be correct pursuant to 28 U.S.C. § 2254.

In 1980, a jury in the Superior Court of Santa Clara County sentenced petitioner to death following a conviction of first degree murder and other crimes stemming from two separate incidents joined for purposes of trial. Evidence at trial established that, in the first incident, which occurred on August 7, 1979, petitioner and an accomplice robbed a liquor store called Dan's Bottle Shop and shot three people. One of the shooting victims, 15 year old Joseph Vasquez, died from the gunshot wounds. In connection with this incident, petitioner was convicted of first degree murder, two counts of assault with intent to commit murder, and robbery. The jury also found that petitioner personally used a firearm in the commission of each crime, and found true the special circumstance that defendant committed the murder while engaged in the commission or attempted commission of a robbery.

Evidence at trial also established that, in the second incident, which occurred on September 5, 1979, petitioner entered a medical building, where he then proceeded to rob, sexually molest, beat and shoot a young woman twice in the head. The woman, Rose Olveda, survived and identified petitioner as her assailant. In connection with this incident, petitioner was convicted of assault with

2

intent to commit murder, robbery, and personal use of a firearm in the commission of each offense. He was also convicted of theft of Olveda's vehicle.

Petitioner's defense at the guilt phase was primarily one of mistaken identity. Petitioner testified on his own behalf. Petitioner's testimony on the witness stand was impeached by earlier statements he had made.

At the penalty phase, the prosecution and defense stipulated that the evidence from the guilt phase could be considered by the jury in the penalty phase. In addition, the prosecution presented testimony from two police officers that petitioner had made threats against a police officer and a deputy district attorney. The defense presented witnesses from petitioner's family, including his sisters, who testified that petitioner had helped them financially and emotionally and that they wanted him to live. Petitioner's mother testified that petitioner had grown up in a poor family with seven brothers and sisters. Again, petitioner testified, claiming that he was innocent of the crimes and testifying that he did not make threats to the officer and deputy district attorney.

## Legal Standard

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, Rule 6(a) of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. § 2254, provides that a "party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Good cause for discovery under Rule 6(a) is shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . .'" *Id.* at 908-909 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). For example, in *Bracy*, the Supreme Court found the petitioner established good cause for discovery where he provided specific allegations lending support to his claim that the trial judge was actually biased in his case. *See id.* at 909; *see also McDaniel v. United States District Court ("Jones"),* 127 F.3d 886, 888 (9th Cir. 1997) (good cause for discovery found where petitioner's claims did not appear purely speculative or without any basis in record, each claim included factual allegations and statement of exhaustion, and materials

3

sought through discovery were not available from petitioner's appellate counsel, who had destroyed entire file); *Jones v. Wood*, 114 F.3d 1002, 109-10 (9th Cir. 1997) (good cause found where petitioner identified specific material he needed to argue effectively that trial lawyer had rendered ineffective assistance, particularly where there was never any hearing on the ineffective assistance of counsel claim at state court level).

Before deciding whether a petitioner is entitled to discovery under Rule 6(a), the court must first identify the essential elements of the underlying claim. *See Bracy*, 520 U.S. at 904 (difficulties of proof aside, petitioner's specific and supported allegation of judicial bias, if proved, would violate due process clause). The court must then determine whether the petitioner has shown "good cause" for appropriate discovery to prove his claim. *See id.* The scope and extent of the discovery permitted under Rule 6(a) is a matter confided to the discretion of the district court. *See Bracy*, 520 U.S. at 909. For example, where the district court enters a protective order limiting the use of discovered materials, the denial of a motion for reconsideration will be upheld absent an abuse of discretion. *See McDowell v. Calderon*, 197 F.3d 1253, 1255-56 (9th Cir. 1999) (*en banc*).

### Analysis

**I.     Application of 28 U.S.C. § 2254(e)(2)**

The parties dispute whether, in addition to the "good cause" standard articulated *supra*, 28 U.S.C. § 2254(e)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to this discovery motion. Respondent argues that it does, and that it limits the discovery available to petitioner; petitioner counters that it does not apply to Rule 6 discovery motions and that, even if it does, it does not limit the discovery available to him.

Section 2254(e)(2) of AEDPA provides certain guidelines for evidentiary hearings in habeas matters. Specifically,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

4

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court and the Ninth Circuit have confirmed that, in addition to evidentiary hearings, section 2254(e)(2) applies to requests to expand the record pursuant to Rule 7 of the Federal Rules Governing Section 2254 Cases. *See Holland v. Jackson,* 542 U.S. 649, 652-53 (2004); *Cooper-Smith v. Palmateer*, 397 F. 3d 1236 (2005). Neither the Supreme Court nor the Ninth Circuit, however, have squarely addressed whether or not section 2254(e)(2) applies to discovery requests under Rule 6.

It is not necessary for this court to determine whether section 2254(e)(2) applies to discovery requests under Rule 6. Even assuming it does apply, it would not bar petitioner's requests because petitioner has been "diligent" as that term has been construed under section 2254(e)(2). The Supreme Court has held that section 2254(e)(2) applies "only [to] a prisoner who has neglected his rights in state court" and confirmed that a court deciding whether a petitioner was diligent under section 2254(e)(2) should determine "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams v. Taylor*, 529 U.S. 420, 435 (2000). The *Williams* Court found diligence where the petitioner had sought, but not received, an evidentiary hearing in state court. *Id.* at 430, 437; *see also Gonzales v. Knowles*, 515 F.3d 1006 (9th Cir. 2008) (assuming diligence where petitioner had not been given an opportunity for an evidentiary hearing during state habeas proceeding because of summary dismissal); *Earp v. Stokes*, 431 F.3d 1158 (9th Cir. 2005) (finding diligence where petitioner had not been given an opportunity for an evidentiary hearing during state habeas proceeding because of summary dismissal by the California Supreme Court).

Here, petitioner requested discovery in both of his state habeas petitions for writ of habeas corpus in the California Supreme Court. In both of those cases, his petition was summarily rejected without the grant of his discovery request. As such, he has been diligent under *Williams* and section 2254(e)(2) does not bar him from discovery under Rule 6.

5

**II.      Discovery Regarding Ineffective Assistance of Counsel Claims**

Petitioner seeks leave to conduct discovery regarding his claim of ineffective assistance of counsel. Specifically, he seeks to depose Dennis Kollenborn and Mariann C. Cropper, his defense attorneys at his capital trial. He also requests leave to discover Kollenborn and Cropper's case-related files. Finally, he seeks to take depositions of sixteen proposed mitigation witnesses that he identifies in his petition.

Petitioner has demonstrated good cause to depose his trial attorneys and discover their case-related files. His Amended Petition contains specific allegations of deficient performance on the part of both of his attorneys. Because trial strategy is an issue in ineffective assistance of counsel claims, petitioner has good cause to depose his former attorneys on, *inter alia*, their trial tactics and strategy. *See*, *e.g.*, *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997) (finding that discovery is warranted under Rule 6 where it is necessary to "develop fully ineffective assistance of counsel claims").

Petitioner has also requested leave to depose sixteen lay witnesses "as he determines it necessary." Petitioner's Motion at 9. He argues generally that their testimony would have been helpful to his case in mitigation, and will support his claim that his counsel's alleged deficient performance was prejudicial to him.

Rather than granting petitioner open-ended leave to depose up to sixteen people in numerous locations, the court will deny this request without prejudice. The court recognizes that discovery in support of the prejudice prong of petitioner's ineffective assistance of counsel claim may be appropriate. *Jones*, 114 F.3d at 1009. Petitioner has not demonstrated, however, that leave to depose up to sixteen people as his discretion is warranted at this juncture. Should petitioner determine it necessary to depose certain of these lay witnesses, he should renew his request at that time. In order to make the proper showing of good cause, his request should demonstrate with particularity why the anticipated testimony of each requested deponent will assist him in developing facts that will show he is entitled to relief on his ineffective assistance of counsel claim. *See Bracy*, 520 U.S. at 908-909. Respondent is ordered to file any opposition within five days of petitioner's renewed request. No reply will be necessary.

6

In sum, petitioner's request for leave to depose and serve discovery requests on attorneys Kollenborn and Cropper is GRANTED. His request for leave to depose sixteen lay witnesses is DENIED WITHOUT PREJUDICE.

**III.     Discovery Regarding Factual Innocence Claim**

Petitioner seeks leave to conduct discovery regarding his claim that he is factually innocent. Specifically, petitioner seeks to depose Rupert Lee Harper, who petitioner claims will testify that petitioner did not fire any shots during the Bottle Shop crimes.

Harper's statements regarding the Bottle Shop crimes have changed over time. Harper, who is petitioner's brother-in-law, was convicted of second degree murder for the Bottle Shop crimes. Amended Petition ¶ 49. While in prison in 1990, he signed a declaration stating that he "fired all the shots" during the Bottle Shop crimes. Amended Petition, Ex. E.

Less than a year later, however, during a parole suitability hearing held on January 17, 1991, Harper testified under oath in some detail about the Bottle Shop crimes. Amended Petition, Ex. B. He stated that he went to the Bottle Shop with petitioner in order to purchase alcohol, and that he stayed in the car while petitioner went inside. *Id.* at 4-5. After petitioner returned to the car and told Harper that he (petitioner) was not allowed to purchase the alcohol because he was underage, Harper accompanied petitioner into the store. *Id.* at 6-8. Harper stated that petitioner then drew a gun and demanded money, Harper also stated that he had not known that petitioner was armed. *Id.* at 8-9.

During his parole testimony, Harper also stated that petitioner took the victims to the rear of the store at gunpoint and hit one of them with a bottle. *Id.* at 9-11. Harper stated that he urged petitioner to leave with him, but that petitioner stated something like, "he didn't want to leave no witness." *Id.* at 11-12. Harper stated that he heard four or five shots as he walked to the front of the store. *Id.* at 12-13. Harper did not see the shooting but stated that petitioner was the only one who had a gun. *Id.* at 38-39.

Harper maintained that he did not plan the robbery nor know that it was going to happen. He stated that he had nothing to do with the shooting or other assaults on the victims, and had not talked to petitioner since the offense. *Id.* at 14-15, 21-23. He stated that he fled after the crime, and

7

pleaded no contest to second degree murder after he was apprehended because he did not want to "tell" on petitioner. *Id.* at 14-21.

Harper was also questioned about his 1990 declaration during the parole hearing. Harper stated that he spoke to a lawyer representing petitioner, but he denied admitting to the shootings. *Id.* at 39-41. Harper stated that the attorney asked him to sign a piece of paper that was mostly blank, and Harper did so "to help my brother-in-law." *Id.* at 40-41. Harper stated that he did not remember what was on the paper, and insisted his parole testimony was truthful and consistent with what he had told petitioner's attorney. *Id.* at 40-43.

Petitioner has not demonstrated good cause to depose Harper. Petitioner maintains that deposing Harper will "set the record straight," but even if petitioner were to depose Harper, Harper's testimony would not allow petitioner to demonstrate that he is entitled to relief. *Bracy*, 520 U.S. at 908-09. Were Harper to testify in accordance with his more recent parole board testimony, which was taken under oath, his testimony would damage petitioner's claim of factual innocence. If Harper testifies in accordance with his 1990 declaration, he would be highly impeachable, as he would be changing his testimony for the second time, rendering it unreliable. As such, petitioner's request to depose Rupert Lee Harper is DENIED.

**IV.     Discovery Regarding Race-Based Prosecution Claim**

In his Amended Petition, petitioner alleges that Deputy District Attorney Richard Gardner, who prosecuted petitioner, impermissibly prosecuted petitioner on the basis of his race. Petitioner, who is African-American, also alleges that there was systemic racial discrimination present in the Santa Clara County District Attorney's Office at the time he was prosecuted.

In conjunction with these claims, petitioner seeks leave to serve a deposition subpoena and document requests on Gardner. Specifically, he requests Gardner's testimony, his official files, and his personal notes regarding the prosecution of petitioner's case. In addition, he requests documents from the District Attorney's Office related to how the Office exercised its discretion to charge special circumstances and seek the death penalty.

Petitioner has not demonstrated good cause for this discovery. Specifically, he has not submitted specific allegations that "show reason to believe that the petitioner may, if the facts are

8

fully developed, be able to demonstrate that he is . . . entitled to relief ." *Bracy,* 520 U.S. at 908-09 (citations omitted).

In order to successfully bring a claim for unconstitutional race-based prosecution, petitioner must show "that the prosecution was motivated by a discriminatory purpose in the very case before the court." *United State v. Diaz*, 961 F.2d 1417, 1420. (9th Cir. 1992) (internal quotations and citations omitted). Here, petitioner alleges that Gardner portrayed the non-white Hispanic victims in this case as white, because he knew "that blacks are more frequently convicted and sentenced to death if their victims are white." Petitioner's Motion at 12. Petitioner does not, however, cite to the trial record or to any other source that demonstrates such a portrayal; as such, his claim appears to be based on no more than speculation. As the Ninth Circuit has confirmed, habeas discovery is not warranted in such a situation. *See Calderon,* 98 F.3d at 1106 (stating that discovery is not intended "to develop claims for which there is no factual basis."). Accordingly, petitioner's request to serve a deposition subpoena and document requests on Gardner must be DENIED.

Petitioner has also not demonstrated good cause to serve document requests upon the Santa Clara County District Attorney's Office. Petitioner states that he is informed and believes that the Office did not pursue the death penalty against similarly situated non-black defendants or against similarly situated defendants with non-white victims. He does not, however, cite to any source for his information and belief, and as *Calderon* states, there must be some factual basis for a habeas claim before a district court may authorize discovery. *Id.* (stating that "Conclusory allegations are not enough to warrant discovery under Rule 6. . . ; the petitioner must set forth specific allegations of fact.") (internal quotations and citations omitted)).

Petitioner also maintains that the prosecutor's peremptory challenge of prospective black jurors suggests systemic racial discrimination. This court has already granted respondent's motion for summary judgment on Claim 6, which alleges improper racially-motivated peremptory strikes in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner cannot now argue that his failed *Batson* claim supports his claim of systemic racial discrimination. Therefore, petitioner's request to serve document requests on the Santa Clara County District Attorney's Office in conjunction with his race-based prosecution claim is DENIED.

9

## V.  Discovery Regarding Other Prosecutorial Misconduct Claims

In addition to his race-based prosecution claim, petitioner makes numerous other allegations of prosecutorial misconduct in Claim 19 of his Amended Petition. He now seeks leave to conduct discovery regarding three specific subclaims: Claim 19B(f) (claiming that the prosecutor improperly urged the jury to consider petitioner's alleged failure to show remorse); Claim 19B(aa) (claiming that the prosecutor made an improper comment regarding the "liberal leaning" of the California Supreme Court); and Claim 19B(cc) (claiming that the prosecutor improperly stated his personal opinion that death was the appropriate penalty-phase verdict).   Although all of these claims have been dismissed due to procedural default, petitioner intends to bring a motion arguing that the default should be excused due to cause and prejudice and/or a fundamental miscarriage of justice.

As with his claim of race-based prosecution, petitioner requests leave to depose prosecutor Gardner and examine his files, and also to discover other records from the Santa Clara County District Attorney's Office.  And, as with his claim of race-based prosecution, petitioner has not demonstrated good cause for the requested discovery.

The Supreme Court has held that when reviewing a habeas claim of prosecutorial misconduct, the relevant inquiry is not whether "the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted). Rather, the issue "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citing *Donnellly v. DeChristoforo*, 416 U.S. 637 (1974).  "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (citations omitted).

Petitioner has not demonstrated that the discovery requested will allow him to develop facts that may entitle him to demonstrate that he is entitled to relief. *See Bracy*, 520 U.S. at 908-909.  To the extent that petitioner will be arguing that his counsel's failure to object to the prosecutor's comments in question was constitutionally deficient performance, he need not depose the prosecutor or discover documents from the prosecutor or his employer in order to show that.  In addition, petitioner has not demonstrated that the discovery he requests would assist him in showing that the

10

prosecutor's comments so infected the trial with unfairness as to make petitioner's conviction a denial of due process.  As such, petitioner has not demonstrated good cause for the requested discovery under Rule 6, and his request must be DENIED.

## VI.     Discovery Regarding Shackling Claim

In Claims 2C and 9 of his Amended Petition, petitioner maintains that he was unconstitutionally shackled during his trial and sentencing.  In support of these claims, petitioner requests leave to subpoena certain records from prosecutor Gardner and the Santa Clara County District Attorney's Office and to depose Gardner.  He also requests leave to subpoena the shackle used during his trial (or, in the alternative, identifying information about it or an exemplar of an identical shackle).

Petitioner has not shown good cause for this discovery in relation to Claim 2C, which argues that his trial counsel was ineffective in responding to petitioner's courtroom shackling.  Petitioner has not made specific allegations demonstrating that deposing Gardner or reviewing the requested records will allow him to develop facts that will entitle him to relief on his ineffective assistance of counsel claim.  Neither Gardner's testimony nor information from Gardner or the DA's Office is relevant to petitioner's claim that his counsel ought to have objected to his shackling and that he (petitioner) was prejudiced by counsel's failure to do so.

Claim 9, which alleges that petitioner was unconstitutionally shackled during his trial, was dismissed by this court as procedurally defaulted.  As the court has already authorized, however, petitioner intends to bring a motion arguing that the default is excused either by cause and prejudice or a fundamental miscarriage of justice.  Specifically, petitioner plans to argue that his counsel ought to have objected to the shackles, and that the cause for the default was his counsel's deficient performance.  In addition, petitioner plans to argue that his shackling was a fundamental miscarriage of justice.  *See*, *e.g.*, *Deck v. Missouri*, 544 U.S. 622, 624 (2005) (holding that, absent an essential state interest, visible shackles are unconstitutional during the guilt or penalty phase of a capital case).  Again, petitioner has failed to demonstrate that deposing Gardner or reviewing the requested records will allow him to develop facts that will entitle him to relief on this claim.  This court has already granted petitioner discovery on his ineffective assistance of claim, and that discovery will

11

assist petitioner in developing his allegations that his counsel was constitutionally deficient in failing to object to the shackling. Petitioner argues that Gardner's testimony is critical because he was an "eyewitness" to the shackling, but petitioner does not demonstrate how eyewitness testimony from a prosecutor is relevant to the essential elements of his underlying claim. *See Bracy*, 520 U.S. at 908-909. Thus, petitioner's request to depose Gardner and discover the requested documents is DENIED.

Petitioner has, however, demonstrated good cause for the discovery of the shackle used at his trial (or, in the alternative, identifying information about it or an exemplar of an identical shackle). The Ninth Circuit has stated that "the appearance and visibility of the restraining device" in question is relevant to a determination of whether the restraints constitute prejudicial error. *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008). As such, petitioner has met his burden under Rule 6, and his request to subpoena the shackle used in his trial (or, in the alternative, identifying information about it or an exemplar of an identical shackle) is GRANTED.

## VII.    Request for Documents and to Serve Interrogatories

Petitioner requests leave to serve extensive document requests and interrogatories on respondent. Petitioner does not seek this discovery in conjunction with a particular claim; rather, he states that "the principal purpose of such discovery is to determine the factual basis for Respondent's denials, in his Answer" of the unresolved claims in the Amended Petition. Petitioner's Motion at 14.

Petitioner has not shown good cause for these discovery requests. He has not set forth specific allegations that show the court reason to believe that he may "if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy,* 520 U.S. 908-09. Indeed, petitioner does not even attempt to present specific allegations in support of these discovery requests. Rather, he argues that this open-ended discovery will assist petitioner and the court in determining the factual matters still in dispute and the proper scope of an evidentiary hearing. Petitioner has not demonstrated that granting such a broad request is appropriate under the circumstances of this case. Accordingly, petitioner's motion to serve document requests and interrogatories on respondent is DENIED.

**Conclusion**

For the foregoing reasons, petitioner's motion for leave to depose Dennis Kollenborn and Mariann C. Cropper is GRANTED. His motion for leave to discover Kollenborn's and Cropper's case-related files is GRANTED. His motion for leave to subpoena the shackle used in his trial (or, in the alternative, identifying information about it or an exemplar of an identical shackle) is GRANTED.

Petitioner's motion for leave to depose Rupert Lee Harper is DENIED. His motion for leave to depose and to serve document requests on Richard Gardner is DENIED. His motion for leave to serve document requests on the Santa Clara County District Attorney's Office is DENIED. His motion for leave to serve document requests and interrogatories on respondent is DENIED.

Petitioner's motion for leave to depose sixteen lay witnesses is DENIED WITHOUT PREJUDICE. Should petitioner determine it necessary to depose certain of these lay witnesses in the future, he should renew his request at that time. Respondent is ordered to file any opposition within five days of petitioner's renewed request. No reply will be necessary.

**IT IS SO ORDERED.**

DATED: 9/30/08

SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE