# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| MARVIN PETE WALKER,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ROBERT L. AYERS, Warden of<br>California State Prison at San Quentin,<br><br>　　　　Respondent. | NO. C 94-1997 SBA<br><br>ORDER RE EVIDENTIARY<br>HEARING<br><br>**<u>DEATH PENALTY CASE</u>** |

## Introduction

Petitioner was convicted and sentenced to death for murder, assault, robbery and other crimes in August 1980. The California Supreme Court affirmed petitioner's conviction and death sentence on December 27, 1988. *People v. Walker*, 47 Cal. 3d 605 (1988). Petitioner's state petition for writ of habeas corpus was denied in September 1992; his petition for writ of certiorari was denied in March 1993. *Walker v. California*, 507 U.S. 979 (1993).

Petitioner filed his first federal Petition for Writ of Habeas Corpus on May 20, 1997. This court found the petition to be unexhausted in part in April 1998, and petitioner filed a second state petition for writ of habeas corpus on June 5, 1998. The California Supreme Court denied the petition on December 22, 2004, both on the merits and on various procedural grounds.

Petitioner filed his Amended Petition for Writ of Habeas Corpus in this court on January 12, 2005. Per an order dated October 15, 2005, this court granted respondent's motion to dismiss Claims 9, 16, 19B(e), 19B(f), 19B(aa), 19B(cc) and 21 as procedurally defaulted. The parties subsequently brought cross-motions for summary judgment; this court granted summary judgment to respondent as to Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19(b)(c), 19B(d), 19B(e), 19B(g), 19B(h), 19B(bb), 19B(dd) and 19B(ee) and deferred a decision as to Claims 2 and 22. Petitioner now moves for an evidentiary hearing on Claims 1 (factual innocence), 2 (ineffective assistance of counsel), and 9 (unconstitutional shackling). Pursuant to Civil Local Rules 7-1(b) and 7-6, the court finds that the motion is appropriate for submission on the papers without oral argument. For the following reasons, petitioner's motion is GRANTED in part and DENIED in part.

**Factual Background**

The following recitation of the factual background of this case is based, in relevant part, on the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Walker*, 47 Cal. 3d 605 (1988). The state court's factual findings are presumed to be correct pursuant to 28 U.S.C. § 2254.

In 1980, a jury in the Superior Court of Santa Clara County sentenced petitioner to death following a conviction of first-degree murder and other crimes stemming from two separate incidents joined for purposes of trial. Evidence at trial established that, in the first incident, which occurred on August 7, 1979, petitioner and an accomplice robbed a liquor store called Dan's Bottle Shop and shot three people. One of the shooting victims, 15 year-old Joseph Vasquez, died from the gunshot wounds. In connection with this incident, petitioner was convicted of first degree murder, two counts of assault with intent to commit murder, and robbery. The jury also found that petitioner

personally used a firearm in the commission of each crime, and found true the special circumstance that defendant committed the murder while engaged in the commission or attempted commission of a robbery.

Evidence at trial also established that, in the second incident, which occurred on September 5, 1979, petitioner entered a medical building, where he then proceeded to rob, sexually molest, beat and shoot a young woman twice in the head. The woman, Rose Olveda, survived and identified petitioner as her assailant. In connection with this incident, petitioner was convicted of assault with intent to commit murder, robbery, and personal use of a firearm in the commission of each offense. He was also convicted of theft of Olveda's vehicle.

Petitioner's defense at the guilt phase was primarily one of mistaken identity. Petitioner testified on his own behalf. Petitioner's testimony on the witness stand was impeached by earlier statements he had made.

At the penalty phase, the prosecution and defense stipulated that the evidence from the guilt phase could be considered by the jury in the penalty phase. In addition, the prosecution presented testimony from two police officers that petitioner had made threats against a police officer and a deputy district attorney. The defense presented witnesses from petitioner's family, including his sisters, who testified that petitioner had helped them financially and emotionally and that they wanted him to live. Petitioner's mother testified that petitioner had grown up in a poor family with seven brothers and sisters. Again, petitioner testified, claiming that he was innocent of the crimes and testifying that he did not make threats to the officer and deputy district attorney.

## Discussion

### I. Legal Framework

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).[1] A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

A federal district court that is collaterally reviewing a state-court conviction or sentence is required to hold an evidentiary hearing on a colorable claim for relief where the petitioner sought but was not afforded in state court a full and fair opportunity to develop the factual basis of the claim. *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005); *Tilcock v. Budge*, 538 F.3d 1138, 1145 (9th Cir. 2008).[2] A claim is colorable if the petitioner has made specific factual allegations that, if true, establish entitlement to relief. *Id.* at 1145–1146; *Earp*, 431 F.3d at 1167 n.4; *see also*, *Townsend v. Sain*, 372 U.S. 293, 313 (1963), *overruled on other grounds by Keeney v. Tamayo Reyes*, 504 U.S. 1 (1992). A federal court may hold an evidentiary hearing on a claim that the petitioner did not fail to develop in state court, even if it is not required to do so, if the court believes it would be appropriate to do so. *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). Because AEDPA changed the standards for granting habeas relief, this court must take AEDPA's deference standards into account when deciding whether to hold an evidentiary hearing. *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007). Thus, to obtain relief on a claim, petitioner must demonstrate that the California Supreme Court's reasoned rejection of a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), or; in the case of a summary dismissal, petitioner must show that an independent review of the record demonstrates that the state court decision is objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

---

[1] The parties agree that AEDPA applies to this matter.

[2] Here, petitioner requested an evidentiary hearing and otherwise sought to develop his claims in state court. His request was denied.

4

**II.      Analysis**

   **A.      Claim 1: Factual Innocence**

In Claim 1, petitioner claims that he is factually innocent of capital murder. He maintains that he has sufficient evidence to establish that Rupert Lee Harper, his brother-in-law, fired all of the shots during the Bottle Shop robbery-murder.

In *Herrera v. Collins*, 506 U.S. 390 (1993), the United States Supreme Court assumed without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to pursue such a claim." *Id.* at 417. In *Herrera*, the Supreme Court refrained from announcing a standard for evaluating a freestanding innocence claim, but cautioned that due to the anticipated frustration of the need for finality and burden on the court in the case of a potential reversal and retrial, the threshold of such a claim would be "extraordinarily high." *Id.* at 418. The Ninth Circuit has since held that "a habeas petitioner asserting a freestanding innocence claim[3] must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 436, 476 (9th Cir. 1997). Proffering newly discovered evidence that would have rendered the prosecution's case legally insufficient to support the conviction is not sufficient. *Id.* Rather, a credible claim of actual innocence under *Herrera* must be based on reliable, newly-discovered evidence of factual innocence such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Shlup,* 516 U.S. at 324.

Petitioner maintains that, if he is granted an evidentiary hearing, he will present documentary and testimonial evidence establishing that his brother-in-law Rupert Lee Harper was the sole shooter at the Bottle Shop. Petitioner alleges he will show that Harper confessed he was the sole shooter, and that his later recantations were unreliable. Petitioner also intends to submit evidence that Harper had a history of armed robberies and violence.

---

[3] A freestanding innocence claim is not based on any underlying constitutional error. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995).

5

Harper was captured and charged with the Bottle Shop crimes subsequent to petitioner's trial in 1980; eventually he pleaded guilty to, *inter alia*, second-degree murder. In support of his current claim, petitioner relies in part on a jailhouse declaration Harper signed on June 1, 1990, where he stated that he fired all of the shots during the Bottle Shop robbery. Amended Petition, Ex. E. Less than a year later, however, as petitioner acknowledges, Harper told a vastly different story, testifying under oath that he did not plan the robbery and did not shoot or otherwise assault the victims. Amended Petition, Ex. B at 9-23. In fact, when asked about his 1990 declaration, Harper denied stating he had fired all of the shots, but rather claimed that he signed a mostly blank piece of paper in order to "help my brother-in-law." Amended Petition, Ex. B at 39-41.

In order to cast doubt on Harper's recantation, petitioner relies on the declaration of another brother-in-law, Andrue Jefferson. Jefferson stated that Harper had told him shortly after the Bottle Shop crimes that he (Harper) had fired that gun. Amended Petition, Ex. G at 2-3. Petitioner also submits a Polygraph Report indicating that, in May 1982, Harper failed a lie detector test where he answered "no" when he asked whether he had shot anyone at the Bottle Shop. Finally, petitioner points to Harper's alleged history of armed robberies and violence.

The court concludes that none of the material that petitioner has proffered amounts to compelling evidence of his actual innocence under any of the standards articulated by the Supreme Court and the Ninth Circuit. None of potential evidence comes close to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Shlup,* 516 U.S. at 324. In his most recent statement under oath, Harper denied being the sole shooter, and polygraph evidence is not considered wholly reliable. *See United States v. Scheffer*, 523 U.S. 303, 309-312 (1998) (stating that "there is simply no consensus that polygraph evidence is reliable.") Jefferson's hearsay statement does not amount to a "trustworthy eyewitness account"; nor does it state that petitioner did not participate in the crimes. Finally, Harper's alleged history of armed robberies and violence, even if conclusively demonstrated, does not serve as compelling evidence of petitioner's innocence.

In sum, a claim of actual innocence must be more than an attack on the sufficiency of the evidence at trial. Rather, petitioner must come forward with evidence potentially so compelling that

6

the district court must conclude either: (1) it is more likely than not that no reasonable juror would find the petitioner guilty; or (2) the petitioner is clearly and convincingly innocent of the facts that made him eligible for the death penalty. *Schlup*, 514 U.S. at 327. To prevail on a freestanding claim for relief, assuming one exists, the petitioner must affirmatively prove his innocence by "truly persuasive evidence." *Carriger*, 132 F.3d at 476. Because petitioner cannot meet any of these strict standards, he is not entitled to an evidentiary hearing or relief on this claim. This claim must be dismissed.

### B: Claim 2: Ineffective Assistance of Counsel

In Claim 2, petitioner argues that he received constitutionally ineffective assistance of counsel during both the guilt and penalty phases of his trial. This claim was denied by the state court in an summary decision. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Petitioner has briefed seven distinct subclaims; each will be considered in turn.[4]

#### 1. Preparation and Presentation of Mitigation Case (2A)

Petitioner argues that his trial counsel, Dennis Kollenborn, failed to investigate and present at the penalty phase extensive mitigation evidence, including evidence pertaining to petitioner's

---

[4] Petitioner notes more than once that this court, in an earlier order, deferred ruling on respondent's motion for summary judgment on petitioner's ineffective assistance of counsel claim, based on "the intense factual nature of ineffective assistance of counsel claims." Order Re Summary Judgment, 9/28/2007 ("S.J. Order"). This court did *not*, however, as petitioner seems to imply, state that petitioner was therefore automatically entitled to an evidentiary hearing on all aspects of his ineffective assistance of counsel claim. Rather, as the court stated, it was deferring ruling on the claim. In addition, petitioner has since moved for and been granted leave to conduct certain discovery on Claim 2, resulting in additional factual development.

7

educational, psychological, medical, institutional, cultural and social histories. In capital cases, the Supreme Court has confirmed that counsel has a duty to conduct a "thorough investigation of the defendant's background." *Williams v. Taylor*, 539 U.S. 362, 396 (2000). In order to prepare for the penalty phase of a capital trial, counsel "must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the mitigating evidence." *Mayfield v. Woodford,* 270 F.3d 915, 927 (9th Cir. 2002) (*en banc*) (citations omitted); *see also Hamilton v. Ayers*, 583 F.3d 1100, 1113-1114 (9th Cir. 2009). At a minimum, counsel must conduct a reasonable investigation enabling him or her to make informed decisions as to how best represent his or her client. *Sanders v. Ratelle,* 21 F.3d 1446, 1457 (9th Cir. 1994); *Evans v. Lewis*, 855 F2d 631, 637 (9th Cir. 1988) (failure to investigate possibility of mental impairment cannot be construed as trial tactic where relevant available documents were not reviewed by counsel); *Bean v. Calderon*, 163 F.3d 1073, 1078-1079 (9th Cir. 1988) (failure to furnish necessary information to mental health experts who testified in the penalty phase was deficient performance). Where the decision not to investigate further is taken because of reasonable tactical evaluations, however, the attorney's performance is not constitutionally deficient.

Here, petitioner alleges that his counsel failed to properly investigate petitioner's background and to develop an appropriate case in mitigation. In support of his allegation, petitioner points to a declaration by investigator Russell Stetler, who interviewed Kollenborn and avers that Kollenborn stated that he limited his investigation and had no explanation for why he had not conducted a detailed investigation into petitioner's past. Amended Petition, Ex. L. Stetler also averred that Kollenborn had no explanation as to why he did not ask his investigator to investigate any penalty phase issues, and had no explanation for his decision to begin planning the penalty phase or choose penalty phase witnesses until after the guilt phase verdict was reached. *Id.*

Petitioner also alleges that an adequate investigation at the time of his trial, including a mental health examination, would have revealed evidence critical to mitigation, including evidence of, *inter alia,* petitioner's childhood abuse, potential neurological impairment as a result of exposure to neurotoxins, brain damage and chronic childhood malnourishment. Amended Petition, Exs. I-J. Petitioner argues that, based on the evidence he has gathered to date, as well as additional evidence

8

to be gathered if he is permitted an evidentiary hearing, he will be able to establish that his counsel's performance was substandard and prejudicial, and not due to any tactical or strategic decision.

After review of the pleadings and evidence submitted, this court concludes that petitioner has established that he is entitled to an evidentiary hearing on this subclaim. As was the situation in *Earp,* where the Ninth Circuit addressed whether a petitioner was entitled to an evidentiary hearing on whether his trial counsel had properly prepared and presented a mitigation case, "[petitioner] has alleged facts that, if proven true, may entitle him to relief. Because an evidentiary hearing is needed in order to resolve these factual allegations, [the court] hold[s] that the state court's decision was based on an unreasonable determination of the facts. For those reasons, [petitioner] is entitled to an evidentiary hearing in federal court." 431 F.3d at 1173.[5]

### 2. Ineffective Defense to the Aggravation Case (2B)

Petitioner alleges that his counsel made an inadequate defense to the respondent's case in aggravation. Specifically, he argues that his counsel did not effectively address the prosecution's offering of two alleged statements as evidence of "criminal activity" in aggravation under Cal. Penal Code § 190.3(b). These statements included an alleged threat against a deputy district attorney (the "D.A. threat") and an alleged threat against a police officer (the "Danny threat").

---

[5] In granting petitioner an evidentiary hearing on certain of his claims and subclaims, the court notes that it is not necessarily granting petitioner the right to present all of the testimony and witnesses he alludes to in his pleadings. In particular, the court notes that petitioner is not necessarily entitled to a so-called *Strickland*-expert. An attorney-expert (a "*Strickland* expert") may properly testify regarding the relevant standard of care among competent practitioners in capital cases at a given time and place. *See, e.g., Mak v Blodgett*, 754 F. Supp. 1490, 1493 (W.D. Wash. 1991) (district court considered attorney expert declarations as to standard of practice among competent practitioners in capital cases), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993); *see also Strickland v Washington*, 466 U.S. 668, 688 (1984) ("prevailing norms of practice . . . are guides to determining what is reasonable" in a given case). Such testimony, however, is not required. While Rule 702 of the Federal Rules of Evidence states that an expert "may" testify if his or her specialized knowledge will aid the trier of fact in determining a specific issue, there are no provisions mandating expert testimony. Indeed, the Ninth Circuit has confirmed that in ineffective assistance cases, expert testimony on the standard of care is not required. *La Grand v. Stewart*, 133 F.3d 1253, 1270-71 & n. 8 (9th Cir.), *cert. denied*, 525 U.S. 971 (1998); *see also Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995) (district court has discretion to exclude expert testimony if it will not assist the court in understanding the evidence or determining any fact in issue at the evidentiary hearing), *cert. denied*, 516 U.S. 1051 (1996)).

This subclaim is foreclosed by this court's previous Order re Summary Judgment. There, the court considered petitioner's Claim 4, where he alleged that his constitutional rights were violated because the jury considered invalid and unreliable aggravating circumstances. Specifically, petitioner alleged that he was not granted adequate notice of the evidence; that admission of the evidence was improper under the applicable law; and that the evidence was prejudicial to him.

Based on a detailed review of the applicable law, as well as the opinions of the state court and the facts of this case, this court granted summary judgment to respondent, holding that petitioner had failed to demonstrate that the state court's reasoned opinion denying this claim was contrary to, or an unreasonable application of, clearly established United States Supreme Court law, or an unreasonable determination of the facts. S.J. Order at 11-18. To begin with, the court granted summary judgment to respondent on petitioner's claim that he was not afforded adequate notice of aggravating evidence (Claim 4B). Because this court has already concluded that petitioner cannot demonstrate under the standards of AEDPA that the notice he received was constitutionally inadequate, he cannot now demonstrate that his counsel's "token objection" to the notice amounts to ineffective assistance. Specifically, petitioner cannot demonstrate that he suffered any prejudice due to his counsel's failure to make a more robust objection, as there is no reasonable probability that, had the motion been brought, the results of the proceeding would have different. *Strickland*, 466 U.S. at 693-694.[6] Accordingly, petitioner's claim must be denied.

The court also granted summary judgment to respondent on the portion of petitioner's Claim 4C concerning the "Danny threat." There, the California Supreme Court had concluded that while evidence of the "Danny threat" was indeed inadmissible under the applicable law, admission of the evidence was non-prejudicial; petitioner was unable to demonstrate that the state court's reasoned opinion was contrary to, or an unreasonable application of, clearly established United States Supreme Court law, or an unreasonable determination of the facts. If admission of the evidence was

---

[6] A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (approving district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

1  not prejudicial to petitioner, his counsel's failure to properly address it cannot be prejudicial under
2  *Strickland*. *See, e.g., Williams*, 52 F.3d at 1470 & n.3.

3　　　　In addition, this court granted summary judgement to respondent on the portion of
4  petitioner's Claim 4C concerning the "D.A. threat." There, the California Supreme Court had
5  concluded that evidence of the "D.A. threat" was properly admitted; petitioner was unable to
6  demonstrate that the state court's reasoned opinion was contrary to, or an unreasonable application
7  of, clearly established United States Supreme Court law, or an unreasonable determination of the
8  facts. Accordingly, petitioner cannot now demonstrate that his attorney's alleged failure to properly
9  address the "D.A. threat" was ineffective assistance. *Strickland* and its progeny do not require that
10 trial counsel make futile motions; thus, the decision of petitioner's counsel not to object was
11 reasonable under the circumstances. *See Sanders*, 21 F. 3rd at 1456 (9th Cir 1994). Furthermore,
12 petitioner cannot demonstrate that he suffered any prejudice due to his counsel's failure to object.
13 Given that the evidence was properly admitted, it would have been futile for petitioner's counsel to
14 object; thus, there is no reasonable probability that, had the objection been brought, the result of the
15 proceeding would have different. *Strickland*, 466 U.S. at 693-694.

16　　　　Finally, the court granted summary judgment to respondent on Claim 4D, where petitioner
17 claimed his constitutional rights were violated because the trial court did not instruct the jury on the
18 elements of the criminal offenses that the "Danny threat" and the "D.A. threat" allegedly constituted.
19 The court found that there was state or federal law requiring the trial court to so instruct the jury
20 (indeed, state law is to the contrary, *see People v. Davenport*, 41 Cal. 3d 247, 281-282 (1985)), and
21 that in the absence of such authority, petitioner could not demonstrate either that an error occurred or
22 that any alleged error was prejudicial. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

23　　　　Petitioner here argues that it was ineffective for his counsel not to have requested the above-
24 referenced jury instructions. Given that this court has already concluded that the absence of such
25 instructions was not prejudicial, petitioner cannot now demonstrate that his counsel's conduct
26 resulted in prejudice to him under *Strickland*. 466 U.S. at 693-694. Because this subclaim is not
27 colorable under the deferential standards of AEDPA, petitioner is not entitled to an evidentiary
28 hearing on it, and it must be denied. *See Landrigan*, 550 U.S. at 474.

11

### 3. Inadequate Response to Shackling (2C)

Petitioner alleges that he was shackled in the courtroom, in the presence of the jury, during his entire trial. He also alleges that his shackling was allowed even though the trial court had found there was no need for shackling. Amended Petition ¶¶ 284-285, citing R.T. at 86. Despite this, his counsel neither objected to the shackling nor otherwise attempted to mitigate the impact of the shackling. According to petitioner, Kollenborn's actions amounted to prejudicially ineffective assistance of counsel.

As the court discusses in more detail *infra*, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination that, in the exercise of its discretion, restraints are justified by a state interest specific to a particular trial. *Deck v. Missouri*, 544 U.S. 622, 626 ( 2005); *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("*Rhoden II*"); *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir. 1989). Generally, the defendant's right to due process is violated if the trial court fails to make a finding on the record justifying the necessity of physical restraints, and the absence of such a finding cannot be cured by the reviewing court's after-the-fact justifications. *Larson v. Palmateer*, 515 F.3d 1057, 1063 (9th Cir. 2008).

Given the constitutional requirements for use of restraints in the courtroom, petitioner has made a colorable claim that his counsel was ineffective in his response to petitioner's shackling. Petitioner has made specific factual allegations that, if true, may establish him to relief under the deferential standards of AEDPA. *See, e.g. Tilcock*, 538 F.3d at 1145-1146; *Landrigan*, 550 U.S. at 474. Thus, he is entitled to an evidentiary hearing on this subclaim.

### 4. Failure to Investigate or Pursue Theory of Accomplice Liability (2D)

In this subclaim, petitioner alleges that attorney Kollenborn failed to investigate, develop or present a theory of accomplice liability as part of his defense. Specifically, petitioner alleges, as he did in his Claim 1 of Factual Innocence, that his brother-in-law Rupert Lee Harper was more likely than petitioner to have planned the Bottle Shop Robbery and to have fired the deadly shots.

12

1 This court has already concluded *supra,* that petitioner is not entitled to an evidentiary
2 hearing on his claim of factual innocence. However, as the court also discussed above, petitioner's
3 burden in making a freestanding claim of innocence is very high. *See, e.g. Schlup*, 514 U.S. at 327;
4 *Carriger*, 132 F.3d at 476. Here, he is alleging that his counsel was constitutionally ineffective
5 when he failed to investigate a theory of accomplice liability, a claim that must be evaluated under
6 the *Strickland* standard. Petitioner is seeking to show in this claim that an investigation by his
7 counsel, while it would not have demonstrated his actual innocence, might have raised a reasonable
8 doubt at the guilt phase.

9 It was known at the time of trial that a second robber was with petitioner during the Bottle
10 Shop crimes, and accomplice liability instructions were given to the jury. *People v. Walker*, 47 Cal.
11 3d 605, 618, 633 (1988). Given this, petitioner has made a colorable claim that it was ineffective
12 assistance for his counsel not to have investigated a theory of accomplice liability. *See, e.g. Tilcock*,
13 538 F.3d at 1145-46; *Landrigan*, 550 U.S. at 474. Thus, he is entitled to an evidentiary hearing on
14 this subclaim.

15 This court reiterates to petitioner that while he may be entitled to an evidentiary hearing on
16 this subclaim, he is *not* entitled to an evidentiary hearing on Claim 1, discussed in detail *supra*.
17 Petitioner should not use any evidentiary hearing on this subclaim as an opportunity to investigate
18 and present evidence regarding his Claim 1, but rather should focus on this claim, particularly on the
19 required demonstration of prejudice.[7]

### 5. Incompetent and Damaging Direct Examination of Petitioner (2E)

22 Petitioner alleges that Kollenborn's direct examination of petitioner during the penalty phase
23 was damaging and incompetent. Specifically, petitioner maintains that instead of eliciting important
24 mitigating elements of petitioner's background and social history, Kollenborn elicited a statement
25 from petitioner that he had been unjustly convicted. Amended Petition ¶¶ 130-131. According to

---

[7] When addressing prejudice, petitioner should also keep in mind the state court's finding that it was "virtually impossible to conclude on this record that anyone other than defendant was the actual killer." *Walker*, 47 Cal. 3d at 634.

13

petitioner, such an approach fell below prevailing professional norms and was not the result of a tactical or strategic decision by Kollenborn.

The court finds that this subclaim is essentially a part of petitioner's subclaim regarding his counsel's alleged ineffectiveness in preparing and presenting a case in mitigation. Petitioner is arguing in this subclaim that his counsel failed to elicit information from him during the penalty phase direct examination that was essential to an adequate case in mitigation; because this court has already concluded that petitioner is entitled to an evidentiary hearing on the mitigation subclaim, petitioner is also entitled to an evidentiary hearing on this subclaim.

### 6. Unfocused and Irrelevant Closing Argument (2F)

Petitioner alleges that Kollenborn's closing argument during the penalty phase was rambling and unfocused, and failed to address specific facts that may have convinced the jury that life without parole would have been a more appropriate punishment for petitioner than death. Amended Petition ¶¶ 132-133. According to petitioner, such an approach fell below prevailing professional norms and was not the result of a tactical or strategic decision by Kollenborn.

As with petitioner's previous subclaim, the court finds that this subclaim is essentially a part of petitioner's subclaim regarding his trial counsel's alleged ineffectiveness in preparing and presenting a case in mitigation. Petitioner is arguing in this subclaim that his counsel failed to address information during the closing argument that was essential to an adequate case in mitigation; because this court has already concluded that petitioner is entitled to an evidentiary hearing on the mitigation subclaim, petitioner is also entitled to an evidentiary hearing on this subclaim.

### 7. Failure to Intervene When the Court Refused a Jury Instruction on the Meaning of Life Imprisonment (2G)

In this final subclaim, petitioner alleges that his counsel was constitutionally ineffective when he failed to object to the trial court's refusal to provide an additional instruction after the jury foreman asked a question. Specifically, after the trial judge had instructed the jury on the applicable law for the penalty phase, the jury foreman asked: "In anticipation of some questions, are there any

14

special definitions or anything related to aggravating or mitigating circumstances or to the definition of life imprisonment?" The court answered "no" and further informed the foreman that the court could provide a copy of the factors to be considered during the penalty phase. RT at 3335-3336. According to petitioner, his counsel's failure to object "allowed the jury to begin its penalty deliberations without a clear understanding as to the meaning of life imprisonment." Petitioner's Motion at 18.

Petitioner made this claim in his first habeas corpus petition, and the California Supreme Court rejected it on the merits in a summary opinion. This subclaim is not colorable, and thus petitioner is not entitled to an evidentiary hearing.

Petitioner maintains that counsel ought to have asked for clarification on what life imprisonment without the possibility of parole meant. In earlier briefing, petitioner noted an instruction approved by the California Supreme Court in *People v. Hunter*, 49 Cal. 3d 958, 982 (1989) (endorsing the following instruction: "A sentence of life imprisonment, without a possibility of parole, means that the defendant will spend the remainder of his natural life in prison. . . . Therefore, the matter of parole is not to be considered by you in determining the punishment for the defendant. . . .") Of course, *Hunter* was decided after petitioner's 1988 trial, so petitioner cannot now argue *Hunter* provides authority for what his counsel should have done.

Petitioner's subclaim is not colorable because, even if he was granted an evidentiary hearing, he would not be able to demonstrate constitutionally ineffective assistance. He has not made specific factual allegations that, if true, would entitle him to relief. *Tilcock*, 538 F.3d at 1145-1146. He cites to no cases suggesting that failure to request clarification in such circumstances amounts to deficient performance, nor does he cite to a specific instruction in use at the time of his trial that his counsel ought to have requested. He maintains that, if he is granted an evidentiary hearing, his *Strickland* experts will testify that Kollenborn's conduct on this issue fell below the standards of professional practice, but even if this court approved testimony of a *Strickland* expert, and even if petitioner was able to show deficient performance, he would not be able to show prejudice. Even if petitioner's attorney had managed to convince the court to read an instruction such as that in *Hunter*, there is no reasonable probability that the result of the proceeding would have been different, and

15

that the jury would have chosen life without parole over a sentence of death. *Strickland*, 466 U.S. at 693-694. Petitioner cites to no evidence he would present at the evidentiary hearing that would entitle him to relief on this claim under the standards of AEDPA, and thus this subclaim must be denied. *See, e.g., Landrigan*, 550 U.S. at 474.

### C: Claim 9: Unconstitutional Shackling

In Claim 9, petitioner argues that he was unconstitutionally shackled during his trial. In an earlier order, this court held that this claim was procedurally defaulted. Petitioner argues that his counsel's ineffective assistance was responsible for the default and that he will be able to overcome the procedural bar by demonstrating cause for the default and actual prejudice as a result of the shackling. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, petitioner plans to argue that his shackling was a fundamental miscarriage of justice. *See, e.g.*, *Deck v. Missouri*, 544 U.S. 622, 624 (2005).

The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination that, in the exercise of its discretion, restraints are justified by a state interest specific to a particular trial. *Deck*, 544 U.S. at 626; *Rhoden II*, 172 F.3d at 636; *Spain*, 883 F.2d at 716. Generally, the defendant's right to due process is violated if the trial court fails to make a finding on the record justifying the necessity of physical restraints, and the absence of such a finding cannot be cured by the reviewing court's after-the-fact justifications. *Larson*, 515 F.3d at 1063.

Petitioner maintains that the trial record supports his claim that he was unconstitutionally shackled. He points to the transcript of the trial and to jury declarations that he alleges establish that he was restrained by a knee-locking device that was visible to the jury during his trial. He asserts that an evidentiary hearing will allow him to establish that not only were the shackles visible, but also that they caused him prejudice, i.e. that they had "substantial and injurious effect or influence" on the jury's verdicts. *Larson*, 515 F.3d at 1064 (quoting *Brecht v. Abrahamson*, 507 U.S. 619. 623 (1993)). Respondent does not deny that petitioner was restrained during his trial, but maintains that he has not alleged a colorable claim entitling him to an evidentiary hearing.

16

Respondent is incorrect. Petitioner has demonstrated that an evidentiary hearing could enable him to prove factual allegations that, if true, may entitle him to federal habeas relief even under AEDPA's deferential standards. *Landrigan,* 550 U.S. at 474. The evidence already presented by petitioner – the use of the restraints, the absence of findings by the trial court that restraints were necessary, the jury declarations establishing that the restraints were visible – tend to support his claim and raise serious questions as to whether petitioner's restraint during trial substantially affected the jury's verdict. Therefore, petitioner has made out a colorable claim for relief and is entitled to an evidentiary hearing on this issue.

**Conclusion**

For the foregoing reasons, the court GRANTS petitioner's motion for an evidentiary hearing on Claim 2A, 2C, 2D, 2E, 2F and Claim 9. Petitioner's motion is otherwise DENIED.

Per a stipulated order filed March 26, 2009, the parties jointly proposed a telephonic status conference for February 24, 2010 at 2:30 pm to discuss scheduling of an evidentiary hearing. Seven days prior to that date, the parties should submit pleadings to this court regarding proposed briefing and hearing schedules.

At this time, the parties should focus on a briefing and hearing schedule for Claim 2C and Claim 9 only. Upon close review of the available record, the pleadings and the applicable caselaw, the court has determined that Claim 9 (and the related Claim 2C) are potentially petitioner's most viable claims and impact both the guilt and the penalty phases of his trial. Thus, for the reasons of judicial efficiency and economy, the court will hold an evidentiary hearing on those claims first, and will defer any hearing on the remaining claims.

**IT IS SO ORDERED.**

DATED: 2/1/10

SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE