**United States District Court**
For the Northern District of California

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

**OAKLAND DIVISION**

9
10

MARVIN PETE WALKER,

11

Petitioner,

NO. C 94-1997 SBA

12

v.

13

MICHAEL MARTEL, Acting Warden of
California State Prison at San Quentin,

14
15

Respondent

16

MEMORANDUM AND ORDER
GRANTING IN PART,
DENYING IN PART AND
 DISMISSING IN PART
PETITION FOR WRIT OF
HABEAS CORPUS; FINDINGS OF
FACT AND CONCLUSIONS OF
LAW

**DEATH PENALTY CASE**

17
18
19
20
21
22
23
24
25

**Introduction**

26

Petitioner was convicted and sentenced to death for murder, assault, robbery and other

27

crimes in August 1980.  The California Supreme Court affirmed petitioner's conviction and death

28

sentence on December 27, 1988.  *People v. Walker*, 47 Cal. 3d 605 (1988).  Petitioner's state

1   petition for writ of habeas corpus was denied in September 1992; his petition for writ of certiorari

2   was denied in March 1993. *Walker v. California*, 507 U.S. 979 (1993).

3        Petitioner filed his first federal Petition for Writ of Habeas Corpus on May 20, 1997.  This

4   court found the petition to be unexhausted in part in April 1998, and petitioner filed a second state

5   petition for writ of habeas corpus on June 5, 1998.  The California Supreme Court denied the

6   petition on December 22, 2004, both on the merits and on various procedural grounds.

7        Petitioner filed his Second Amended Petition for Writ of Habeas Corpus in this court on

8   January 12, 2005.  Per an order dated October 14, 2005, this court granted respondent's motion to

9   dismiss Claims 9, 16, 19B(e), 19B(f), 19B(aa), 19B(cc) and 21 as procedurally defaulted.  The

10  parties subsequently brought cross-motions for summary judgment.   Per an order dated September

11  28, 2007,  this court granted summary judgment in favor of respondent as to Claims 3, 4, 5, 6, 7, 8,

12  10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19B(c), 19B(d), 19B(e), 19B(g), 19B(h),

13  19B(bb), 19B(dd) and 19B(ee); petitioner's motion for summary judgment with respect to the same

14  claims was denied.   A decision as to Claims 2 and 22 was deferred.

15       Petitioner was subsequently granted leave to conduct discovery regarding his ineffective

16  assistance of counsel ("IAC") claim (Claim 2) and his defaulted shackling claim (Claim 9).  In

17  February 2010, this court granted in part petitioner's request for an evidentiary hearing as to his IAC

18  and shackling claims.  The court directed the parties, however, to first address all of petitioner's

19  shackling-related claims[1] as they were "potentially petitioner's most viable claims and impact both

20  the guilt and penalty phases of his trial."[2]  Order Re Evidentiary Hearing at 17.

21       In lieu of a live evidentiary hearing, the parties agreed to submit a stipulated set of facts and

22  evidence, including a stipulation as to witness testimony, to be considered by the court.  The parties

23  also submitted extensive briefing.   Pursuant to Civil Local Rules 7-1(b) and 7-6, the court finds that

24  this matter is appropriate for submission on the papers without oral argument.

25

26  _____

27       [1] Claim 2C maintains that the inadequate response of petitioner's trial counsel to petitioner's
    shackling constituted ineffective assistance of counsel.

28       [2] Petitioner has objected to any sub-division of his IAC claim.

2

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Factual Background**

**I.     Trial Summary**

The following recitation of the factual background of this case is based, in relevant part, on the Supreme Court of California's opinion disposing of petitioner's direct appeal, *People v. Walker*, 47 Cal. 3d 605 (1988).  The state court's factual findings are presumed to be correct pursuant to 28 U.S.C. § 2254.

In 1980, a jury in the Superior Court of Santa Clara County sentenced petitioner to death following a conviction of first degree murder and other crimes stemming from two separate incidents joined for purposes of trial.  Evidence at trial established that, in the first incident, which occurred on August 7, 1979, petitioner and an accomplice robbed a liquor store called Dan's Bottle Shop and shot three people.  One of the shooting victims, 15 year old Joseph Vasquez, died from the gunshot wounds.  In connection with this incident, petitioner was convicted of first degree murder, two counts of assault with intent to commit murder, and robbery.  The jury also found that petitioner personally used a firearm in the commission of each crime, and found true the special circumstance that defendant committed the murder while engaged in the commission or attempted commission of a robbery.

Evidence at trial also established that, in the second incident, which occurred on September 5, 1979, petitioner entered a medical building, where he robbed, sexually molested, beat and shot a young woman twice in the head.  The woman, Rose Olveda, survived and identified petitioner as her assailant.  In connection with this incident, petitioner was convicted of assault with intent to commit murder, robbery, and personal use of a firearm in the commission of each offense.  He was also convicted of theft of Olveda's vehicle.

Petitioner's defense at the guilt phase was primarily one of mistaken identity.  Petitioner testified on his own behalf.  His testimony on the witness stand was impeached by earlier statements he had made.

At the penalty phase, the prosecution and defense stipulated that the evidence from the guilt phase could be considered by the jury in the penalty phase.  In addition, the prosecution presented testimony from two police officers that petitioner had made threats against a police officer and a

1   deputy district attorney.   The defense presented witnesses from petitioner's family, including his

2   sisters, who testified that petitioner had helped them financially and emotionally, and that they

3   wanted him to live.  Petitioner's mother testified that petitioner had grown up in a poor family with

4   seven brothers and sisters.  Again, petitioner testified, claiming that he was innocent of the crimes

5   and testifying that he did not make threats to the officer and deputy district attorney.

6   **II.     Shackling Summary**

7        Petitioner and respondent stipulated to certain facts and evidence regarding petitioner's

8   shackling during trial.  *See* Stipulated Evidence and Statement of Facts Related To Petitioner's

9   Shackling Claims (hereinafter "Stip. Facts").  Thus, there is no dispute between the parties regarding

10  the following relevant facts.

11       Petitioner was visibly shackled by a leg-locking brace during both the guilt and penalty

12  phases of his capital trial.  Stip. Facts 3, 12-13.  He was shackled from the first day of voir dire until

13  the conclusion of the penalty phase.  Stip. Fact 3.

14       The brace was a solid piece of molded plastic, approximately 2 feet long and 1/8" to 1/4"

15  thick, weighing about three pounds.  It was slit open on one side and fit to his leg by pulling the

16  open side apart and placing it around his leg from the back so that the open sides abutted his knee

17  cap; it was secured by two large straps and was worn beneath his pants.  Stip. Facts 3, 12.   The

18  shackle caused petitioner to walk with a visible limp.  Stip. Facts 3-4; 12-20.  Although the shackle

19  was worn beneath petitioner's pants, it was visible throughout the trial.  At least five jurors

20  remember seeing the shackle.  Stip. Fact 13.  At least three jurors were aware that petitioner was

21  shackled because of the difficulty the brace caused for him while he walked in the courtroom.  Stip.

22  Fact 16.   Both the prosecutor and the trial judge noted the shackle.  Stip. Fact 20.

23       One juror assumed petitioner was shackled "because of what he was being held for."  She

24  stated that the restraints "seemed like a short lead on a vicious dog."  Another juror assumed

25  petitioner was wearing "leg irons of some sort – something visible around his legs" because he had

26  threatened a district attorney.  Stip. Facts 27-28.

27       The trial court never determined on the record that a specific state interest justified

28  petitioner's shackling.  Stip. Facts 2, 5-7.  The trial judge stated that he did not see any reason for

**United States District Court**
For the Northern District of California

4

1    shackling during the one record exchange regarding the issue.  Stip. Fact 2.  Petitioner's counsel,

2    Dennis Kollenborn, never objected to the shackling, never asked for a hearing regarding the

3    shackling, and never requested curative instructions regarding the shackling.  Stip. Fact 8.  Petitioner

4    has stated that the shackle distracted him during the trial.  Stip. Fact 3.  Petitioner also stated that the

5    shackle caused him pain and discomfort because its edge cut into his knee on both sides of his knee

6    cap.  Stip. Fact 3.

7

8                                    **Discussion**

9    **I.     Legal Framework**

10            **A.      AEDPA Standard**

11           Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court

12    should not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits

13    in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

14    contrary to, or involved an unreasonable application of, clearly established Federal law, as

15    determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

16    on an unreasonable determination of the facts in light of the evidence presented in the State court

17    proceeding."  28 U.S.C § 2254(d).[3]  A federal court must presume the correctness of the state court's

18    factual findings, and the presumption of correctness may only be rebutted by clear and convincing

19    evidence.  28 U.S.C. § 2254(e)(1).

20           The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate

21    and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is

22    "contrary to" clearly established United States Supreme Court law if it fails to apply the correct

23    controlling authority or if it applies the controlling authority to a case involving facts materially

24    indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id*. at

25    413-414.  A decision is an "unreasonable application" of United States Supreme Court law if  "the

26    state court identifies the correct governing legal principle . . .  but unreasonably applies that principle

27    _____

28            [3] The parties agree that AEDPA applies to this matter.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

to the facts of the prisoner's case." *Id.* at 414.   In *Harrington v. Richter*, the Court further stresses that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).   "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a great[] degree of deference to the state courts." *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA.  *See Williams*, 529 U.S. at 412.   While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied.  *See Clark*, 331 F.3d at 1070.

When a federal court is presented with a state court decision that is unaccompanied by a rationale for its conclusions, the court has no basis other than the record "for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).   In such situations, federal courts must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable.  *Id.*   Specifically, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

While federal courts "'are not required to defer to a state court's decision when that court gives [them] nothing to defer to, [they] must still focus primarily on Supreme Court cases in

**United States District Court**
For the Northern District of California

1   deciding whether the state court's resolution of the case constituted an unreasonable application of

2   clearly established federal law.'" *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002) (quoting

3   *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001)).  Furthermore, independent review of the record is

4   not de novo review of the constitutional issue, but rather the only way a federal court can determine

5   whether a silent state court decision is objectively unreasonable.  *Himes v. Thompson*, 336 F.3d 848,

6   853 (9th  Cir. 2003).

7          Even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted

8   only if the constitutional error at issue had a substantial and injurious effect or influence in

9   determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Under this

10  standard, petitioners "may obtain plenary review of their constitutional claims, but they are not

11  entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

12  prejudice.'"  *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

13         **B.       Shackling Standard**

14         The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the

15  jury absent a trial court determination, in the exercise of its discretion, that restraints are justified by

16  a state interest specific to a particular trial.  *Deck v. Missouri*, 544 U.S. 622 ( 2005); *Rhoden v.*

17  *Rowland*, 172 F.3d 633, 636 (9th Cir. 1999) ("*Rhoden II*"); *Spain v. Rushen*, 883 F.2d 712, 716 (9th

18  Cir. 1989).  Generally, the defendant's right to due process is violated if the trial court fails to make a

19  finding on the record justifying the necessity of physical restraints, and the absence of such a finding

20  cannot be cured by the reviewing court's after-the-fact justifications.  *Larson v. Palmateer*, 515 F.3d

21  1057, 1063 (9th Cir. 2008).  There may, however, be an "'exceptional case where the record itself

22  makes clear that there are indisputably good reasons for shackling.'" *Id.* (quoting *Deck*, 544 U.S. at

23  635).  To assess whether shackles are permitted, a trial court must analyze the security risks posed

24  by the defendant and consider less restrictive alternatives before permitting a defendant to be

25  restrained.  *Rhoden II*, 172 F.3d at 636; *Jones v. Meyers*, 899 F.2d 883, 885 (9th Cir. 1990).  *But see*

26  *Deck*, 544 U.S. at 633 (not including "least restrictive alternative" in statement of circumstances

27  where judge may allow shackling).

28

1    Shackling may be justified as a last resort, in cases of extreme need or in cases urgently

2    demanding that action. *See Wilson v. McCarthy*, 770 F.2d 1482, 1485 (9th Cir. 1985); *Tyars v.*

3    *Finner*, 709 F.2d 1274, 1284 (9th Cir. 1983). Shackling therefore is proper where there is a serious

4    threat of escape or danger to those in and around the courtroom, *see Morgan v. Bunnell*, 24 F.3d 49,

5    51 (9th Cir. 1994); *Hamilton v. Vasquez*, 882 F.2d 1469, 1471 (9th Cir. 1989), or where disruption in

6    the courtroom is likely in the absence of shackles, *see Wilson*, 770 F.2d at 1485; *see also Stewart v.*

7    *Corbin*, 850 F.2d 492, 497 (9th Cir. 1988) (shackling was supported by evidence of prior escapes

8    from immediate physical custody of law enforcement officers, once while handcuffed, and by

9    defendant's disruptive behavior during trial), *cert. denied*, 490 U.S. 1016 (1989). It is improper,

10   however, where a compelling need is not established, less restrictive alternatives are not pursued, or

11   where the harms were not assessed. *See Rhoden v. Rowland*, 10 F.3d 1457, 1459 (9th Cir. 1993)

12   ("*Rhoden I*"); *see, e.g., Packer v. Hill*, 291 F.3d 569, 583 (9th Cir. 2002) (holding that state trial

13   judge erred by placing defendant in leg brace, where the only evidence of security risk was unsworn

14   testimony that potential witness planned to do "stuff" while in town to testify, although error did not

15   prejudice defendant), *rev'd on other grounds*, 537 U.S. 3 (2002); *Tyars v. Finner*, 709 F.2d 1274,

16   1284 (9th Cir. 1983) (shackling defendant in civil commitment proceeding without any

17   demonstration that lesser restraints would have been ineffective or impractical constituted violation

18   of due process).

19    In deciding whether the trial court's erroneous decision to shackle violated due process, a

20   federal habeas court should "determine whether what [the jurors] saw was so inherently prejudicial

21   as to pose an unacceptable threat to defendant's right to a fair trial." *Holbrook v. Flynn*, 475 U.S.

22   560, 572 (1986). Visible shackling during trial is so likely to cause a defendant prejudice that it is

23   permitted only when justified by an essential state interest specific to each trial. *See Rhoden II*, 172

24   F.3d at 636. Where care is taken to ensure that a defendant's shackling is not visible to the jury in

25   the courtroom, however, prejudice is not presumed. *See, e.g., Williams v. Woodford*, 384 F.3d 567,

26   593 (9th Cir. 2004) (juror's viewing of defendant in handcuffs with a coat draped over his handcuffed

27   hands as he went to or from the courtroom was not inherently or presumptively prejudicial); *Ghent*

28   *v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (no prejudice from jury's brief glance of shackles

outside of courtroom while petitioner was being transported); *Rich v. Calderon*, 170 F.3d 1236, 1240 (9th Cir. 1999) (no constitutional error where defendant was only shackled with ankle chains during trial and shackles were behind curtain or skirt placed around the defense table to insure that they were not visible to the jury), *amended*, 187 F.3d 1064, 1069 (9th Cir. 1999); *see also Packer*, 291 F.3d at 583 (holding that defendant who was improperly placed in a leg brace for security reasons suffered no prejudice where no jurors interviewed after trial recalled seeing the brace).

When a defendant's shackling was not actually seen by the jury in the courtroom, no error results, *see Rich*, 170 F.3d at 1240, or, put differently, the error is deemed harmless or not prejudicial, *see Rhoden II*, 172 F.3d at 636; *Rhoden I*, 10 F.3d at 1460; *see, e.g., Williams*, 384 F.3d at 592 (no prejudice where leg chain not seen by jurors in courtroom); *Castillo v. Stewart*, 983 F.2d 145, 149 (9th Cir. 1992) (no prejudice where waist chain could not be seen by jurors).

When the defendant's erroneous shackling was visible to the jurors in the courtroom, however, habeas relief is likely. *See Rhoden II*, 172 F.3d at 636-637 (citing cases). Actual prejudice is required after *Brecht*. *See Dyas v. Poole*, 317 F.3d 934, 937 (9th Cir.), *cert. denied*, 540 U.S. 937 (2003) (defendant who concededly was unconstitutionally shackled during trial showed prejudice from the shackling when at least one juror saw the shackles in the courtroom during trial, the defendant was charged with a violent offense which increased the risk that the shackles branded her as having a violent nature, and the evidence of guilt was not overwhelming); *Rhoden II*, 172 F.3d at 637 ("Because at least some of the jurors saw the shackles and because the shackles essentially branded [petitioner] as having a violent nature in a case where his propensity for violence was the crucial issue, the shackles 'had substantial and injurious effect or influence in determining the jury's verdict' and thus did not constitute harmless error.") (quoting *Brecht*, 507 U.S. at 637). To determine whether the imposition of visible physical restraints amounts to prejudicial error, the reviewing court considers the appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged, and the strength of the state's evidence against the defendant. *Larson*, 515 F.3d at 1063. Thus, physical restraints such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more unobtrusive forms of restraints (such

as a leg brace).  *Id.*  If a defendant is charged with a violent crime, then the risk of prejudice increases because shackling conveys an impression he is violent.  *Id.*

## II.     Analysis

### A.     Claim 2

In Claim 2, petitioner maintains that his trial counsel, Dennis Kollenborn, rendered ineffective assistance of counsel when he failed to object to petitioner's shackling.  This claim was denied by the state court in a summary decision.

The Sixth Amendment guarantees the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced petitioner's defense.  *Id.* at 688.  To prove deficient performance, petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  *Id.; see also Bobby v. Van Hook*, 130 S. Ct. 13, 18 (2009) (per curiam) (noting that guidelines, such as those promulgated by the American Bar Association, purporting to establish what reasonable attorneys would do may be helpful but are not the test for determining whether counsel's choices are objectively reasonable).  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. at 687-688.

The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689; *Wildman v. Johnson*, 261 F.3d 832, 838 (9th Cir. 2001); *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  The reasonableness of counsel's decisions must be measured against the prevailing legal norms at the time counsel represented the defendant.  *Wiggins v. Smith*, 539 U.S. 510, 522-523 (2003) (citing American Bar Association professional standards and standard practice in capital defense at pertinent time); *see also Jennings v. Woodford*, 290 F.3d 1006, 1016 (9th Cir. 2002) (deficient performance where counsel who had

United States District Court

For the Northern District of California

10

United States District Court
For the Northern District of California

1   settled on alibi defense failed to investigate possible mental defense despite state supreme court

2   decision before trial that in such instances counsel is not excused from investigating the potential

3   mental defense).[4]

4        Under AEDPA, "[t]he pivotal question is whether the state court's application of the

5   *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's

6   performance fell below *Strickland*'s standard."  *Richter*, 131 S. Ct. at 785.  The state decision under

7   review need not explain the state court's reasoning, and the habeas petitioner still bears the burden to

8   show there was no reasonable basis for the state court to deny relief.  *Id*. at 784.

9        To prove counsel's performance was prejudicial, petitioner must demonstrate a "reasonable

10  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

11  been different.  A reasonable probability is a probability sufficient to undermine confidence in the

12  outcome."  *Strickland*, 466 U.S. at 694.  Second, the defendant must show that counsel's errors were

13  so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Id.* at 688.  The

14  test for prejudice is not outcome-determinative, i.e., defendant need not show that the deficient

15  conduct more likely than not altered the outcome of the case; however, a simple showing that the

16  defense was impaired is also not sufficient.  *Id.* at 693.  The defendant must show that there is a

17  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

18  would have been different; a reasonable probability is a probability sufficient to undermine

19  confidence in the outcome.  *Id.* at 694.

20       Where the defendant is challenging his conviction, the appropriate question is "'whether

21  there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

22  doubt respecting guilt.'"  *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (quoting *Strickland*, 466

23  U.S. at 695).  *See, e.g., Detrich v. Ryan*, 619 F. 3d 1038 (9th Cir. 2010) (failure to obtain and present

24  an expert evaluation of petitioner's neuropsychological dysfunction prejudicial where there is a

25

26       [4]  A difference of opinion as to trial tactics does not constitute denial of effective assistance,
    *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not
27  ineffective assistance simply because in retrospect better tactics are known to have been available.
    *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).
28

United States District Court

For the Northern District of California

1  reasonable probability that the sentencing judge would have imposed a sentence less than death);

2  *Jennings*, 290 F.3d at 1019 (finding prejudice where counsel solely relied upon a fallible alibi

3  defense and failed to investigate and present compelling mental health and drug abuse evidence).

4       The *Strickland* prejudice analysis is complete in itself.  Therefore, there is no need for

5  additional harmless error review pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

6  *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009); *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th

7  Cir. 2002).

8                 **1.**       **Deficient Performance**

9       Petitioner maintains that his trial attorney's lack of response to his shackling was deficient

10  performance, and that an independent review of the record demonstrates that the state court's

11  summary decision to the contrary was objectively unreasonable.  For the following reasons, this

12  court agrees.

13       On the undisputed record before this court, it cannot be plausibly argued that it was

14  reasonable for petitioner's counsel not to object to petitioner's shackling.  At the time of petitioner's

15  trial in 1980, the law regarding shackling was well-established in both the federal and state courts.

16  In *Illinois v. Allen*, 397 U.S. 337, 344 (1970), the Court noted that "no person should be tried while

17  shackled . . . except as a last resort.  Not only is it possible that the sight of shackles . . . might have a

18  significant effect on the jury's feelings about the defendant, but the use of this technique is itself

19  something of an affront to the very dignity and decorum of judicial proceedings that the judge is

20  seeking to uphold."  And in *People v. Duran*, 16 Cal. 3d 282, 290-291 (1976), the California

21  Supreme Court held that in the absence of a record showing violence, threat of violence, or other

22  nonconforming conduct, it was an abuse of discretion to impose physical restraints on a criminal

23  defendant.  Indeed, the California Supreme Court made clear that "a defendant cannot be subjected

24  to physical restraints of any kind while in the jury's presence, unless there is a showing of a manifest

25  need for such restraints."  *Id.* at 290-291.   Numerous practice guides and treatises available at the

26  time of petitioner's trial confirmed that shackling a criminal defendant was not permitted absent a

27  showing of manifest need.  *See* Citations at pp. 8-9 of Petitioner's Opening Brief For Habeas Corpus

28  Relief Re Shackling.  Respondent acknowledges that at the time of petitioner's trial, both the United

States and the California Supreme Courts had held that visible restraints were prohibited absent a record determination that restraints were justified due to a particular state interest.  Respondent's Brief Re: Petitioner's Shackling Claims at 6-7.

The expert testimony of Michael P. Thorman, Esq., who has been stipulated to as a qualified expert by the parties, confirms that the law regarding shackling was clear at the time of petitioner's trial, and that "the failure of capital defense counsel to object to the visible shackling of a capital defendant during trial in the absence of a record determination that such restraint was necessary for courtroom security (or other manifest state interest) amounted to objectively deficient performance as counsel."  Stip. Facts at 10-11.  Furthermore, respondent cannot demonstrate any reasoned, strategic, or tactical decision that supports trial counsel's failure to object to the shackling, his failure to request a hearing regarding the shackling, or his failure to request corrective instructions for the jury regarding the shackling.  Kollenborn himself cannot recall any reason why he failed to object to the shackling.

Respondent does not and cannot deny that there was no finding on the record that restraints were justified in petitioner's trial.  Stip. Fact at 5.  Nor is there any finding on the record that petitioner was disorderly or disruptive in or around the courthouse during his trial.  Stip. Fact at 6.  In fact, the trial judge indicated on the record that there was no need to shackle petitioner in the following exchange:

THE COURT: All right.  And as far as shackles, I've never found the need to have anyone shackled in the court thus far.  Is there any need to have you shackled?

THE DEFENDANT: No, sir.

THE COURT: All right.  As long as there doesn't appear to be any need, I don't see any reason for that to occur.

Stip. Fact 2, citing RT 86.

Despite the fact that there were no record findings establishing any need for shackling, and despite the relevant state and federal caselaw, it is undisputed that petitioner's trial counsel made no

United States District Court

For the Northern District of California

1 objection regarding the restraint of his client. Stip. Facts 7-8. Even after the prosecutor and the trial

2 judge both made reference to the restraint, thereby drawing the jury's attention to petitioner's

3 shackle, Kollenborn made no objection to petitioner's restraint. Stip. Facts 20, 26.

4          Respondent maintains that Kollenborn's actions were nonetheless reasonable because it must

5 be inferred that the trial court determined, off the record, that petitioner presented a security threat

6 that the leg brace would address. According to respondent, given this hypothetical off-the-record

7 determination, it would have been futile for Kollenborn to object to the shackling, and futile motions

8 are not required by *Strickland. See James v. Borg*, 24 F. 3d 20, 27 (9th Cir. 1994). In support of this

9 assertion, respondent offers the following summary of evidence presented at the penalty phase of

10 petitioner's trial.

11          Officer Nichols testified for the prosecution about a conversation he heard through electronic

12 monitoring between petitioner and his cousin Lawrence Martin at the police station on September

13 26, 1979. During the conversation, petitioner told Martin that he would have to get the gun from

14 "Danny" (Officer MacIvor), and that "Danny" would have to be "offed." In addition,

15

16          Officer MacIvor testified that at the conclusion of a preliminary hearing on
          October 30, 1979, defendant walked by him and the deputy district attorney
17          conducting the hearing, turned toward the prosecutor and stated, "The hell with
          getting a cop. I'll get me a D.A." The record further suggests that there may have
18          been some mention of the September 26 "Danny" threat in connection with a bail
          motion made at the conclusion of the preliminary hearing, perhaps thereby prompting
19          defendant's "D.A." threat. The deputy district attorney testified that when defendant
          walked by, defendant glared at him and made a comment. All the district attorney
20          could make out was "D.A."

21 *People v. Walker*, 47 Cal. 3d 605, 635-636 (1989).[5]

22          Respondent's argument is purely speculative and defies credibility. Respondent admits there

23 was no on-the-record hearing regarding the need for shackling, and also admits that there was

24 nothing disorderly or disruptive about petitioner's courtroom behavior, yet somehow argues, without

25 apparent support, that there must have been an off- the-record hearing, where the trial judge

26 concluded that visible shackles were necessary because of security concerns specific to petitioner's

27 _____

28          [5] These threats are hereinafter referred to as the "Danny threat" and the "D.A. threat."

14

case.  There is no evidence for this having occurred, and the penalty phase testimony by Officer Nichols certainly does not demonstrate that there was a extreme need specific to petitioner's case, during both the guilt and penalty phases, for visible restraints.  To the contrary, the on-the-record statement by the trial judge that  "there doesn't appear to be any need" for shackles occurred on July 30, 1980 (Stip. Fact 2), after the alleged "Danny threat" and "D.A. threat" were made, thus undermining respondent's speculation that those threats must have given rise to an off-the-record determination that restraints were necessary.  Given this record, respondent cannot plausibly argue that this is an "exceptional case where the record itself makes clear that there are indisputably good reasons for shackling." *Deck*, 544 U.S. at 635.

Perhaps more importantly, the Ninth Circuit has already concluded that, without record findings by the trial court,  post-hoc rationalizations for restraints are not sufficient.  In *Larson v. Palmateer*, which respondent does not address, the Ninth Circuit considered a case where there were no record findings supporting the use of restraints during a trial.  515 F.3d 1057 (9th Cir. 2008).  The district court had denied the petitioner's shackling claim, finding that even though there were no record findings, there were nonetheless circumstances present at the trial that might have justified restraints.  *Id.* at 1063.  The Ninth Circuit rejected that argument as follows.

> Although the district court acknowledged that the trial judge made "no formalized finding" as to the necessity of restraints, it nonetheless rejected Larson's due process claim, holding that the trial court was presented with security concerns that necessitated the use of restraints.  Specifically, the district court suggested that the security leg brace may have been justified because Larson had a proclivity for absconding, called prisoners as witnesses and was on trial for a particularly vicious retaliation murder against family members.  Although any of these reasons may have provided an adequate basis for imposing security restraints, the Supreme Court in *Deck* specifically rejected such post-hoc rationales.  *See* [*Deck v. Missouri*, 544 U.S. 622, 634-35 (2005)] (noting that one suggested justification for shackling the defendant "founders on the record's failure to indicate that the trial judge saw the matter as one calling for discretion," because "[t]he record contains no formal or informal findings") . . . We therefore agree with Larson that his due process rights were violated when the trial court failed to make a finding on the record justifying the necessity of physical restraints, and that the absence of such a finding cannot be cured by the reviewing court's after-the-fact justifications.

*Id.* at 1063 [citations omitted].

As *Larson* makes clear, respondent cannot overcome the absence of a record finding requiring restraints with after-the-fact postulations. *Id.* Even if after-the-fact postulations were permissible, respondent's argument here would fail. Neither petitioner nor his counsel recall any off-the-record hearing regarding restraints, and respondent does no more than hypothesize that one might have occurred. Respondent stipulates that there is no indication on-the-record that petitioner was disorderly or disruptive during the trial, nor is there any indication on-the-record of an escape attempt on petitioner's part. Furthermore, the trial judge affirmatively concluded on the record that there was no need to shackle petitioner. Stip. Fact 2. Finally, shackling may only be justified if the trial court is "'first persuaded by compelling circumstances that some measure is needed to maintain security of the courtroom'" and only if "the court pursues 'less restrictive alternatives before imposing physical restraints.'" *Cox v. Ayers*, 613 F. 3d 883, 890-891 (quoting *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995). There is *no* evidence here that the trial court concluded that compelling circumstances justified shackling or that the court pursued less restrictive alternatives to shackling. Given the clearly established federal law and the undisputed facts in this case, this court must conclude that the state court's summary decision that there was no deficient performance is objectively unreasonable.

### 2. Prejudice

Petitioner also maintains his counsel's deficient performance was prejudicial to him at both the guilt and penalty phases of his trial, and that an independent review of the record demonstrates that the state court's summary decision to the contrary is objectively unreasonable. For the following reasons, this court agrees.

#### a. Guilt Phase

The Supreme Court has stated that:

> [S]hackling is "inherently prejudicial." That statement is rooted in our belief that the practice will often have negative effects, but — like "the consequences of compelling a defendant to wear prison clothing" or of forcing him to stand trial when medicated – those effects "cannot be shown from a trial transcript." Thus, where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation.

1

2

*Deck*, 544 U.S. at 635 (citations omitted).

3

4

5

6

There is no dispute that petitioner was restrained without record justification during the guilt phase of his trial.  The *Deck* Court discussed three aspects of shackling that have contributed to the "judicial hostility" to the practice.  544 U.S. at 630.  All three aspects were present at petitioner's trial.

7

8

9

10

11

12

13

14

15

16

17

First, the *Deck* Court stated that "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process."  *Id.*  Here, petitioner's restraints were visible to at least five jurors, and were visible during the entirety of the trial.  Stip. Fact 13.  Second, the Supreme Court found that shackles may diminish a criminal defendant's Sixth Amendment right to counsel since they may "interfere with the accused's "ability to communicate" with his lawyer" and "can interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf."  540 U.S. at 631.  Here, the parties have stipulated that petitioner was distracted by the pain and discomfort caused by the shackles, and have also stipulated that the shackle caused petitioner to visibly limp before the jury.  Stip. Facts 3-4, 16, 20.  Indeed, even the prosecutor referenced the shackles when he noted that petitioner was limping in court, and that the limping was not due to a medical issue.  Stip. Facts 20-25.

18

19

20

21

22

23

24

Finally, the Court stated that shackles undermine the dignity of the judicial process, which includes "the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment."  *Deck*, 540 U.S. at 632.  Here, requiring petitioner to wear visible and painful restraints in the absence of a judicial finding that they were required, undermined the dignity of the judicial process by seriously compromising the respectful treatment to which petitioner was entitled.

25

26

27

28

In determining whether shackling is prejudicial, the Ninth Circuit has focused on four factors, all of which are also present here.  *Dyas v. Poole*, 317 F. 3d 934 (9th Cir. 2003).  Two of them have already been addressed by this court: 1) whether jurors saw the shackles; and 2) whether

there was physical pain from the shackles.  As has already been discussed, *supra*, the parties have stipulated that the restraints were visible to numerous jurors, caused petitioner pain and discomfort, and forced him to limp.  Stip. Facts 3-4, 13-20.  As to the visibility of the shackles, the Ninth Circuit held that prejudice can result even if only one juror is biased by the sight of the shackles.  *Dyas*, 317 F.3d at 937.  Jurors need not admit to bias; the court also found that even if the jurors stated that they would not be prejudiced by visible shackles (which was not the case here), "the analysis . . . must focus on whether the risk was there, not whether the jurors could recognize the risk."  *Id.* at 938. Given the undisputed facts that: 1) petitioner was shackled; 2) that there was no record finding of necessity for the shackles and; 3) that multiple jurors viewed the shackles, the risk was clearly present here.

In addition, the court evaluating the risk from shackling must consider whether the charged offense was a crime of violence.  A charge of a violent crime "increase[s] the risk" that a criminal defendant was prejudiced by visible restraints because the shackles may "essentially brand[] [the defendant] as having a violent nature."  *Id.* at 937.  Here, petitioner was charged with capital murder and six other violent felonies; as such, the risk of prejudice from the visible shackles was increased. *See id.*

Finally, the reviewing court must consider whether the jury engaged in lengthy deliberations. *Id.*  Lengthy deliberations may suggest that the evidence against a defendant, while sufficient to convict, was not overwhelming.  *Id.*  In a close case, "an otherwise marginal bias created by the shackles may have played a significant role in the jury's decision."  *Id.* (affirming grant of habeas relief based on unconstitutional shackling and citing *Rhoden II* , 172 F.3d at 637; *compare Cox v. Ayers*, 613 F. 3d 883, 890-891 (9th Cir. 2010) (finding no prejudice to defendant based on shackling because "the evidence presented by the State was overwhelming")).[6]

---

[6] In *Cox*, the trial court made a record finding that the possibility of an escape attempt justified restraints, but the Ninth Circuit held that the shackling was not justified by state interests. 613 F.3d at 890-891.  The "overwhelming" evidence against the *Cox* petitioner included his palm print at the center of the murder scene, eyewitness accounts, petitioner's inculpatory statement, gunpowder residue on his clothes, and ballistics evidence proving that a rifle in petitioner's possession was used to fire four of the bullets found at the crime scene.  *Id.* at 891.

United States District Court

For the Northern District of California

1    Neither the Ninth Circuit nor the Supreme Court has defined "lengthy deliberations."  In

2  *Rhoden II*, however, the Ninth Circuit found that the petitioner was entitled to habeas relief based on

3  unconstitutional shackling in part because the jury deliberations of nine hours over three days

4  suggested "that they did not find the case to be clear-cut."  172 F. 3d at 637.  In *Dyas*, the court

5  found a lack of overwhelming evidence when the jury deliberated three and ½ days.  317 F. 3d at

6  937 (affirming habeas relief based on prejudicial shackling).

7    In petitioner's case, the jury deliberated for about thirty-five hours over the course of five

8  days.  RT 3065, 3099.  The jury took a vote after the first day of deliberations, and did not reach a

9  unified verdict.  RT 3067.  During their subsequent days of deliberations the jury asked for multiple

10  read-backs of testimony and jury instructions.  RT 3069-3089.  During the third day of deliberations,

11  the jury reported it had reached "a decision on some of the parts of some of the counts" and

12  continued to deliberate.  RT 3083-3087.  The jury returned with a final verdict only after the fifth

13  day of deliberations.  RT 3099.[7]

14    This court hereby finds that the jury in petitioner's case engaged in lengthy deliberations,

15  demonstrating that "the evidence against [petitioner] was not overwhelming", *Dyas*, 317 F. 3d at

16  937, and that the jury "did not find the case to be clear-cut."  *Rhoden II*, 172 F.3d at 637.  This

17  finding is buttressed by the fact that the jury was divided after the first day of deliberations.  And

18  "[b]ecause the case was close, an otherwise marginal bias created by the shackles may have played a

19  significant role in the jury's decision."  *Dyas*, 317 F. 3d at 937.

20

21    Respondent hypothesizes that the lengthy deliberations may indicate diligence rather than a

22  lack of overwhelming evidence.  Respondent cannot, however, cite to anything in the record or to

23  any caselaw supporting such a theory.  Furthermore, while the evidence was sufficient to support

24  petitioner's conviction, it was not objectively so overwhelming as to overcome the "inherent

25  prejudice" of shackling.  *Deck*, 544 U.S. at 635.  Petitioner's main defense at the guilt phase was

26

27    [7] "According to data compiled by the National Center for State Courts, the average length of
jury deliberations for a *capital* murder trial in California is 12 *hours*."  *Fry v. Plier*, 551 U.S. 112,

28  123 n.2 (2007) (Stevens, J. concurring in part and dissenting in part) (emphasis in original).

1   mistaken identity.  Three of the four eyewitnesses to the Bottle Shop robbery could not identify

2   petitioner or his vehicle.  RT 1763, 1767.  As to the Olveda assault, victim Olveda identified

3   petitioner, but her identification was initially not certain, and was based on her recollection of her

4   assailant's eyes, since the attacker wore both a hat and mask.  RT 1875-1884.  Combined with the

5   lengthy deliberations, and the jury's initial divided verdict, the lack of overwhelming evidence

6   confirms that the case was close and that the "inherent prejudice" of the shackles may have played a

7   significant role in the jury's decision.  *Dyas*, 317 F. 3d at 937.

8          Although the trial record confirms there was sufficient evidence to convict petitioner of

9   capital murder and the other charges against him, the trial record and the jury's deliberations also

10  confirm that the evidence was not overwhelming.  Pursuant to clear Ninth Circuit precedent,

11  unjustified shackling of a defendant in a case where there is not overwhelming evidence of his guilt

12  is prejudicial.  *Dyas*, 317 F. 3rd at 937; *Rhoden II*, 172 F. 3d at 637-638.  In sum, "because at least

13  some of the jurors saw the shackles and because the shackles essentially branded [petitioner] as

14  having a violent nature in a case where his propensity for violence was the crucial issue, the shackles

15  'had substantial and injurious effect or influence in determining the jury's verdict' and thus did not

16  constitute harmless error."  *Rhoden II*, 172 F. 3d at 637, (quoting *Brecht*, 507 U.S. at 637).

17  Petitioner has shown that there is a reasonable probability that, but for counsel's unprofessional

18  errors, the result of his guilt phase proceeding would have been different, *Strickland*, 466 U.S. at

19  694.  Furthermore, given the stipulated facts and the applicable Supreme Court and Ninth Circuit

20  caselaw, petitioner has demonstrated that "there was no reasonable basis for the state court to deny

21  relief" on petitioner's claim.  *Richter*, 131 S. Ct. at 784.  Thus, petitioner's claim for habeas relief

22  based on ineffective assistance of counsel regarding shackling during his guilt phase trial is

23  GRANTED.

                           **b.      Penalty Phase**

25         Petitioner also maintains that his counsel rendered ineffective assistance by failing to object

26  to petitioner's restraints during the penalty phase of petitioner's trial.  Penalty phase shackling may

27  result in a constitutional violation.  *Deck*, 544 U.S. at 632.  As with the guilt phase, it is undisputed

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

that petitioner was visibly shackled during the penalty phase of his trial, without a record finding that such shackles were necessary.  It is also undisputed that as least some of the jurors, who were seated for both the guilt and the penalty phases, saw petitioner's restraints.  Finally, it is undisputed that petitioner's counsel made no record objection to the shackles, and did not move for the removal of the shackles or for the reading of curative instructions.  Thus, petitioner has demonstrated deficient performance on the part of his counsel.  It remains for this court to consider whether counsel's deficient performance caused prejudice to petitioner during his penalty phase trial.

The Supreme Court has directly addressed the potentially prejudicial impact of shackling at the penalty phase of a capital trial:

> The appearance of the offender during the penalty phase in shackles . . . almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community – often a statutory aggravator and nearly always a relevant factor in jury decisionmaking, even where the State does not specifically argue the point.  It also almost inevitably affects adversely the jury's perception of the character of the defendant. . . . And it thereby inevitably undermines the jury's ability to weigh accurately all relevant considerations – considerations that are often unquantifiable and elusive – when it determines whether a defendant deserves death.  In these ways, the use of shackles can be a thumb [on] death's side of the scale.

*Deck*, 544 U.S. at 633 (internal citations and quotation marks omitted).

Petitioner's violent nature and propensity for future violence were focuses during the penalty phase of his trial.  As noted *supra*, during petitioner's penalty phase, two instances of aggravating criminal activity were presented by the prosecution, pursuant to Cal. Penal Code § 190.3, factor (b).  Under factor (b), during a penalty phase capital case, the prosecution may introduce as evidence in aggravation any "criminal activity by the defendant which involved the use of force or violence or the express or implied threat to use force or violence."  *People v. Phillips,* 41 Cal. 3d 29, 72 (1985).  The factor (b) criminal activity introduced in petitioner's case included two threatening statements made by petitioner: one was an alleged threat against a deputy district attorney (the "D.A. threat") and one was an alleged threat against a police officer (the "Danny threat").

The prosecutor noted petitioner's violent nature during closing argument (RT 3273-3310) and one of the instructions given by the trial court instructed the jury to consider, when weighing

United States District Court

For the Northern District of California

1   whether to impose a sentence of death or life without parole: "The presence or absence of criminal
2   activity by the defendant which involved use or attempted use of force or violence or the express or
3   implied threat to use force or violence."   One juror stated that she "assumed Mr. Walker was
4   wearing 'leg restraints' or 'leg irons of some sort – something visible around his legs' every day
5   because he had threatened a district attorney." Stip. Fact 28.  Her statement demonstrates that the
6   presence of the shackles may have led at least one juror to assume the truth of an aggravating factor,
7   even though the burden to prove it was on the prosecution.  Because petitioner's tendency towards
8   violence was at issue at the penalty phase, and  "[t]he appearance of the offender during the penalty
9   phase in shackles . . . almost inevitably implies to a jury . . . that court authorities consider the
10  offender a danger to the community", *Deck*, 544 U.S. at 633, this court concludes that the visible
11  shackling of petitioner was prejudicial to him during the penalty phase.  As the *Deck* court
12  concluded, shackling during the penalty phase "can be a thumb [on] death's side of the scale", and
13  thus cause prejudice to a criminal defendant.

14      In evaluating prejudice, this court must also consider whether the jury engaged in lengthy
15  deliberations during the penalty phase of the trial.  *Dyas*, 317 F. 3rd at 937.  Lengthy deliberations
16  may suggest that the evidence against a defendant, while sufficient to convict, was not
17  overwhelming.  *Id.*  In a close case, "an otherwise marginal bias created by the shackles may have
18  played a significant role in the jury's decision."  *Id.* (affirming grant of habeas relief based on
19  unconstitutional shackling and citing *Rhoden II*, 172 F.3d at 637).

20      The jury deliberated for over ten hours over a period of three days during petitioner's penalty
21  phase.  Considering that a deliberation of nine hours over three days suggests that a jury "did not
22  find the case to be clear-cut", this court finds that the lengthy deliberations in petitioner's case also
23  evidence the closeness of the penalty case before the jury. *Rhoden II*, 172 F. 3d at 637.  In addition
24  to the length of the deliberations, certain undisputed facts before the jury at the penalty phase
25  support the conclusion that, while there were sufficient aggravating factors to sentence petitioner to
26  death, there was mitigating evidence presented that made the jury's decision a close call.  For
27  example, petitioner was nineteen at the time he committed the crimes.  In addition, he had no prior
28

criminal history.  RT 3273.  Because the shackles "essentially branded [petitioner] as violent in a case where his propensity for violence was [a] crucial issue, the shackles had substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 637 (citations omitted). Petitioner has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his penalty phase proceeding would have been different. *Strickland*, 466 U.S. at 694.  Furthermore, given the stipulated facts and the applicable Supreme Court and Ninth Circuit caselaw, petitioner has demonstrated that "there was no reasonable basis for the state court to deny relief" on petitioner's claim.  *Richter*, 131 S. Ct. at 784.   Thus, petitioner's claim for habeas relief based on ineffective assistance of counsel regarding shackling during the penalty phase of his trial is GRANTED.

### B.    Claim 9

#### 1.    Cause and Prejudice

As noted above, petitioner's stand-alone shackling claim (Claim 9)[8] was procedurally defaulted.  Petitioner maintains that the court may nonetheless consider the claim because there is adequate cause to excuse the default and actual prejudice as a result of the default.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The United States Supreme Court has erected various barriers to the federal judiciary's review of the merits of claims that state prisoners previously presented to the federal courts for resolution, failed to raise in their first federal habeas petitions, or failed properly to present to the state courts.  Unless a habeas petitioner shows cause and prejudice, therefore, a court may not reach the merits of  procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (citations omitted); *Farmer v. McDaniel*, 98 F.3d 1548, 1560 (9th Cir. 1996).  If a state prisoner cannot meet the cause and prejudice standard, however, a federal court may hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a

---

[8] This claim was denied by the state court in a summary decision.

United States District Court

For the Northern District of California

1  "miscarriage of justice." *See Sawyer*, 505 U.S. at 339-340 (citing *Kuhlmann v. Wilson*, 477 U.S.

2  436, 454-455 (1986); *Murray v. Carrier*, 477 U.S. 478 (1986);  *McCleskey v. Zant*, 499 U.S. 467,

3  502 (1991)).

4      A petitioner may show cause by establishing constitutionally ineffective assistance of

5  counsel, but attorney error short of constitutionally ineffective assistance of counsel does not

6  constitute cause and will not excuse a procedural default.  *See McCleskey*, 499 U.S. at 494; *Carrier*,

7  477 U.S. at 486-488.  To establish good cause on the ground of ineffective assistance of counsel, a

8  petitioner must show that (1) counsel made errors so serious that counsel was not functioning as the

9  counsel guaranteed the defendant by the Sixth Amendment, and (2) the deficient performance

10  prejudiced the defense.  *Loveland v. Hatcher*, 231 F.3d 640, 644  (9th Cir. 2000) (citing *Strickland v.*

11  *Washington*, 466 U.S. 668, 687 (1984)).

12      To serve as "cause," the claim of ineffective assistance of counsel must have been presented

13  as an independent claim to the state courts.  *See Carrier*, 477 U.S. at 489.  A procedurally defaulted

14  ineffective assistance of counsel claim is not cause to excuse the default of another habeas claim

15  unless the petitioner can satisfy the cause and prejudice standard with respect to the ineffective

16  assistance of counsel claim itself.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Cockett v.*

17  *Ray*, 333 F.3d 938, 943 (9th Cir. 2003).

18

19      Petitioner also must show actual prejudice resulting from the errors of which he complains.

20  *See McCleskey*, 499 U.S. at 494; *United States v. Frady*, 456 U.S. 152, 168 (1982).  Petitioner bears

21  the burden of showing, not merely that errors at his trial created a possibility of prejudice, but that

22  they "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of

23  constitutional dimensions."  *Id.* at 170 (emphasis in original).  To ascertain the level to which such

24  errors taint the constitutional sufficiency of the trial, they must be evaluated in the total context of

25  the events at trial.  *See Paradis v. Arave*, 130 F.3d 385, 393 (9th Cir. 1997) (citing *Frady*, 456 U.S. at

26  169).

27      The measure of prejudice is the trial that petitioner would have been afforded had he not

28  been disadvantaged; it is not the trial he actually had.  That the actual trial evidence is sufficient to

24

United States District Court

For the Northern District of California

1  convict him does not necessarily negate that he may have had an actual and substantial disadvantage

2  of constitutional dimension at trial.  *See id.* at 395.

3      A procedural default, therefore, may be excused upon a showing of ineffective assistance of

4  counsel.  *Thomas v. Lewis*, 945 F. 2d 1119, 1123 (9th Cir. 1991).  Thus, in order to overcome the

5  default on his shackling claim, petitioner here must demonstrate both the deficient performance and

6  prejudice prongs of *Strickland*.

7      As discussed in detail *supra*, petitioner has sufficiently demonstrated ineffective assistance of

8  counsel with regards to his shackling claim, and, pursuant to AEDPA, has shown that the state

9  court's decision to the contrary is unreasonable.  As such, he has shown adequate cause to excuse

10  the default and actual prejudice as a result of the default, and this court may excuse petitioner's

11  procedural default of Claim 9, his stand-alone shackling claim, and consider it on the merits.[9]  *See*

12  *Thomas*, 945 F. 2d at 1123.

13              **2.      Shackling**

14

15      As discussed above, the Supreme Court forbids visible shackles on a criminal defendant

16  absent a compelling state interest requiring restraints.  *Deck*, 544 U.S. 629-632.  Thus, the

17  appearance of a defendant in restraints visible to the jury "may constitute a violation of the

18  defendant's right to due process."  *Cox*, 613 F. 3d at 890.  The Ninth Circuit has held that, to

19  demonstrate that shackling amounted to a constitutional violation, a habeas petitioner must show:

20  "(1) that he was 'physically restrained in the presence of the jury,' (2) that 'the shackling was seen

21  by the jury,' (3) that the 'physical restraint was not justified by state interests,' and (4) that 'he

22  suffered prejudice as a result."  *Id.* (quoting *Ghent v. Woodford*, 279 F. 3d 1121, 1132 (9th Cir.

23  2002).

24      It is undisputed that petitioner has met the first three factors elaborated in *Cox*.  As the

25  parties' stipulated facts, the trial record, and this court's analysis *supra* demonstrates, petitioner was

26  visibly shackled, numerous members of the jury observed the shackles, and there were no state

27

28      [9]  Because petitioner has overcome the procedural default under the cause and prejudice
   exception, this court need not consider the miscarriage of justice exception.

interests justifying the restraints.  In addition, as the court's exhaustive discussion above confirms, petitioner has demonstrated that he suffered prejudice at both the guilt and penalty phases of his trial.  Furthermore, given the stipulated facts and the applicable Supreme Court and Ninth Circuit caselaw,  petitioner has demonstrated that "there was no reasonable basis for the state court to deny relief" on petitioner's claim.  *Richter*, 131 S. Ct. at 784; 28 U.S.C § 2254(d).  Thus, petitioner's Claim 9, alleging a due-process violation based on shackling, is GRANTED.

## Conclusion

For the foregoing reasons, the court hereby ORDERS as follows:

1.  The petition for writ of habeas corpus is GRANTED on the basis of Claim 2(c) and Claim 9, and petitioner's  judgment of conviction and sentence of death are accordingly VACATED.

2.  Pursuant to the court's earlier orders, Claims 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19A, 19B(a), 19B(b), 19B(c), 19B(d), 19B(e), 19B(g),19B(h), 19B(bb), 19B(dd) and 19B(ee) are DENIED.  Claims 16, 19B(e), 19B(f), 19B(aa), 19B(cc) and 21 are DISMISSED as procedurally defaulted.

3.  All of petitioner's remaining claims, including Claim 22 and the portions of Claim 2 other than Claim 2(c) are DISMISSED AS MOOT.

4. The Court ORDERS the State of California either to release petitioner or retry him, in compliance with California state law and the United States Constitution.
.

**IT IS SO ORDERED.**
DATED: 3/31/11

_Saundra B Armstrong_

SAUNDRA BROWN ARMSTRONG
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

26

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


MARVIN PETE WALKER,

Case Number: CV94-01997 SBA

      Plaintiff,

**CERTIFICATE OF SERVICE**

  v.

MICHAEL MARTEL,

      Defendant.

_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 1, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


California Appellate Project
California Appellate Project
Federal Court Docketing
101 Second Street
Suite 600
San Francisco, CA 94105


Dated: April 1, 2011

                    Richard W. Wieking, Clerk
                    By: LISA R CLARK, Deputy Clerk

United States District Court

For the Northern District of California

27